Case No.: 3:26mj31

FILED
May 20 2026
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## INTRODUCTION AND AGENT BACKGROUND

1. I, Daniel Fethiere, being first duly sworn, hereby depose and state as follows in support of a criminal complaint and arrest warrant pursuant to Federal Rules of Criminal Procedure 3 and 4 charging Robert Joseph KLINK Jr., with possession with intent to distribute 50 grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii).

2. I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been since April 2024. I have attained a Bachelor of Arts from Long Island University and a Master of Arts from the American Military University. I have successfully completed the Basic Agent Training Course at the DEA in Quantico, Virginia. I am also a U.S. Army veteran, serving on active duty from November 2014 to October 2023. I am currently assigned to the Washington Division Office, Richmond District Office and I am assigned to investigate narcotics violations.

3. As a DEA Special Agent, I have participated in the preparation and execution of numerous arrests and search warrants for criminal offenses including the trafficking of illegal narcotics. As a Special Agent, I have gained experience in investigative techniques, including oral and electronic interceptions, and other types of electronic surveillance, physical surveillance, operating confidential human sources, controlled purchases of illegal drugs, consensually-monitored recordings, investigative interviews, mail covers, administrative subpoenas, and search and arrest warrants.

4. Through instruction, training, and participation in investigations, as well through consultation with other agents and law enforcement personnel, I have become familiar with the manner and methods by which narcotics traffickers conduct their illegal business and use of coded words to disguise conversations about their narcotics activities, especially when they are

communicating by telephone. I have had the opportunity to interview individuals involved in narcotics trafficking concerning the various methods by which they operate, to include their use of coded language and the avoidance of specific references to narcotics, and their practice of conducting most or all their transactions in cash to avoid leaving a paper trail of their narcotics purchases, sales, and proceeds. I have also learned that narcotics traffickers at the higher levels of the trafficking hierarchy tend to avoid or minimize their possession of narcotics to avoid apprehension by law enforcement and that these higher-level narcotics traffickers tend to operate through intermediaries or "runners" to further minimize their own exposure. In addition, I have learned the measures that narcotics traffickers use to avoid law enforcement surveillance and investigations, such as the development and use of aliases; the use of cellular telephones and other communication devices; the use of other individuals' names for telephones, assets, vehicles, houses, bank accounts, utilities, etc., in order to avoid the use of their own names being associated with these items and assets; and the use of counter-surveillance driving techniques to detect law enforcement surveillance and avoid being followed by law enforcement.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

6. The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of Robert Joseph KLINK Jr., regarding violations of 21 U.S.C. §§ 841(a)(1) and 846 – Possession with Intent to Distribute Controlled Substances, including

Methamphetamine, and Conspiracy to Distribute Controlled Substances, including Methamphetamine.

**Traffic Stop on March 31, 2026**

7. During the weekend of March 28, 2026, investigators learned, via location data received from cellular phone pings, that KLINK had travelled to New York City, New York. Investigators also knew based on information developed during the course of this investigation including information provided by a source of information, that KLINK was utilizing a source of supply in the New York City area to purchase narcotics and suspected that he had traveled to New York City to meet with his SOS. In response, investigators developed a plan to conduct a traffic stop of KLINK on his return trip to the Richmond, Virginia area. Virginia Department of Motor Vehicle records showed that KLINK's driver's license is currently suspended.

8. On March 31, 2026, investigators observed KLINK as the sole occupant and driver of a black Chevy Equinox. Investigators knew that KLINK's driving privileges were suspended, so with the assistance of the Richmond Police Department and the Henrico County Police Department, investigators conducted a traffic stop of KLINK's vehicle in Richmond, Virginia. After KLINK's vehicle was stopped, he was detained, and Henrico County Police Officer Parke Smith, utilized his drug sniffing canine "Cain" to conduct an open-air sniff in the vicinity of KLINK's vehicle. Canine Cain is certified to detect heroin, cocaine, methamphetamine, and ecstasy. Additionally, Canine Cain has passed both his certification and recertifications without issue. During the open-air sniff of KLINK's vehicle, Canine Cain yielded a positive alert for narcotics inside of the vehicle. Investigators conducted a search of the vehicle and located multiple suspected narcotics in a void underneath the steering wheel. Inside the void, investigators recovered approximately 11.4 ounces of suspected methamphetamine, 4.4 ounces of a purple solid chalky substance suspected to be MDMA and/or heroin. During a post *Miranda* interview,

following the traffic stop, KLINK admitted to investigators that there was an additional 5 pounds of Methamphetamine located in a natural void behind the glove box in the vehicle. Investigators subsequently recovered approximately 4.7 pounds of methamphetamine from behind the glove box. KLINK admitted to investigators that he intended to sell the Methamphetamine found in his vehicle. The suspected methamphetamine was sent to the DEA Mid-Atlantic Laboratory for testing and certificates of analysis confirmed that KLINK was in possession of over 2.2 kilograms of methamphetamine, with purity levels of 94% or higher.[1] Additional, certificates of analysis revealed that KLINK was also in possession of approximately 128 grams of MDMA and 14 grams of Ketamine.

**CONCLUSION**

Based on the foregoing, there is probable cause to believe that Robert Joseph KLINK Jr., did knowingly and unlawfully possess with intent to distribute 50 grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii).

Daniel Fethiere, Special Agent
Drug Enforcement Administration

Sworn to telephonically by the applicant on this __20th_ day of May, 2026, in Richmond, Virginia, in accordance with the requirements of Fed. R. Crim. P. 4.1.

/s/ MRC

Hon. Mark R. Colombell
United States Magistrate Judge

[1] Additional substances, including substances suspected to be methamphetamine, were also sent for chemical analysis; however, those results are still pending as of this writing.