# EXHIBIT B

With respect to the drug weight, the objection as to some of the government's cooperators and evidence that they gave by way of DEA-6, there have been objections to that made on their credibility. The Court finds that the credibility issues that are raised by Mr. Gavin are credibility issues that are raised often by cooperators who have access to people who distribute and possess with the intent to distribute controlled substances. Namely, that they have convictions, that they are on probation, that sometimes they don't comply with that probation as they should, and some of the other arguments.

But the government cited in its response a line of Fourth Circuit cases that kind of leads to the -- or has the holding that you have to show not only the credibility, but they said something that is inaccurate or untrue. I haven't heard any pushback on any of that. And although I've read about the credibility issues again that are raised with a lot of witnesses of this type, I haven't heard any evidence about the things that they said have been disproven other than some of their -- some of the credibility issues that they have. So hearing no evidence of that sort, the Court does adopt those statements and will overrule the objection and adopt the drug weight.

The defendant also has a policy argument as it relates to dealers of methamphetamine versus users, and

there's evidence that his client used and some of the policy issues that are raised in the guidelines. I understand that, but as we all know, they can be kind of three classes of individuals involved in this. There can be dealers who are high-level dealers or dealers who just don't use. There can be individuals who use and deal to support themselves and support their habit, and there can be just users. So I understand that argument. That really doesn't have an effect on the guidelines. But for the purposes of this, I will find that Mr. Andres here was a user but also a dealer. And not just a street-level dealer. He dealt in significant quantities. So I understand the objection, but that is overruled.

And, again, with respect to your objection that you raised where you gave me the Seventh Circuit case and the lab reports that you put forward, I am sustaining that in part because I do think, after a review of the guidelines, that it should not be referred to as ice in the presentence report, and so I am directing probation to change that.

But all of the parties have agreed -- the government, the defense and the Court -- even with that change, given the weight of drugs and given my ruling on that drug weight, that that does not change the guidelines. So that objection is, again, overruled in

part and sustained in part.

All right. I believe that addresses all your objections. Is that correct, Mr. Gavin?

MR. GAVIN: Yes, sir.

THE COURT: Okay. All right. Any other objections?

MR. GAVIN: No, sir.

THE COURT: Okay. So then based on my ruling, the probation officer has determined that Mr. Andres has a Total Offense Level of 44, a Criminal History Category of III, which yields an advisory sentencing guideline range of life plus 60 months consecutive imprisonment.

Government, based on my rulings, is that guideline range correctly calculated?

MR. COMSTOCK: Yes, Your Honor.

THE COURT: All right. Mr. Gavin, I know you disagree with how I ruled on some of your objections, but based on my ruling, is that the correct guideline range?

MR. GAVIN: Yes, sir.

THE COURT: Okay. Very good.

All right. Government, do you have any -- well, let me do this.

So I will now adopt the presentence report. So the presentence report is hereby accepted, adopted and it's filed as amended, as I've directed the probation

officer to amend the presentence report. It will be placed in the Court's official record and filed under seal. The presentence report will be available in the event of an appeal.

All right. Mr. Comstock, do you have any evidence you'd like to present in support of your position on sentencing?

MR. COMSTOCK: No additional evidence, Your Honor.

THE COURT: All right. Mr. Gavin, I know you've adopted Mr. Woodward's position on sentencing as well where, in part, in addition to some of the other things he objected to, asked for a downward variance. Do you have any evidence on that or anything else as it relates to your position on sentencing?

MR. GAVIN: No, sir, other than his paper.

THE COURT: Okay. All right. Very good.

All right. I will now hear argument. So, government, let me hear from you.

MR. COMSTOCK: Your Honor, I'll be as brief as possible. I don't want to reiterate my viewpoint about the dangers and the horrific impact of methamphetamine on this country and on its citizens.

Methamphetamine has changed from somebody in their backyard cooking it up in a trailer now to being

produced in laboratories in Mexico with precursor chemicals shipped over from the People's Republic of China. These drugs are now brought en masse to the United States in places like the central area of California, where Mr. Andres was raised and eventually joined the Navy from. And now all these drugs are making their way across America, and they're impacting citizens and cities and places and people, and they're just destroying people. This highly pure methamphetamine is really wreaking havoc on a lot of folks.

Based on that, based on the fact that Mr. Andres has been involved in crime essentially on a nonstop basis since he was discharged from the military, which was a long time ago, we would argue for a guideline sentence in this case, Your Honor. We believe a guideline sentence is fair and appropriate. We believe a guideline sentence sends the appropriate message to the community that if you're going to deal methamphetamine, you're going to bring large quantities of methamphetamine into Norfolk or Hampton Roads, you're going to get a severe sentence and you're going to put away for a very long time.

In addition to that, his threat level was even higher because he had firearms associated with the distribution, firearms for which this Court found him guilty. So we would ask for the additional 60 months

beyond a sentence imposed on the drug case, bearing in mind, of course, this Court could go as high as life consecutive on the guns, but we're only asking for 60 months conviction on the 924(c) conviction, Your Honor.

We believe that sentence is sufficient, but not greater than necessary. We believe it sends the appropriate message for the danger that methamphetamine is posing to our community, and it's just terrible what it's doing to people. Thank you, Your Honor.

THE COURT: Thank you.

All right, Mr. Gavin. I'll hear from you.

MR. GAVIN: Judge, when I researched these cases, you see that the weights in these cases now are astronomical, and that's a function of the time. I think the prosecutor is right in that it used to be smaller weights, smaller cooking places, smaller everything.

But because it's so now mainstream and because the weights are so big, only the people that fall into Mr. Andres' category, which are more addicts and also dealers, as the Court has found, you know, they get lumped into this really, really high weight. And you see these base offense levels at 38 all the time. I mean, it's pretty routinely a 38 or a 36. And for a 62-year-old gentleman -- I mean, Mr. Andres will be 62 in April. Any sentence greater than 20 years for him is effectively a

life sentence.

So the other part -- while I agree with the United States in that methamphetamine is causing big problems in our community and needs to be addressed, 3553(a) also requires us to look at the person. So you have, you know, Mr. Andres, who has basically been addicted his whole life. Most of the crimes in his criminal history are reflective of drug use or paraphernalia use or something related to drugs.

You know, as I said, he has no teeth because of his addiction. His living circumstances were awful. I mean, it's -- he's not the kind of person that would justify a life sentence, which this would be effectively under the government's argument.

Mr. Woodward argued that 10 years, which is the mandatory minimum, plus the 60, 16 years would put him out beyond 70, if he were to make it that far. So even if you went anywhere above that -- 20 years plus the 60 years -- it's essentially he'll die in jail one way or the other.

So the question is having this gentleman die in jail and not getting out to see fresh air again the equivalent of the damage that he's done to the community and the message that the Court needs to send to the community as a deterrence? And I would suggest that for this defendant, based on his age, his criminal history,

which, in large part, is old, and the fact that he is not, in my opinion, the dealer that I believe these guidelines were created to sentence, I would say that a sentence less than the guidelines would be appropriate.

And I would argue that -- maybe not what Mr. Woodward asked for, which was 10 years, but, you know, 15 years plus the 60 would still be effectively a life sentence, but it would also give Mr. Andres something to try to -- a light at the end of the tunnel, if you will, that would give him the incentive to maintain the right course, try to be productive in prison, maybe get some vocational treatment in prison, and otherwise give him something to look forward to.

THE COURT: All right. You can stay at the podium, Mr. Gavin, and I'll ask Mr. Andres to join you.

All right, Mr. Andres. You don't have to, but is there anything you'd like to say before I pronounce sentence?

THE DEFENDANT: No. I'm sorry I caused all this hassle.

THE COURT: Okay. All right.

So I've reviewed the presentence report and the attached sentencing guidelines, which are advisory. I've considered the government's position on sentencing, the defendant's position on sentencing, the evidence put

forward by the defendant, the argument of counsel, and the defendant's allocution.

I've also considered and reviewed all of the sentencing factors outlined in Title 18, United States Code, Section 3553(a). Specifically, I've considered the nature, circumstances, and seriousness of the offense. Mr. Andres stands before the Court having been found guilty by the Court of drug trafficking conspiracy, maintaining a drug-involved premises, possessing with the intent to distribute controlled substances, possessing with intent to distribute -- possession of a firearm in furtherance of drug trafficking crime, possession with intent to distribute marijuana, and possessing a firearm after being convicted of a felony offense.

So during the trial, several cooperating witnesses testified as to the drug distribution of Mr. Andres and his possession of firearms. Several of the witnesses advised that the defendant and his co-defendants distributed methamphetamine for him. Additionally, said cooperating witnesses admitted to obtaining methamphetamine from the defendant for their own personal use.

There was also testimony and financial records that supported the assertion that Mr. Andres would travel to California to obtain product that was ultimately

distributed in the Hampton Roads area of the Eastern District of Virginia.

There was also a search warrant on the residence of Mr. Andres where methamphetamine was recovered, along with firearms, including an AR15.

The evidence showed that Mr. Andres was the leader of this drug conspiracy.

The Court also considers the history and characteristics of the defendant. Mr. Andres is a 61-year-old man. His father was in the Navy, and he moved frequently as a child. He described his childhood as normal and reported no issues with abuse or neglect.

He was previously married for 11 years. During his marriage, his ex-wife became pregnant with twins, who passed away within two days of their birth. He has three adult children, two from his previous marriage and one from a consensual relationship with a woman in Colorado.

From 1978 to 1981, Mr. Andres was enlisted in the Navy and received an honorable discharge. In 2006, he was employed as a tattoo artist in California. And from 2018 forward, he was receiving social security benefits.

Mr. Andres has been diagnosed with several medical conditions, including, inter alia, high blood pressure, lower back and knee pain, and prediabetes. Mr. Andres is taking a number of medications to address

his numerous medical issues.

Mr. Andres has had a substance abuse problem for over 40 years. He began using marijuana at the age of 12 and used it until 1981. In 2002, he was introduced to crack cocaine, and then in 2005, he began using imitation methamphetamine.

The Court also considers the need for the sentence imposed to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from the further crimes of the defendant. When considering these factors, the Court notes that Mr. Andres has a criminal history that began when he was 23 years old, which includes convictions for selling or furnishing marijuana, for possession of marijuana, possession of a controlled substance, felon in possession of a firearm, keeping a place to sell controlled substances, manufacturing controlled substances, possession of a compound or mixture of a controlled substances, and possession of drug paraphernalia. There are many of these convictions for which Mr. Andres received zero points. Therefore, he has a Criminal History Category of III.

The Court also notes that this instant conviction that is before the Court is very much like the convictions Mr. Andres has in the past that I just

recited, which date back to 1984.

The Court also considers the need to provide the defendant with educational or vocational training and medical care. The defendant attended high school but left his senior year to join the Navy. He did, later on, obtain his GED. The Court has noted that he has a number of medical issues, and the Court will have a recommendation for that later in the sentencing.

The Court also considers the kinds of sentences available and the advisory sentencing guideline range. Again, the parties agree that based on the Court's ruling, that there's a Total Offense Level of 44, a Criminal History Category of III, which yields an advisory sentencing guideline range of life plus 60 months consecutive.

The Court also considers the need to avoid unwarranted disparities in sentencing, any pertinent policy statements, and the need to provide restitution to any victims of the offense. With respect to disparities, the Court also looks at the other two individuals as part of this conspiracy who have been sentenced and takes that into consideration in the sentence for Mr. Andres as well.

Now, the defense has moved for a downward variance based on the defendant's age and the fact that some of his convictions are old and one of the convictions

that earned him three points was 22 years old, and therefore, his criminal history is overstated, even though it wasn't overstated such that justified an objection under the guidelines as an overstatement of criminal history, but wants the Court to consider that as it relates to a variance. So the Court is going to grant a variance. And that variance will not be based on the age of the criminal history, but it will be based on the fact of Mr. Andres' age, the fact of his health condition, and the fact that he took a bench trial in this case.

So having said that, it is the judgment of the Court that the defendant, Vicente Andres, is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned as follows. And I will say this on the record, that -- so, Mr. Andres, the reason -- I've given the reasons for my variance, but his offense level is 44. Based on those reasons for a variance, I'm going to depart four levels, which will take that guideline range down to a range of 360 to life.

So I therefore sentence him to the following: On Count One, a term of imprisonment of 360 months; on Count Two, a term of 240 months; on Count Three, a term of 360 months; on Count Four, a term of 60 months; on Count Six, a term of 120 months. All of those are to run concurrently. And on Count Five, a term of 60 months

consecutive, for a total sentence of 420 months imprisonment.

The Court finds that this sentence is sufficient, but not greater than necessary, pursuant to the factors enumerated in Title 18, United States Code, Section 3553(a) and that I've analyzed above.

Mr. Andres shall be given credit for any time served pursuant to Title 18, United States Code, Section 3585.

Mr. Andres, upon your release from incarceration, you shall be placed on supervised release for a term of five years on Counts One, Three, and Five, and three years on Counts Two and Six, and two years on Count Four, to run concurrently, for a total term of supervised release of five years.

Within 72 hours of your release from the custody of the Bureau of Prisons, you shall report to the U.S. Probation Office in the district in which you've been released. While on supervised release, you shall comply with all of the mandatory terms of supervised release as outlined in Title 18, United States Code, Section 3583(d) and which are listed in your presentence report. Namely, you shall not commit another federal, state or local crime. You shall not unlawfully possess a controlled substance. You shall not possess a firearm or other

destructive device.

While on supervised release, you shall also comply with all of the standard conditions of supervised release that have been adopted by this court, as set forth in your presentence report and to which you've raised no objection.

While on supervised release, you shall also comply with the follow additional special conditions: If you test positive for a controlled substance or show signs of alcohol abuse, you shall participate in a program approved by the United States Probation Office for substance abuse treatment, which program may include residential treatment and testing to determine whether you have reverted to the use of drugs or alcohol, with partial costs to be paid by you, as directed by the probation officer.

You shall participate in a program approved by the United States Probation Office for mental health treatment. The cost of this program is to be paid by you, as directed by the probation officer.

You shall also waive all rights of confidentiality regarding substance abuse and mental health treatment in order to allow the release of information to the United States Probation Office and authorize communication between the probation officer and

the treatment provider.

The Court has considered your negative net worth and lack of liquid assets, your lifestyle and financial needs as reflected in the presentence report, and your earning potential, and other factors as well. The Court finds that you are not capable of paying a fine, but you are capable of paying the following penalties: A special assessment of $100 per count of conviction, for a total of $600. No fine or restitution is imposed in this case.

Payment of the criminal monetary penalties shall be as follows: The special assessment shall be due in full immediately. Any balance remaining unpaid on the special assessment at the inception of supervision shall be paid by the defendant in installments of not less than $25 per month until paid in full. Said payments shall commence 60 days after your supervision begins.

With respect to recommendations, the Court recommends that Mr. Andres receive any appropriate educational and vocational training while incarcerated. The Court recommends that the defendant receive an evaluation for the need for substance abuse treatment and mental health treatment while incarcerated, and the Court recommends that Mr. Andres be housed in a Bureau of Prisons medical facility in order to address his various medical and mental health needs, although it's ultimately

up to the Bureau of Prisons to determine where you will be housed.

So, Mr. Andres, you pled not guilty, and so you have an absolute right to appeal. And if you do desire to appeal, you need to file a notice of appeal within 14 days of today's date. If you don't file that notice of appeal within that time period, the Court of Appeals may determine you've waived your right to appeal.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Mr. Gavin, your representation of Mr. Andres shall extend through the filing of a notice of appeal, should there be a request for the same.

MR. GAVIN: Yes, sir.

THE COURT: All right. You all may return to your seat.

All right. There's a consent order of forfeiture that the parties have asked me to endorse, and I will endorse that at this time.

All right. All right. I believe that's -- so I misspoke on one of these counts of supervised release. So on Count Four, I think I originally said two years. That should be five years of supervised release on Count Four.

All right. Any objection?