# EXHIBIT F

## UNITED STATES SENTENCING COMMISSION

### Sentencing Guidelines for United States Courts

**AGENCY:** United States Sentencing Commission.

**ACTION:** Notice and request for public comment and hearing.

**SUMMARY:** The United States Sentencing Commission is considering promulgating amendments to the sentencing guidelines, policy statements, and commentary. This notice sets forth the proposed amendments and, for each proposed amendment, a synopsis of the issues addressed by that proposed amendment. This notice also sets forth several issues for comment, some of which are set forth together with the proposed amendments, and one of which (regarding retroactive application of proposed amendments) is set forth in the **SUPPLEMENTARY INFORMATION** section of this notice.

**DATES:**

*Written Public Comment.* Written public comment regarding the proposed amendments and issues for comment set forth in this notice, including public comment regarding retroactive application of any of the proposed amendments, should be received by the Commission not later than February 10, 2026. Public comment regarding a proposed amendment received after the close of the comment period may not be considered.

*Public Hearing.* The Commission may hold a public hearing regarding the proposed amendments and issues for comment set forth in this notice. Further information regarding any public hearing that may be scheduled, including requirements for testifying and providing written testimony, as well as the date, time, location, and scope of the hearing, will be provided by the Commission on its website at *www.ussc.gov.*

**ADDRESSES:** There are two methods for submitting public comment.

*Electronic Submission of Comments.* Comments may be submitted electronically via the Commission's Public Comment Submission Portal at *https://comment.ussc.gov.* Follow the online instructions for submitting comments.

*Submission of Comments by Mail.* Comments may be submitted by mail to the following address: United States Sentencing Commission, One Columbus Circle NE, Suite 2–500, Washington, DC 20002–8002, Attention: Public Affairs—Proposed Amendments.

**FOR FURTHER INFORMATION CONTACT:** Jennifer Dukes, Senior Public Affairs Specialist, (202) 502–4597.

**SUPPLEMENTARY INFORMATION:** The United States Sentencing Commission is an independent agency in the judicial branch of the United States Government. The Commission promulgates sentencing guidelines and policy statements for federal courts pursuant to 28 U.S.C. 994(a). The Commission also periodically reviews and revises previously promulgated guidelines pursuant to 28 U.S.C. 994(o) and submits guideline amendments to the Congress not later than the first day of May each year pursuant to 28 U.S.C. 994(p).

Publication of a proposed amendment requires the affirmative vote of at least three voting members of the Commission and is deemed to be a request for public comment on the proposed amendment. *See* USSC Rules of Practice and Procedure 2.2, 4.4. In contrast, the affirmative vote of at least four voting members is required to promulgate an amendment and submit it to Congress. *See id.* 2.2; 28 U.S.C. 994(p).

The proposed amendments in this notice are presented in one of two formats. First, some of the amendments are proposed as specific revisions to a guideline, policy statement, or commentary. Bracketed text within a proposed amendment indicates a heightened interest on the Commission's part in comment and suggestions regarding alternative policy choices; for example, a proposed enhancement of [2][4][6] levels indicates that the Commission is considering, and invites comment on, alternative policy choices regarding the appropriate level of enhancement. Similarly, bracketed text within a specific offense characteristic or application note means that the Commission specifically invites comment on whether the proposed provision is appropriate. Second, the Commission has highlighted certain issues for comment and invites suggestions on how the Commission should respond to those issues.

In summary, the proposed amendments and issues for comment set forth in this notice are as follows:

(1) A multi-part proposed amendment relating to drug offenses, including (A) (i) two options for amending § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy) to address the purity distinction between methamphetamine in ''actual'' form and methamphetamine as part of a mixture; (ii) amendments to § 2D1.1 to address offenses involving ''Ice;'' and (iii) related issues for comment; (B) amendments to § 2D1.1 to address the enactment of the Halt All Lethal Trafficking of Fentanyl Act (HALT Fentanyl Act), which permanently scheduled ''fentanyl-related substances,'' and a related issue for comment; and (C) amendments to § 2D1.1 to add new enhancements for offenses involving fentanyl and fentanyl analogues, and related issues for comment.

(2) A proposed amendment to the *Guidelines Manual* to amend the monetary tables and values to adjust for inflation, including the monetary values in the fine tables for individual defendants and for organizational defendants, and related issues for comment.

(3) A two-part proposed amendment relating to § 2B1.1 (Theft, Property Destruction, and Fraud), including (A) a proposal to restructure the loss table at § 2B1.1(b)(1) to simplify application of the table, and related issues for comment; and (B) amendments to § 2B1.1 to revise existing specific offense characteristics and add new specific offense characteristics to reflect the culpability of the individual and harm to the victim, and related issues for comment.

(4) A proposed amendment to Chapter Three, Part E setting forth two options to add a new adjustment at § 3E1.2 (Post-Offense Rehabilitation) providing a reduction if the defendant demonstrates positive post-offense behavior or rehabilitative efforts, and related issues for comment.

(5) A proposed amendment to the *Guidelines Manual* to simplify the procedure for determining the single offense level for cases involving multiple counts, including replacing the five guidelines in Chapter Three, Part D with a single guideline at § 3D1.1 that provides all the steps necessary to determine the single offense level for multiple counts, and related issues for comment.

(6) A proposed amendment to the *Guidelines Manual* to delete from certain Chapter Two guidelines 26 specific offense characteristics that courts did not apply at all in the last five fiscal years and that were applied a small number of times—if at all—using a 25-year lookback window, and a related issue for comment.

(7) A proposed amendment setting forth two options to address specific offense characteristics relating to sophisticated criminal conduct, including (A) an option for creating a new Chapter Three adjustment at

§ 3C1.5 (Sophisticated Means) addressing sophisticated conduct and deleting specific offense characteristics in Chapter Two guidelines that currently address sophisticated conduct; (B) an option for amending Chapter Two guidelines that contain specific offense characteristics addressing sophisticated conduct to provide updated, uniform guidance relating to sophisticated conduct; and (C) related issues for comment.

(8) A multi-part proposed amendment relating to recently enacted legislation and a miscellaneous issue, including (A) amendments to Appendix A (Statutory Index) and the Commentary to § 2A6.1 (Threatening or Harassing Communications; Hoaxes; False Liens) to respond to the Tools to Address Known Exploitation by Immobilizing Technological Deepfakes on websites and Networks Act (''TAKE IT DOWN Act''), Public Law 119–12 (2025), and a related issue for comment; (B) amendments to Appendix A and the Commentary to § 2S1.3 (Structuring Transactions to Evade Reporting Requirements; Failure to Report Cash or Monetary Transactions; Failure to File Currency and Monetary Instrument Report; Knowingly Filing False Reports; Bulk Cash Smuggling; Establishing or Maintaining Prohibited Accounts) to respond to the Fentanyl Eradication and Narcotics Deterrence Off Fentanyl Act (''FEND Off Fentanyl Act''), Public Law 118–50 (2024), and a related issue for comment; (C) amendments to Appendix A and the Commentary to § 2H3.1 (Interception of Communications; Eavesdropping; Disclosure of Certain Private or Protected Information) to respond to the Protecting Americans' Data from Foreign Adversaries Act, Public Law 118–50 (2024), and a related issue for comment; (D) amendments to Appendix A and the Commentary to § 2C1.1 (Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right; Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions) to respond to the Foreign Extortion Prevention Technical Corrections Act, Public Law 118–78 (2024), and a related issue for comment; and (E) amendments to Appendix A and the Commentary to § 2B1.4 (Insider Trading) to provide an Appendix A reference for 18 U.S.C. 1348, dealing with securities and commodities fraud, by referencing the statute to § 2B1.4, while also maintaining the current reference to § 2B1.1 (Theft, Property Destruction, and Fraud).

(9) A proposed amendment making technical and other non-substantive changes throughout the *Guidelines Manual.*

In addition, the Commission requests public comment regarding whether, pursuant to 18 U.S.C. 3582(c)(2) and 28 U.S.C. 994(u), any proposed amendment published in this notice should be included in subsection (d) of § 1B1.10 (Reduction in Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement)) as an amendment that may be applied retroactively to previously sentenced defendants. The Commission lists in § 1B1.10(d) the specific guideline amendments that the court may apply retroactively under 18 U.S.C. 3582(c)(2). The Background Commentary to § 1B1.10 lists the purpose of the amendment, the magnitude of the change in the guideline range made by the amendment, and the difficulty of applying the amendment retroactively to determine an amended guideline range under § 1B1.10(b) as among the factors the Commission considers in selecting the amendments included in § 1B1.10(d). To the extent practicable, public comment should address each of these factors.

The text of the proposed amendments and related issues for comment are set forth below. Additional information pertaining to the proposed amendments and issues for comment described in this notice may be accessed through the Commission's website at *www.ussc.gov.* In addition, as required by 5 U.S.C. 553(b)(4), plain-language summaries of the proposed amendments are available at *https://www.ussc.gov/guidelines/amendments/proposed-2026-amendments-federal-sentencing-guidelines-published-december-2025.*

*Authority:* 28 U.S.C. 994(a), (o), (p), (x); USSC Rules of Practice and Procedure 2.2, 4.3, 4.4.

**Carlton W. Reeves,**
*Chair.*

## Proposed Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary

### 1. Drug Offenses

*Synopsis of Proposed Amendment:* In August 2025, the Commission identified as one of its policy priorities for the amendment cycle ending May 1, 2026, ''[f]urther examination of the penalty structure for certain drug trafficking offenses under § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses)),'' including ''consideration of possible amendments addressing the purity distinctions for methamphetamine provided in the Drug Quantity Table and related application notes'' and ''consideration of other miscellaneous issues pertaining to drug trafficking offenses coming to the Commission's attention, such as statutory changes relating to fentanyl, sentencing enhancements for offenses involving fentanyl, and other fentanyl-related issues.'' U.S. Sent'g Comm'n, ''Notice of Final Priorities,'' 90 FR 39263 (Aug. 14, 2025).

This proposed amendment contains three parts (Parts A, B, and C). The Commission is considering whether to promulgate any or all of these parts, as they are not mutually exclusive.

*Part A* of the proposed amendment sets forth two options for amending § 2D1.1 to address the purity distinction between methamphetamine in ''actual'' form and methamphetamine as part of a mixture. It would also amend § 2D1.1 to address offenses involving ''Ice.'' Issues for comment are also included.

*Part B* of the proposed amendment would amend § 2D1.1 to address the enactment of the Halt All Lethal Trafficking of Fentanyl Act (HALT Fentanyl Act), which permanently scheduled ''fentanyl-related substances.'' An issue for comment is also provided.

*Part C* of the proposed amendment would amend § 2D1.1 to add new enhancements for offenses involving fentanyl and fentanyl analogues. Issues for comment are also provided.

*(A) Methamphetamine*

*Synopsis of Proposed Amendment:* Part A of the proposed amendment sets forth two options for amending § 2D1.1 to address the purity distinction between methamphetamine in ''actual'' form and methamphetamine as part of a mixture. Part A of the proposed amendment also addresses offenses involving ''Ice.'' Both options in Part A aim to update the *Guidelines Manual's* treatment of methamphetamine to reflect the evolving nature of methamphetamine trafficking, while addressing the concerns that animated Congress's decision to set mandatory minimum penalties for certain methamphetamine trafficking offenses.

Statutory History of Methamphetamine Trafficking Offenses

The statutory provisions and penalties associated with the trafficking of methamphetamine are found at 21 U.S.C. 841 and 960. While the statutory penalties for most drug types are based solely on drug quantity, the statutory penalties for methamphetamine are also based on the purity of the substance

involved in the offense. Sections 841 and 960 contain quantity threshold triggers for five- and ten-year mandatory minimums for methamphetamine (actual) (*i.e.,* ''pure'' methamphetamine) and methamphetamine (mixture) (*i.e.,* ''a mixture or substance containing a detectable amount of methamphetamine''). *See* 21 U.S.C. 841(b)(1)(A)(viii), (B)(viii), 960(b)(1)(H), & 960(b)(2)(H). Two different 10-to-1 quantity ratios set the mandatory minimum penalties for methamphetamine trafficking offenses. First, the quantity of substance triggering the ten-year minimum is ten times the quantity triggering the five-year minimum. Second, the quantity of methamphetamine mixture triggering each mandatory minimum is set at ten times the quantity of methamphetamine (actual) triggering the same statutory minimum penalty.

These penalties stem from action taken by Congress in 1988 and 1998 to address methamphetamine trafficking offenses. The record for the Anti-Drug Abuse Act of 1988 suggests that Congress endeavored to compare methamphetamine with other drugs in deciding the appropriate mandatory minimum threshold quantities, ultimately determining that methamphetamine ''is a serious and common drug of abuse, comparable in dangerousness to other controlled substances'' listed in the Anti-Drug Abuse Act of 1986. *See* 134 Cong. Rec. S17,367 (daily ed. Nov. 10, 1988). Specifically, Congress cited the Department of Justice's determination that the ''quantity of methamphetamine that justifies these penalties is the same as that currently set forth for PCP''—the only drug in the Anti-Drug Abuse Act of 1986 that had a purity distinction. *Id.* Over the next ten years, Congress considered changes to the statutory penalties for methamphetamine, frequently invoking comparisons between methamphetamine and crack cocaine in terms of the dangers and harms associated with the two drugs. With the Methamphetamine Trafficking Penalty Enhancement Act of 1998, Congress halved the quantities of methamphetamine set forth in the 1988 Act to the quantity threshold triggers that apply today. In doing so, it enacted mandatory minimum quantity thresholds for methamphetamine (actual) that matched those in place at the time for crack cocaine. Although the statutory penalties for crack cocaine have changed, the same statutory penalties for methamphetamine remain in place, and as explained below, the methamphetamine trafficking guidelines are linked to those penalties.

## Guideline History of Methamphetamine Trafficking Offenses

Under § 2D1.1, the base offense level for offenses involving methamphetamine varies based on the purity of the substance. Specifically, the Drug Quantity Table at § 2D1.1(c) contains three different entries relating to methamphetamine: (1) ''Methamphetamine,'' which refers to the entire weight of a mixture or substance containing a detectable amount of methamphetamine; (2) ''Methamphetamine (actual),'' which refers to the weight of methamphetamine itself contained in a mixture or substance; and (3) ''Ice,'' which is defined as ''a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity'' (*see* USSG § 2D1.1(c) (Note C)). The Drug Quantity Table sets base offense levels for methamphetamine mixture and methamphetamine (actual) in a manner that reflects the 10:1 quantity ratio of the applicable statutory provisions, such that it takes ten times more methamphetamine mixture than methamphetamine (actual) to trigger the same base offense level.

Although ''Ice'' is included in the guidelines, the term ''Ice'' does not appear in the statutory provisions setting penalties for methamphetamine offenses. ''Ice'' was added to the guidelines in response to the Crime Control Act of 1990, which directed the Commission to amend the guidelines ''for offenses involving smokable crystal methamphetamine . . . so that convictions for [such offenses] will be assigned an offense level . . . two levels above that which would have been assigned to the same offense involving other forms of methamphetamine.'' *See* Public Law 101–67, 2701 (1990). The 1990 Act did not, however, define ''smokable crystal methamphetamine,'' and the Commission and commenters struggled to determine its meaning. Ultimately, the Commission responded to the Act by adding ''Ice'' to the Drug Quantity Table—even though the 1990 Act did not use that term—and developed a definition of ''Ice'' based on the type and purity of methamphetamine. *See* USSG App. C, amend. 370 (effective Nov. 1, 1991). The Commission set the base offense levels for quantities of ''Ice'' equal to the base offense levels for the same quantities of methamphetamine (actual).

## Evolving Nature of Methamphetamine Trafficking

As explained in a recent report published by the Commission, there have been changes to the trends in methamphetamine trafficking in the last two decades. When Congress established the different statutory penalties for methamphetamine (actual) and methamphetamine mixture in the Anti-Drug Abuse Act of 1988, the average purity of the methamphetamine being trafficked in the United States was seldom greater than 50 percent. At the time, individuals sentenced for trafficking highly pure methamphetamine were considered to have a higher function in a drug distribution chain, and therefore greater culpability in the offense. Since then, however, the purity of the methamphetamine trafficked in the United States has increased substantially, and it is now rare to find methamphetamine that tests lower than 90 percent pure. *See* U.S. Sent'g Comm'n, Methamphetamine Trafficking Offenses in the Federal Criminal Justice System 3 (2024) at *https://www.ussc.gov/research/research-reports/methamphetamine-trafficking-offenses-federal-criminal-justice-system.*

Commission data further shows that the average purity of methamphetamine does not vary significantly based on the function of the individual drug trafficker. The Commission's report showed that high-level suppliers had drugs that were, on average, 95.2 percent pure, and drug organization employees had methamphetamine that was 93.3 percent pure. Likewise, an individual's function varied little by the primary type of methamphetamine involved in the offense, with the exception of the function of a drug courier. The rate of individuals sentenced for trafficking methamphetamine (actual) that acted as couriers (31.3%) was twice that compared to either methamphetamine mixture (13.5%) or ''Ice'' (13.8%).

While the nature of methamphetamine trafficking has evolved, so too has the methamphetamine trafficking caseload. Since fiscal year 2002, the number of offenses involving methamphetamine mixture has remained relatively steady, but the number of offenses involving methamphetamine (actual) and ''Ice'' has risen substantially. Offenses involving methamphetamine (actual) increased 299 percent from 910 offenses in fiscal year 2002 to 3,634 offenses in fiscal year 2022. As a result, in fiscal year 2022, methamphetamine (actual) accounted for more than half (52.2%) of

all methamphetamine cases. Offenses involving ''Ice'' also have risen during the past 20 years. In fiscal year 2002, there were 88 offenses involving ''Ice'' in the federal caseload; that number rose by 881 percent to 863 offenses in fiscal year 2022. Offenses involving ''Ice'' now make up more than ten percent (12.4%) of all methamphetamine cases. Offenses involving methamphetamine mixture comprise roughly a third (35.4%) of all methamphetamine cases. *See id.* at 4, 9, 18, 32–33, 38–39, 52.

Feedback From Stakeholders

The Commission has received significant comment regarding § 2D1.1's methamphetamine purity distinction, including in response to a proposed amendment the Commission published last year. *See* Public Comment on 2025 Proposed Amendments (March 2025) at *https://www.ussc.gov/policymaking/public-comment/public-comment-2025-proposed-amendments.* Some commenters suggested that the Commission should revisit or eliminate the disparity in § 2D1.1's treatment of methamphetamine mixture, on the one hand, and methamphetamine (actual) and ''Ice,'' on the other. Most of these commenters stated that purity is no longer an accurate measure of offense culpability because methamphetamine today is highly and uniformly pure and that ''Ice'' cases do not involve a higher level of purity than other forms of methamphetamine. Some of these commenters also pointed to disparities in testing practices across judicial districts, which, in turn, have yielded disparate sentences.

The commenters diverged, however, on the action the Commission should take to address the 10:1 quantity ratio for methamphetamine mixture and methamphetamine (actual). Some commenters supported setting base offense levels for all methamphetamine at the level of methamphetamine mixture or some lower level, such as at the level of cocaine. Other commenters supported setting base offense levels for all methamphetamine at the level of methamphetamine (actual). Still other commenters suggested that the Commission set the base offense levels at a level in between methamphetamine mixture and methamphetamine (actual), and recommended that the Commission undertake additional study of the issues. The Commission has since held a hearing to study methamphetamine, including its chemical structure, pharmacological effects, trafficking patterns, and community impact, and the differences, if any, between methamphetamine of varying purity levels.

Proposed Amendment

Part A of the proposed amendment would amend § 2D1.1 to address offenses involving ''Ice'' and the purity distinction between methamphetamine in ''actual'' form and methamphetamine as part of a mixture. Part A contains two options to address the purity distinction, both of which aim to respond to changes in methamphetamine trafficking and continue to reflect the dangers and harms identified by Congress when it set mandatory minimum penalties for these offenses.

Revisions Relating to Methamphetamine Purity Distinction

Part A of the proposed amendment sets forth two options to address the 10:1 quantity ratio for methamphetamine mixture and methamphetamine (actual).

*Option 1* would set the same quantity thresholds for all methamphetamine offenses. It would delete all references to ''methamphetamine (actual)'' from the Drug Quantity Table at § 2D1.1(c) and the Drug Conversion Tables at Application Note 8(D). The weight of the mixture or substance containing methamphetamine that triggers the base offense levels would then be the entire weight of any mixture or substance containing a detectable amount of methamphetamine. Option 1 brackets four alternatives for the quantity thresholds for methamphetamine: (1) quantity thresholds matching the current quantity thresholds for methamphetamine mixture; (2) quantity thresholds matching those of fentanyl; (3) quantity thresholds matching those of cocaine base; and (4) quantity thresholds matching the current quantity thresholds for methamphetamine (actual). This approach would simplify § 2D1.1 by reducing the number of methamphetamine entries in the Drug Quantity Table and Drug Conversion Tables, while reflecting how methamphetamine trafficking has changed.

*Option 2* would maintain different base offense levels for different methamphetamine offenses. It would set the baseline quantity thresholds for methamphetamine at a level between the current quantity thresholds for methamphetamine mixture and methamphetamine (actual). Option 2 brackets setting the baseline quantity thresholds for methamphetamine at the same level as cocaine base. The base offense level may be either reduced to the current base offense levels for methamphetamine mixture and its corresponding quantity thresholds if [1][2][3] or more of certain factors apply, or heightened to the current base offense levels for methamphetamine (actual) and its corresponding quantity thresholds if [1][2][3] or more of certain factors apply. Both lists of factors are set forth in the Notes to the Drug Quantity Table. These factors would reflect the concerns that animated Congress when it set the statutory minimum penalties for methamphetamine trafficking offenses.

Issues for comment for these revisions are also provided.

Revisions Relating to ''Ice''

Part A of the proposed amendment would amend the Drug Quantity Table at § 2D1.1(c) and the Drug Equivalency Tables at Application Note 8(D) of the Commentary to § 2D1.1 to delete all references to ''Ice.'' In addition, it would add a new specific offense characteristic at § 2D1.1(b)(19) that provides a [2]-level reduction if the offense involved only methamphetamine in a non-smokable, non-crystalline form, which would continue to ensure compliance with Congress's directive that ''convictions for offenses involving smokable crystal methamphetamine will be assigned an offense level under the guidelines which is two levels above'' other forms of methamphetamine.

An issue for comment relating to these revisions is also provided.

*Proposed Amendment:* Section 2D1.1(b) is amended by inserting at the end the following new paragraph (19):

''(19) If the offense involved only methamphetamine in a non-smokable, non-crystalline form, decrease by [2] levels.''.

*Option 1 (Using a single entry for methamphetamine):*

Section 2D1.1(c)(1) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and ''Ice'' as follows:

''• 45 KG or more of Methamphetamine, or

4.5 KG or more of Methamphetamine (actual), or

4.5 KG or more of 'Ice';'',

and inserting the following line:

''• [45][36][25.2][4.5] KG or more of Methamphetamine;''.

Section 2D1.1(c)(2) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and ''Ice'' as follows:

''• At least 15 KG but less than 45 KG of Methamphetamine, or

at least 1.5 KG but less than 4.5 KG of Methamphetamine (actual), or

at least 1.5 KG but less than 4.5 KG of 'Ice';'',

and inserting the following line:

"• At least [15 KG but less than 45 KG][12 KG but less than 36 KG][8.4 KG but less than 25.2 KG][1.5 KG but less than 4.5 KG] of Methamphetamine;".

Section 2D1.1(c)(3) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and "Ice" as follows:

"• At least 5 KG but less than 15 KG of Methamphetamine, or
at least 500 G but less than 1.5 KG of Methamphetamine (actual), or
at least 500 G but less than 1.5 KG of 'Ice';",

and inserting the following line:

"• At least [5 KG but less than 15 KG][4 KG but less than 12 KG][2.8 KG but less than 8.4 KG][500 G but less than 1.5 KG] of Methamphetamine;".

Section 2D1.1(c)(4) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and "Ice" as follows:

"• At least 1.5 KG but less than 5 KG of Methamphetamine, or
at least 150 G but less than 500 G of Methamphetamine (actual), or
at least 150 G but less than 500 G of 'Ice';",

and inserting the following line:

"• At least [1.5 KG but less than 5 KG][1.2 KG but less than 4 KG][840 G but less than 2.8 KG][150 G but less than 500 G] of Methamphetamine;".

Section 2D1.1(c)(5) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and "Ice" as follows:

"• At least 500 G but less than 1.5 KG of Methamphetamine, or
at least 50 G but less than 150 G of Methamphetamine (actual), or
at least 50 G but less than 150 G of 'Ice';"'

and inserting the following line:

"• At least [500 G but less than 1.5 KG][400 G but less than 1.2 KG][280 G but less than 840 G][50 G but less than 150 G] of Methamphetamine;".

Section 2D1.1(c)(6) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and "Ice" as follows:

"• At least 350 G but less than 500 G of Methamphetamine, or
at least 35 G but less than 50 G of Methamphetamine (actual), or
at least 35 G but less than 50 G of 'Ice';",

and inserting the following line:

"• At least [350 G but less than 500 G][280 G but less than 400 G][196 G but less than 280 G][35 G but less than 50 G] of Methamphetamine;".

Section 2D1.1(c)(7) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and "Ice" as follows:

"• At least 200 G but less than 350 G of Methamphetamine, or
at least 20 G but less than 35 G of Methamphetamine (actual), or
at least 20 G but less than 35 G of 'Ice';",

and inserting the following line:

"• At least [200 G but less than 350 G][160 G but less than 280 G][112 G but less than 196 G] [20 G but less than 35 G] of Methamphetamine;".

Section 2D1.1(c)(8) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and "Ice" as follows:

"• At least 50 G but less than 200 G of Methamphetamine, or
at least 5 G but less than 20 G of Methamphetamine (actual), or
at least 5 G but less than 20 G of 'Ice';",

and inserting the following line:

"• At least [50 G but less than 200 G][40 G but less than 160 G][28 G but less than 112 G][5 G but less than 20 G] of Methamphetamine;".

Section 2D1.1(c)(9) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and "Ice" as follows:

"• At least 40 G but less than 50 G of Methamphetamine, or
at least 4 G but less than 5 G of Methamphetamine (actual), or
at least 4 G but less than 5 G of 'Ice';",

and inserting the following line:

"• At least [40 G but less than 50 G][32 G but less than 40 G][22.4 G but less than 28 G] [4 G but less than 5 G] of Methamphetamine;".

Section 2D1.1(c)(10) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and "Ice" as follows:

"• At least 30 G but less than 40 G of Methamphetamine, or
at least 3 G but less than 4 G of Methamphetamine (actual), or
at least 3 G but less than 4 G of 'Ice';",

and inserting the following line:

"• At least [30 G but less than 40 G][24 G but less than 32 G][16.8 G but less than 22.4 G][3 G but less than 4 G] of Methamphetamine;".

Section 2D1.1(c)(11) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and "Ice" as follows:

"• At least 20 G but less than 30 G of Methamphetamine, or
at least 2 G but less than 3 G of Methamphetamine (actual), or
at least 2 G but less than 3 G of 'Ice';",

and inserting the following line:

"• At least [20 G but less than 30 G][16 G but less than 24 G][11.2 G but less than 16.8 G][2 G but less than 3 G] of Methamphetamine;".

Section 2D1.1(c)(12) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and "Ice" as follows:

"• At least 10 G but less than 20 G of Methamphetamine, or
at least 1 G but less than 2 G of Methamphetamine (actual), or
at least 1 G but less than 2 G of 'Ice';",

and inserting the following line:

"• At least [10 G but less than 20 G][8 G but less than 16 G][5.6 G but less than 11.2 G] [1 G but less than 2 G] of Methamphetamine;".

Section 2D1.1(c)(13) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and "Ice" as follows:

"• At least 5 G but less than 10 G of Methamphetamine, or
at least 500 MG but less than 1 G of Methamphetamine (actual), or
at least 500 MG but less than 1 G of 'Ice';",

and inserting the following line:

"• At least [5 G but less than 10 G][4 G but less than 8 G][2.8 G but less than 5.6 G] [500 MG but less than 1 G] of Methamphetamine;".

Section 2D1.1(c)(14) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and "Ice" as follows:

"• Less than 5 G of Methamphetamine, or
less than 500 MG of Methamphetamine (actual), or
less than 500 MG of 'Ice';",

and inserting the following line:

"• Less than [5 G][4 G][2.8 G][500 MG] of Methamphetamine;".

The annotation to § 2D1.1(c) captioned "Notes to Drug Quantity Table" is amended—

in Note (B) by striking the following:

"The terms 'PCP (actual)', 'Amphetamine (actual)', and 'Methamphetamine (actual)' refer to the weight of the controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual). In the case of a mixture or substance containing PCP, amphetamine, or methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the PCP (actual), amphetamine (actual), or methamphetamine (actual), whichever is greater.

The terms 'Hydrocodone (actual)' and 'Oxycodone (actual)' refer to the weight of the controlled substance, itself, contained in the pill, capsule, or mixture.",

and inserting the following:

"The terms 'PCP (actual)' and 'Amphetamine (actual)' refer to the weight of the controlled substance, itself, contained in the mixture or

substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual). In the case of a mixture or substance containing PCP or amphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the PCP (actual) or amphetamine (actual), whichever is greater.''.

and in Note (C) by striking '' 'Ice,' for the purposes of this guideline, means a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity'' and inserting ''The terms 'Hydrocodone (actual)' and 'Oxycodone (actual)' refer to the weight of the controlled substance, itself, contained in the pill, capsule, or mixture''.

The Commentary to § 2D1.1 captioned ''Application Notes'' is amended in Note 8(D), under the heading relating to Cocaine and Other Schedule I and II Stimulants (and their immediate precursors)—

by striking the line referenced to ''Ice'' as follows:

''1 gm of 'Ice' = 20 kg'';

and by striking the lines referenced to Methamphetamine and Methamphetamine (actual) as follows:

''1 gm of Methamphetamine = 2 kg

1 gm of Methamphetamine (actual) = 20 kg'',

and inserting the following line:

''1 gm of Methamphetamine = [20 kg][3,571 gm][2.5 kg][2 kg]''.

*Option 2 (Using different entries for methamphetamine):*

Section 2D1.1(c)(1) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and ''Ice'' as follows:

''• 45 KG or more of Methamphetamine, or

4.5 KG or more of Methamphetamine (actual), or

4.5 KG or more of 'Ice';'',

and inserting the following lines:

''• 45 KG or more of Methamphetamine (when reduced base offense level applies under Note (L) below), or

4.5 KG or more of Methamphetamine (when heightened base offense level applies under Note (M) below), or

[25.2] KG or more of Methamphetamine (in any other case);''.

Section 2D1.1(c)(2) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and ''Ice'' as follows:

''• At least 15 KG but less than 45 KG of Methamphetamine, or

at least 1.5 KG but less than 4.5 KG of Methamphetamine (actual), or

at least 1.5 KG but less than 4.5 KG of 'Ice';'',

and inserting the following lines:

''• At least 15 KG but less than 45 KG of Methamphetamine (when reduced base offense level applies under Note (L) below), or

at least 1.5 KG but less than 4.5 KG of Methamphetamine (when heightened base offense level applies under Note (M) below), or

at least [8.4 KG but less than 25.2 KG] of Methamphetamine (in any other case);''.

Section 2D1.1(c)(3) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and ''Ice'' as follows:

''• At least 5 KG but less than 15 KG of Methamphetamine, or

at least 500 G but less than 1.5 KG of Methamphetamine (actual), or

at least 500 G but less than 1.5 KG of 'Ice';'',

and inserting the following lines:

''• At least 5 KG but less than 15 KG of Methamphetamine (when reduced base offense level applies under Note (L) below), or

at least 500 G but less than 1.5 KG of Methamphetamine (when heightened base offense level applies under Note (M) below), or

at least [2.8 KG but less than 8.4 KG] of Methamphetamine (in any other case);''.

Section 2D1.1(c)(4) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and ''Ice'' as follows:

''• At least 1.5 KG but less than 5 KG of Methamphetamine, or

at least 150 G but less than 500 G of Methamphetamine (actual), or

at least 150 G but less than 500 G of 'Ice';'',

and inserting the following lines:

''• At least 1.5 KG but less than 5 KG of Methamphetamine (when reduced base offense level applies under Note (L) below), or

at least 150 G but less than 500 G of Methamphetamine (when heightened base offense level applies under Note (M) below), or

at least [840 G but less than 2.8 KG] of Methamphetamine (in any other case);''.

Section 2D1.1(c)(5) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and ''Ice'' as follows:

''• At least 500 G but less than 1.5 KG of Methamphetamine, or

at least 50 G but less than 150 G of Methamphetamine (actual), or

at least 50 G but less than 150 G of 'Ice';'''

and inserting the following lines:

''• At least 500 G but less than 1.5 KG of Methamphetamine (when reduced base offense level applies under Note (L) below), or

at least 50 G but less than 150 G of Methamphetamine (when heightened base offense level applies under Note (M) below), or

at least [280 G but less than 840 G] of Methamphetamine (in any other case);''.

Section 2D1.1(c)(6) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and ''Ice'' as follows:

''• At least 350 G but less than 500 G of Methamphetamine, or

at least 35 G but less than 50 G of Methamphetamine (actual), or

at least 35 G but less than 50 G of 'Ice';'',

and inserting the following lines:

''• At least 350 G but less than 500 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or

at least 35 G but less than 50 G of Methamphetamine (when heightened base offense level applies under Note (M) below), or

at least [196 G but less than 280 G] of Methamphetamine (in any other case);''.

Section 2D1.1(c)(7) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and ''Ice'' as follows:

''• At least 200 G but less than 350 G of Methamphetamine, or

at least 20 G but less than 35 G of Methamphetamine (actual), or

at least 20 G but less than 35 G of 'Ice';'',

and inserting the following lines:

''• At least 200 G but less than 350 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or

at least 20 G but less than 35 G of Methamphetamine (when heightened base offense level applies under Note (M) below), or

at least [112 G but less than 196 G] of Methamphetamine (in any other case);''.

Section 2D1.1(c)(8) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and ''Ice'' as follows:

''• At least 50 G but less than 200 G of Methamphetamine, or

at least 5 G but less than 20 G of Methamphetamine (actual), or

at least 5 G but less than 20 G of 'Ice';'',

and inserting the following lines:

''• At least 50 G but less than 200 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or

at least 5 G but less than 20 G of Methamphetamine (when heightened base offense level applies under Note (M) below), or

at least [28 G but less than 112 G] of Methamphetamine (in any other case);''.

Section 2D1.1(c)(9) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and ''Ice'' as follows:

''• At least 40 G but less than 50 G of Methamphetamine, or

at least 4 G but less than 5 G of Methamphetamine (actual), or

at least 4 G but less than 5 G of 'Ice';'', and inserting the following lines:

''• At least 40 G but less than 50 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or

at least 4 G but less than 5 G of Methamphetamine (when heightened base offense level applies under Note (M) below), or

at least [22.4 G but less than 28 G] of Methamphetamine (in any other case);''.

Section 2D1.1(c)(10) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and ''Ice'' as follows:

''• At least 30 G but less than 40 G of Methamphetamine, or

at least 3 G but less than 4 G of Methamphetamine (actual), or

at least 3 G but less than 4 G of 'Ice';'', and inserting the following lines:

''• At least 30 G but less than 40 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or

at least 3 G but less than 4 G of Methamphetamine (when heightened base offense level applies under Note (M) below), or

at least [16.8 G but less than 22.4 G] of Methamphetamine (in any other case);''.

Section 2D1.1(c)(11) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and ''Ice'' as follows:

''• At least 20 G but less than 30 G of Methamphetamine, or

at least 2 G but less than 3 G of Methamphetamine (actual), or

at least 2 G but less than 3 G of 'Ice';'', and inserting the following lines:

''• At least 20 G but less than 30 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or

at least 2 G but less than 3 G of Methamphetamine (when heightened base offense level applies under Note (M) below), or

at least [11.2 G but less than 16.8 G] of Methamphetamine (in any other case);''.

Section 2D1.1(c)(12) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and ''Ice'' as follows:

''• At least 10 G but less than 20 G of Methamphetamine, or

at least 1 G but less than 2 G of Methamphetamine (actual), or

at least 1 G but less than 2 G of 'Ice';'', and inserting the following lines:

''• At least 10 G but less than 20 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or

at least 1 G but less than 2 G of Methamphetamine (when heightened base offense level applies under Note (M) below), or

at least [5.6 G but less than 11.2 G] of Methamphetamine (in any other case);''.

Section 2D1.1(c)(13) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and ''Ice'' as follows:

''• At least 5 G but less than 10 G of Methamphetamine, or

at least 500 MG but less than 1 G of Methamphetamine (actual), or

at least 500 MG but less than 1 G of 'Ice';'',

and inserting the following lines:

''• At least 5 G but less than 10 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or

at least 500 MG but less than 1 G of Methamphetamine (when heightened base offense level applies under Note (M) below), or

at least [2.8 G but less than 5.6 G] of Methamphetamine (in any other case);''.

Section 2D1.1(c)(14) is amended by striking the lines referenced to Methamphetamine, Methamphetamine (actual), and ''Ice'' as follows:

''• Less than 5 G of Methamphetamine, or

less than 500 MG of Methamphetamine (actual), or

less than 500 MG of 'Ice';'',

and inserting the following lines:

''• Less than 5 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or

less than 500 MG of Methamphetamine (when heightened base offense level applies under Note (M) below), or

less than [2.8] G of Methamphetamine (in any other case);''.

The annotation to § 2D1.1(c) captioned ''Notes to Drug Quantity Table'' is amended—

in Note (B) by striking the following:

''The terms 'PCP (actual)', 'Amphetamine (actual)', and 'Methamphetamine (actual)' refer to the weight of the controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual). In the case of a mixture or substance containing PCP, amphetamine, or methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the PCP (actual), amphetamine (actual), or methamphetamine (actual), whichever is greater.

The terms 'Hydrocodone (actual)' and 'Oxycodone (actual)' refer to the weight of the controlled substance, itself, contained in the pill, capsule, or mixture.'',

and inserting the following:

''The terms 'PCP (actual)' and 'Amphetamine (actual)' refer to the weight of the controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual). In the case of a mixture or substance containing PCP or amphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the PCP (actual) or amphetamine (actual), whichever is greater.''.

in Note (C) by striking '' 'Ice,' for the purposes of this guideline, means a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity'' and inserting ''The terms 'Hydrocodone (actual)' and 'Oxycodone (actual)' refer to the weight of the controlled substance, itself, contained in the pill, capsule, or mixture'';

and by inserting at the end the following new Notes (L) and (M):

''(L) Use the reduced base offense level assigned to the weight of methamphetamine if [1][2][3] or more of the following factors apply:

(i) The defendant did not receive any enhancements under subsection (b)(1), (b)(2), (b)(5), (b)(12), or (b)(14), or any adjustments under § 3B1.1 (Aggravating Role) or § 3B1.4 (Using a Minor To Commit a Crime).

(ii) The defendant receives a reduction under subsection (b)(18).

(iii) The defendant receives an adjustment under § 3B1.2 (Mitigating Role).

(iv) The defendant was motivated to commit the offense by (I) an intimate or familial relationship, threats, fear, serious coercion, blackmail, or duress, and (II) was otherwise unlikely to commit such an offense.

(v) The defendant was unusually vulnerable to being persuaded or induced to commit the offense due to a physical or mental condition (including drug dependence or abuse), or the defendant's youthfulness at the time of the offense.

(vi) The defendant committed a single criminal occurrence or single criminal transaction that (I) was committed without significant planning, (II) was of limited duration, and (III) represents a marked deviation by the defendant from an otherwise law-abiding life.

(M) Use the heightened base offense level assigned to the weight of methamphetamine if [1][2][3] or more of the following factors apply:

(i) The defendant receives an enhancement under subsection (b)(1).

(ii) The defendant receives an enhancement under subsection (b)(2).

(iii) The defendant receives an enhancement under subsection (b)(5).

(iv) The defendant receives an enhancement under subsection (b)(12).

(v) The defendant receives an enhancement under subsection (b)(14).

(vi) The defendant receives an adjustment under § 3B1.1 (Aggravating Role).

(vii) The defendant receives an adjustment under § 3B1.4 (Using a Minor To Commit a Crime).

(viii) [The defendant (I) knowingly distributed methamphetamine to an individual less than [18][21] years of age and (II) was [at least [4][6][8] years older][substantially older] than that individual at the time of the offense][The offense involved the distribution of methamphetamine to an individual less than [18][21] years of age and the defendant was [at least [4][6][8] years older][substantially older] than that individual at the time of the offense].

(ix) The [defendant used or possessed][offense involved the use or possession of] a tableting machine or an encapsulating machine for the purpose of manufacturing methamphetamine.

(x) The [defendant used][offense involved the use of] the dark web or darknets (*i.e.,* part of the internet hidden from the general public that cannot be accessed by traditional search engines or web browsers and allows its users to hide their identity and location from other people and from law enforcement) to facilitate the commission or concealment of an offense involving methamphetamine.''.

The Commentary to § 2D1.1 captioned ''Application Notes'' is amended in Note 8(D), under the heading relating to Cocaine and Other Schedule I and II Stimulants (and their immediate precursors)—

by striking the line referenced to ''Ice'' as follows:

''1 gm of 'Ice' = 20 kg'';

and by striking the lines referenced to Methamphetamine and Methamphetamine (actual) as follows:

''1 gm of Methamphetamine = 2 kg

1 gm of Methamphetamine (actual) = 20 kg'',

and inserting the following lines:

''1 gm of Methamphetamine (when reduced base offense level applies under Note (L) of the Notes to the Drug Quantity Table) = 2 kg

1 gm of Methamphetamine (when heightened base offense level applies under Note (M) of the Notes to the Drug Quantity Table) = 20 kg

1 gm of Methamphetamine (in any other case) = [3,571 gm]''.

*Issues for Comment:*

1. Part A of the proposed amendment provides two options with different approaches. Option 1 provides a single entry for all methamphetamine offenses. Option 2, by contrast, sets forth different entries for methamphetamine offenses depending on the presence of certain factors. The Commission seeks general comment on which approach, if any, is appropriate to address the 10:1 quantity ratio for methamphetamine mixture, on the one hand, and methamphetamine (actual) and ''Ice,'' on the other. Should the Commission use the same quantity thresholds for all methamphetamine offenses? Should the Commission instead retain different quantity thresholds for different methamphetamine offenses? For example, should the Commission set baseline quantity thresholds for methamphetamine at the current level for methamphetamine mixture or at a less severe level, and provide for heightened base offense levels if certain factors apply? Should the Commission instead set baseline quantity thresholds for methamphetamine at the current level for methamphetamine (actual) or at a more severe level, and provide for reduced base offense levels if certain factors apply?

2. Option 1 brackets four alternatives for the quantity thresholds for all methamphetamine offenses: (1) quantity thresholds matching those of methamphetamine mixture; (2) quantity thresholds matching those of fentanyl; (3) quantity thresholds matching those of cocaine base; and (4) quantity thresholds matching those of methamphetamine (actual). What quantity thresholds should the Commission adopt for methamphetamine, and why? Should the Commission adopt quantity thresholds for methamphetamine that are less severe than the current levels for methamphetamine mixture (*e.g.,* quantity thresholds matching those of cocaine)?

3. Option 2 brackets setting the baseline quantity thresholds that trigger base offense levels for methamphetamine at the same level as cocaine base. These base offense levels could be reduced or heightened depending on the presence of certain factors. Should the Commission adopt a different baseline quantity threshold for methamphetamine? What is the basis for adopting any such baseline quantity threshold? Should the Commission adopt a different heightened or reduced base offense level? What is the basis for adopting any such heightened or reduced base offense level?

4. Option 2 sets forth factors that would result in the application of reduced or heightened base offense levels. The Commission seeks comment on whether the factors provided in Option 2 are appropriate to trigger a reduced or heightened base offense level. Should any factors be deleted or changed? Should the Commission provide additional or different factors? How many factors should be present in the offense to trigger the application of the reduced or heightened base offense levels?

5. The Commission seeks comment on whether using the factors set forth in Option 2 to trigger reduced or heightened base offense levels results in any inappropriate double-counting. If so, what action should the Commission take to account for the interaction between these factors and the applicable base offense level?

6. Some of the factors set forth in Option 2 are not specific offense characteristics or adjustments in the *Guidelines Manual.* If the Commission includes factors that are not in the *Guidelines Manual,* will it result in any fact-finding or administrability issues?

7. Both options would delete all references in § 2D1.1 to ''Ice'' and add a new specific offense characteristic at § 2D1.1(b)(19) that provides a [2]-level reduction if the offense involved only methamphetamine in a non-smokable, non-crystalline form. This new specific offense characteristic is intended to ensure compliance with the 1990 congressional directive (Pub. L. 101–67, 2701 (1990)). The Commission invites comment on whether the Commission should take an alternative approach to ensure compliance with the 1990 congressional directive.

*(B) Fentanyl-Related Substances*

*Synopsis of Proposed Amendment:* The Halt All Lethal Trafficking of Fentanyl Act (Pub. L. 119–26) (2025) (''HALT Fentanyl Act'') permanently scheduled ''fentanyl-related substances'' as Schedule I substances under 21 U.S.C. 812. The Act also expanded the offenses prohibited by 21 U.S.C. 841 and 960 to include ''fentanyl-related substances,'' setting the quantities that

trigger mandatory minimum penalties at the same level as fentanyl analogues. The Act defined ''fentanyl-related substances'' as

(2) For purposes of paragraph (1), except as provided in paragraph (3), the term ''fentanyl-related substance'' means any substance that is structurally related to fentanyl by 1 or more of the following modifications:

(A) By replacement of the phenyl portion of the phenethyl group by any monocycle, whether or not further substituted in or on the monocycle.

(B) By substitution in or on the phenethyl group with alkyl, alkenyl, alkoxyl, hydroxyl, halo, haloalkyl, amino, or nitro groups.

(C) By substitution in or on the piperidine ring with alkyl, alkenyl, alkoxyl, ester, ether, hydroxyl, halo, haloalkyl, amino, or nitro groups.

(D) By replacement of the aniline ring with any aromatic monocycle whether or not further substituted in or on the aromatic monocycle.

(E) By replacement of the N-propionyl group with another acyl group.

(3) A substance that satisfies the definition of the term ''fentanyl-related substance'' in paragraph (2) shall nonetheless not be treated as a fentanyl-related substance subject to this schedule if the substance—

(A) is controlled by action of the Attorney General under section 201; or

(B) is otherwise expressly listed in a schedule other than this schedule.

Public Law 119–26, 2 (2025). The HALT Fentanyl Act does not contain any directives to the Commission.

Part B of the proposed amendment would amend the Drug Quantity Table at subsection (c) § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy) and the Drug Equivalency Tables at Application Note 8(D) of the Commentary to § 2D1.1 to add ''fentanyl-related substance.'' It would set the quantity thresholds and base offense levels at the same level as fentanyl analogues. Part B of the proposed amendment would also amend the Notes to the Drug Quantity Table to add a definition of ''fentanyl-related substance'' that closely tracks the statutory definition.

In addition, Part B of the proposed amendment would add ''fentanyl-related substance'' to the enhancement at § 2D1.1(b)(13) for representing or marketing fentanyl or a fentanyl analogue as another substance or as a legitimately manufactured drug.

An issue for comment is also provided.

*Proposed Amendment:*

Section 2D1.1(b)(13) is amended by striking ''fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue'' both places it appear and inserting ''fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), a fentanyl analogue, or a fentanyl-related substance''.

Section 2D1.1(c)(1) is amended by inserting after the line referenced to a Fentanyl Analogue the following line:

''• 9 KG or more of a Fentanyl-Related Substance;''.

Section 2D1.1(c)(2) is amended by inserting after the line referenced to a Fentanyl Analogue the following line:

''• At least 3 KG but less than 9 KG of a Fentanyl-Related Substance;''.

Section 2D1.1(c)(3) is amended by inserting after the line referenced to a Fentanyl Analogue the following line:

''• At least 1 KG but less than 3 KG of a Fentanyl-Related Substance;''.

Section 2D1.1(c)(4) is amended by inserting after the line referenced to a Fentanyl Analogue the following line:

''• At least 300 G but less than 1 KG of a Fentanyl-Related Substance;''.

Section 2D1.1(c)(5) is amended by inserting after the line referenced to a Fentanyl Analogue the following line:

''• At least 100 G but less than 300 G of a Fentanyl-Related Substance;''.

Section 2D1.1(c)(6) is amended by inserting after the line referenced to a Fentanyl Analogue the following line:

''• At least 70 G but less than 100 G of a Fentanyl-Related Substance;''.

Section 2D1.1(c)(7) is amended by inserting after the line referenced to a Fentanyl Analogue the following line:

''• At least 40 G but less than 70 G of a Fentanyl-Related Substance;''.

Section 2D1.1(c)(8) is amended by inserting after the line referenced to a Fentanyl Analogue the following line:

''• At least 10 G but less than 40 G of a Fentanyl-Related Substance;''.

Section 2D1.1(c)(9) is amended by inserting after the line referenced to a Fentanyl Analogue the following line:

''• At least 8 G but less than 10 G of a Fentanyl-Related Substance;''.

Section 2D1.1(c)(10) is amended by inserting after the line referenced to a Fentanyl Analogue the following line:

''• At least 6 G but less than 8 G of a Fentanyl-Related Substance;''.

Section 2D1.1(c)(11) is amended by inserting after the line referenced to a Fentanyl Analogue the following line:

''• At least 4 G but less than 6 G of a Fentanyl-Related Substance;''.

Section 2D1.1(c)(12) is amended by inserting after the line referenced to a Fentanyl Analogue the following line:

''• At least 2 G but less than 4 G of a Fentanyl-Related Substance;''.

Section 2D1.1(c)(13) is amended by inserting after the line referenced to a Fentanyl Analogue the following line:

''• At least 1 G but less than 2 G of a Fentanyl-Related Substance;''.

Section 2D1.1(c)(14) is amended by inserting after the line referenced to a Fentanyl Analogue the following line:

''• Less than 1 G of a Fentanyl-Related Substance;''.

The annotation to § 2D1.1(c) captioned ''Notes to Drug Quantity Table'' is amended—

by redesignating Note (K) as Note (L);

and by inserting after Note (J) the following new Note (K):

''(K) Fentanyl-Related Substance, for purposes of this guideline, means any substance (including any salt, isomer, or salt of isomer thereof) that is structurally related to fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) by one or more of the following modifications:

(i) By replacement of the phenyl portion of the phenethyl group by any monocycle, whether or not further substituted in or on the monocycle.

(ii) By substitution in or on the phenethyl group with alkyl, alkenyl, alkoxyl, hydroxyl, halo, haloalkyl, amino, or nitro groups.

(iii) By substitution in or on the piperidine ring with alkyl, alkenyl, alkoxyl, ester, ether, hydroxyl, halo, haloalkyl, amino, or nitro groups.

(iv) By replacement of the aniline ring with any aromatic monocycle whether or not further substituted in or on the aromatic monocycle.

(v) By replacement of the N-propionyl group with another acyl group.

A substance that satisfies the definition of 'fentanyl-related substance' shall nonetheless not be treated as a fentanyl-related substance if the substance is controlled by action of the Attorney General under 21 U.S.C. 811 or is otherwise expressly listed in a schedule other that Schedule I.''.

The Commentary to § 2D1.1 captioned ''Application Notes'' is amended in Note 8(D), under the heading relating to Schedule I or II Opiates by inserting after the line referenced to a Fentanyl Analogue the following line:

''1 gm of a Fentanyl-Related Substance = 10 kg''.

*Issue for Comment:*

1. The Halt all Lethal Trafficking of Fentanyl Act (Pub. L. 119–26) (2025) (''HALT Fentanyl Act'') set the quantities of ''fentanyl-related substances'' that trigger mandatory minimum penalties at the same level as fentanyl analogues. In response to this, Part B of the amendment would set the quantity thresholds and base offense levels for fentanyl-related substances at

the same level as fentanyl analogues. The Commission invites comment on whether this is the appropriate approach. Should the quantity thresholds and base offense levels for fentanyl-related substances instead be set at the same level as fentanyl, another substance in the Drug Quantity Table, or some other level entirely? If so, why? How are fentanyl-related substances similar to or different from other substances in the Drug Quantity Table, including fentanyl or fentanyl analogues? How do the effects of fentanyl-related substances compare with the effects of other substances in the Drug Quantity Table, including fentanyl or fentanyl analogues?

*(C) Enhancements for Offenses Involving Fentanyl or Fentanyl Analogues*

*Synopsis of Proposed Amendment:* Fentanyl and fentanyl analogue cases have increased substantially over the last several years. Since fiscal year 2020, fentanyl cases have increased 255.7 percent, such that they comprised 20.2 percent of all federal drug trafficking cases in fiscal year 2024. Today, fentanyl represents the second most common drug type in federal drug trafficking cases. Fentanyl analogue cases occupy a much smaller portion of the federal drug trafficking caseload (1.9%), but those cases have increased 85.2 percent since fiscal year 2020.

In response to rising numbers of fentanyl and fentanyl analogue cases, the Commission previously undertook a multi-year study of synthetic controlled substances. In 2018, following that study, the Commission amended § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit Those Offenses); Attempt or Conspiracy) to add an enhancement specific to fentanyl and fentanyl analogue cases. In particular, the Commission added a new specific offense characteristic at subsection (b)(13) providing a 4-level increase when the defendant knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl or a fentanyl analogue. *See* USSG, App. C. amend. 807 (effective Nov. 1, 2018). In adding this new specific offense characteristic, the Commission pointed to the harm attendant to cases where a user does not know the substance they are using contains fentanyl or a fentanyl analogue. *Id.* As the Commission explained, ''[b]ecause of fentanyl's extreme potency, the risk of overdose death is great, particularly when the user is inexperienced or unaware of what substance he or she is using.'' *Id.* Thus, the Commission concluded that ''it is appropriate for traffickers who knowingly misrepresent fentanyl or a fentanyl analogue as another substance to receive additional punishment.'' *Id.*

In 2023, the Commission amended § 2D1.1(b)(13) based on the continued increase in fentanyl and fentanyl analogue distribution. *See* USSG, App. C. amend. 818 (effective Nov. 1, 2023). The amendment added a new subparagraph (B) with an alternative 2-level enhancement for offenses where the defendant represented or marketed as a legitimately manufactured drug another mixture or substance containing fentanyl or a fentanyl analogue, and acted with willful blindness or conscious avoidance of knowledge that such mixture or substance was not the legitimately manufactured drug. *Id.* As grounds for the amendment, the Commission cited data from the Drug Enforcement Administration (''DEA'') showing a substantial increase in the seizure of fake prescription pills. *Id.* The DEA reported seizing over 50.6 million fake pills in calendar year 2022, with 70 percent containing fentanyl. *Id.* Of those seized pills containing fentanyl, six out of ten contained a potentially lethal dose of the substance. *Id.* The Commission also pointed to the increase in drug overdose deaths—most of which involved synthetic opioids, primarily fentanyl. *Id.*

In 2025, the Commission amended § 2D1.1(b)(13)(B) to change the *mens rea* requirement. *See* USSG, App. C. amend. 833 (effective Nov. 1, 2025). The Commission received comment that § 2D1.1(b)(13)(B) was being applied inconsistently, in part, because the *mens rea* requirement generated confusion. In particular, commenters urged the Commission to revise § 2D1.1(b)(13)(B) because the mental state of ''willful blindness or conscious avoidance of knowledge'' was vague, and courts construed willful blindness as legally equivalent to knowledge, causing uncertainty over when the enhancement should be applied. The Commission further heard concerns about the continuing dangers associated with representing or marketing fentanyl or a fentanyl analogue as a legitimately manufactured drug. Informed by those concerns, the Commission changed the *mens rea* requirement in § 2D1.1(b)(13)(B) from ''willful blindness or conscious avoidance of knowledge'' to ''reckless disregard.''

The Commission has continued to receive comment on whether the guidelines appropriately account for factors specific to offenses involving fentanyl and fentanyl analogues. Earlier this year, the Commission sought public comment on several amendments proposed by the Department of Justice to address the harm in cases involving fentanyl, fentanyl analogues, and other opioids. *See* U.S. Sent'g Comm'n, ''Request for public comment,'' 90 FR 8840 (Feb. 3, 2025); *see also* Letter from Scott Meisler, *Ex-Officio* Member, U.S. Sent'g Comm'n, to Hon. Carlton W. Reeves, Chair, U.S. Sent'g Comm'n (July 15, 2024) at 5, available at *https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-comment/202407/89FR48029_public-comment_R.pdf.* Specifically, the Commission sought comment on whether it should create enhancements under § 2D1.1 for: (1) distribution of fentanyl, fentanyl analogues, and other opioids to individuals under the age of 21; (2) fentanyl, fentanyl analogue, and opioid offenses involving the use of the dark web or other anonymizing technologies; and (3) drug trafficking offenses involving fentanyl or another synthetic opioid adulterated with xylazine or medetomidine. Some commenters supported the proposed enhancements or asked the Commission to expand the enhancements to apply more broadly, while others opposed the proposed enhancements or asked the Commission to limit the enhancements to apply more narrowly.

In response to these concerns, Part C of the proposed amendment would amend § 2D1.1 to add four new specific offense characteristics that increase offense levels in fentanyl and fentanyl analogue trafficking cases involving certain factors. The Commission is considering each of these specific offense characteristics individually and whether to promulgate any of these specific offense characteristics or a combination of them.

First, Part C of the proposed amendment would add a new specific offense characteristic at § 2D1.1(b)(14) relating to the distribution of fentanyl or a fentanyl analogue to an individual less than [18][21] years of age or the use or attempted use of an individual less than [18][21] years of age to commit an offense involving such substance. For this enhancement to apply, the defendant must be, at the time of the offense, [at least [4][6][8] years older][substantially older] than the individual less than [18][21] years of age. Part C brackets alternatives for making the enhancement defendant-based or offense-based. The defendant-based alternative of this enhancement also brackets a *mens rea* requirement of knowledge relating to the age of the individual and to the substance involved in the offense.

Second, Part C of the proposed amendment would add a new specific offense characteristic at § 2D1.1(b)(15) relating to the use of the dark web or darknets to facilitate the commission or concealment of an offense involving fentanyl or a fentanyl analogue. It also brackets alternatives for making the enhancement defendant-based or offense-based.

Third, Part C of the proposed amendment would add a new specific offense characteristic at § 2D1.1(b)(16) relating to the distribution of a mixture or substance containing (A) fentanyl or a fentanyl analogue and (B) xylazine. It brackets alternatives for making the enhancement defendant-based or offense-based.

Finally, Part C of the proposed amendment would add a new specific offense characteristic at § 2D1.1(b)(17) relating to the use or possession of a tableting machine or an encapsulating machine for the purpose of manufacturing fentanyl or a fentanyl analogue. It brackets alternatives for making the enhancement defendant-based or offense-based.

Issues for comment are also provided.

*Proposed Amendment:*

*[Part C of the proposed amendment would insert any, a combination, or all of the following paragraphs to § 2D1.1(b) and redesignate current paragraphs (14) through (18) accordingly. In addition, it would make conforming changes in accordance with the redesignation of these paragraphs.]*

Section 2D1.1(b) is amended by inserting the following new paragraph(s):

''(14) [If the defendant[, knowing that an individual was less than [18][21] years of age and that the substance involved in the offense was fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue]—

(A) (i) distributed fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue to that individual, and (ii) the defendant was [at least [4][6][8] years older][substantially older] than that individual at the time of the offense; or

(B) (i) used or attempted to use that individual to commit an offense involving fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue, and (ii) the defendant was [at least [4][6][8] years older][substantially older] than that individual at the time of the offense,

increase by [2][4] levels. For purposes of subsection (b)(14)(B), 'used or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting.]

[If the offense involved—

(A) (i) the distribution of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue to an individual less than [18][21] years of age, and (ii) the defendant was [at least [4][6][8] years older][substantially older] than that individual at the time of the offense; or

(B) (i) using or attempting to use an individual less than [18][21] years of age to commit an offense involving fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue, and (ii) the defendant was [at least [4][6][8] years older][substantially older] than that individual at the time of the offense,

increase by [2][4] levels. For purposes of subsection (b)(14)(B), 'using or attempting to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting.]

(15) If [the defendant used][the offense involved the use of] the dark web or darknets (*i.e.,* part of the internet hidden from the general public that cannot be accessed by traditional search engines or web browsers and allows its users to hide their identity and location from other people and from law enforcement) to facilitate the commission or concealment of an offense involving fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue, increase by [2][4] levels.

(16) [If the defendant knowingly distributed a mixture or substance containing (A) fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue, and (B) xylazine, increase by [2][4] levels.]

[If the offense involved distribution of a mixture or substance containing (A) fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue, and (B) xylazine, increase by [2][4] levels.]

(17) If (A) subsection (b)(13) does not apply and (B) [the defendant used or possessed][the offense involved the use or possession of] a tableting machine or an encapsulating machine for the purpose of manufacturing fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue, increase by [2][4]levels.''.

The Commentary to § 2D1.1 captioned ''Application Notes'' is amended by inserting the following new Note 18:

''18. *Application of Subsection (b)(14).*—

(A) *Interaction with Subsection (b)(20).*—Do not apply subsection (b)(14) if subsection (b)(20)(B) also applies.

(B) *Interaction with Chapter Three Adjustment.*—If the conduct that forms the basis for an enhancement under subsection (b)(14) is the only conduct that forms the basis for an adjustment under § 3B1.4 (Using a Minor to Commit a Crime), do not apply that adjustment under § 3B1.4.''.

*[Part C of the proposed amendment would renumber current notes 18 through 26 accordingly. In addition, it would make conforming changes in accordance with the redesignation of these notes.]*

*Issues for Comment:*

1. Part C of the proposed amendment would amend § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy) to add four new specific offense characteristics that increase offense levels in fentanyl and fentanyl analogue trafficking cases involving certain factors. The Commission invites general comment on whether the proposed enhancements are appropriate to address the factors involved in fentanyl and fentanyl analogue trafficking cases, including the harm and the culpability of the defendants in these cases. If not, should the Commission take another approach to address these factors?

2. The proposed specific offense characteristics set forth in Part C of the proposed amendment would apply to offenses involving fentanyl or a fentanyl analogue. Part B of the proposed amendment would add references to ''fentanyl-related substances'' to the Drug Quantity Table and Drug Conversion Tables in § 2D1.1. If the Commission were to promulgate Part B of the proposed amendment, should the Commission also add fentanyl-related substances to the proposed specific offense characteristics set forth in this Part?

3. The proposed enhancement at § 2D1.1(b)(14) for offenses involving distributing fentanyl or a fentanyl analogue to an individual less than [18][21] years of age, or using an individual less than [18][21] years of age in the offense, contains a condition requiring that the defendant must be [at least [4][6][8] years older][substantially older] than the individual less than [18][21] years of age. The Commission seeks comment on whether it should include such a requirement. Is the requirement appropriate to address cases involving a defendant who is a peer or similar in age to an individual less than [18][21] years of age? If not,

what changes should the Commission make to the proposed enhancement?

4. The Commission published a proposed amendment setting forth a new Chapter Three adjustment at § 3C1.5 addressing offenses involving sophisticated means. If the Commission were to promulgate such an adjustment, should it affect the Commission's consideration of the proposed enhancement at § 2D1.1(b)(15) relating to the use of the dark web or darknets? If so, how?

5. Part C of the proposed amendment would add a new specific offense characteristic at § 2D1.1(b)(16) relating to the distribution of a mixture or substance containing (A) fentanyl or a fentanyl analogue and (B) xylazine. The Commission seeks comment on whether the proposed enhancement is appropriate. The Commission also seeks comment on whether there are other adulterants with similar effects (*e.g.,* medetomidine) to which the enhancement should apply.

6. The proposed enhancement at § 2D1.1(b)(17) provides that this enhancement shall not apply if the enhancement at § 2D1.1(b)(13) applies. The Commission seeks comment on the interaction between these two enhancements. Does the proposed enhancement at § 2D1.1(b)(17) capture conduct and harm that the current enhancement at § 2D1.1(b)(13) does not?

## 2. Inflationary Adjustments

*Synopsis of Proposed Amendment:* This proposed amendment is a result of the Commission's work in examining § 2B1.1 (Theft, Property Destruction, and Fraud) and related guidelines to consider whether the loss table should be revised to simplify application or to adjust for inflation. *See* U.S. Sent'g Comm'n, ''Notice of Final Priorities,'' 90 FR 39263 (Aug. 14, 2025). As part of that work, the Commission is considering whether to adjust all monetary tables and values in the guidelines for inflation.

The monetary tables and values in the guidelines, including the monetary values in the fine tables for individual defendants and for organizational defendants, were last revised to account for inflation in 2015. *See* USSG App. C, amend. 791 (effective Nov. 1, 2015). The proposed amendment would amend the monetary tables in the guidelines to adjust for inflation, *i.e.,* the tables in §§ 2B1.1 (Theft, Property, Destruction, and Fraud), 2B2.1 (Burglary), 2B3.1 (Robbery), 2R1.1 (Bid-Rigging, Price-Fixing or Market-Allocation Agreements Among Competitors), 2T4.1 (Tax Table), 5E1.2 (Fines for Individual Defendants), and 8C2.4 (Base Fine). The proposed amendment would adjust the monetary tables and values in the guidelines using a specific multiplier derived from the Bureau of Labor Statistics' Consumer Price Index and then would round the amounts using a set of rules extrapolated from the provisions for adjusting monetary penalties for inflation set forth in section 5(a) of the Federal Civil Penalties Inflation Adjustment Act of 1990. This is the same methodology the Commission used in 2015. *See* USSG App. C, amend. 791 (effective Nov. 1, 2015).

In addition, the proposed amendment adjusts for inflation the monetary value in specific offense characteristics in other Chapter Two guidelines and includes conforming changes to guidelines that refer to the monetary tables.

Issues for comment are also provided.

*Proposed Amendment:*

Section 2B1.1(b)(1) is amended by striking the following:

''If the loss exceeded $6,500, increase the offense level as follows:

| Loss (apply the greatest) | Increase in level |
|---|---|
| (A) $6,500 or less | no increase |
| (B) More than$6,500 | add 2 |
| (C) More than $15,000 | add 4 |
| (D) More than $40,000 | add 6 |
| (E) More than $95,000 | add 8 |
| (F) More than $150,000 | add 10 |
| (G) More than $250,000 | add 12 |
| (H) More than $550,000 | add 14 |
| (I) More than $1,500,000 | add 16 |
| (J) More than $3,500,000 | add 18 |
| (K) More than $9,500,000 | add 20 |
| (L) More than $25,000,000 | add 22 |
| (M) More than $65,000,000 | add 24 |
| (N) More than $150,000,000 | add 26 |
| (O) More than $250,000,000 | add 28 |
| (P) More than $550,000,000 | add 30.''; |

and inserting the following:

''If the loss exceeded $9,000, increase the offense level as follows:

| Loss (apply the greatest) | Increase in level |
|---|---|
| (A) $9,000 or less | no increase |
| (B) More than $9,000 | add 2 |
| (C) More than $20,000 | add 4 |
| (D) More than $55,000 | add 6 |
| (E) More than $150,000 | add 8 |
| (F) More than $200,000 | add 10 |
| (G) More than $350,000 | add 12 |
| (H) More than $750,000 | add 14 |
| (I) More than $2,000,000 | add 16 |
| (J) More than $5,000,000 | add 18 |
| (K) More than $15,000,000 | add 20 |
| (L) More than $35,000,000 | add 22 |
| (M) More than $90,000,000 | add 24 |

| Loss (apply the greatest) | Increase in Level |
|---|---|
| (N) More than $200,000,000 | add 26 |
| (O) More than $350,000,000 | add 28 |
| (P) More than $750,000,000 | add 30.”. |

Section 2B1.4(b)(1) is amended by striking ‘‘$6,500’’ and inserting ‘‘$9,000’’.

Section 2B1.5 is amended by striking ‘‘If the value of the cultural heritage resource or paleontological resource (A) exceeded $2,500 but did not exceed $6,500, increase by 1 level; or (B) exceeded $6,500, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount’’ and inserting ‘‘If the value of the cultural heritage resource or paleontological resource (A) exceeded $3,500 but did not exceed $9,000, increase by 1 level; or (B) exceeded $9,000, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount’’.

Section 2B2.1(b)(2) is amended by striking the following:

‘‘If the loss exceeded $5,000, increase the offense level as follows:

| Loss (apply the greatest) | Increase in level |
|---|---|
| (A) $5,000 or less | no increase |
| (B) More than $5,000 | add 1 |
| (C) More than $20,000 | add 2 |
| (D) More than $95,000 | add 3 |
| (E) More than $500,000 | add 4 |
| (F) More than $1,500,000 | add 5 |
| (G) More than $3,000,000 | add 6 |
| (H) More than $5,000,000 | add 7 |
| (I) More than $9,500,000 | add 8.”; |

and inserting the following:

‘‘If the loss exceeded $7,000, increase the offense level as follows:

| Loss (apply the greatest) | Increase in level |
|---|---|
| (A) $7,000 or less | no increase |
| (B) More than $7,000 | add 1 |
| (C) More than $25,000 | add 2 |
| (D) More than $150,000 | add 3 |
| (E) More than $700,000 | add 4 |
| (F) More than $2,000,000 | add 5 |
| (G) More than $4,000,000 | add 6 |
| (H) More than $7,000,000 | add 7 |
| (I) More than $15,000,000 | add 8.”. |

Section 2B2.3(b)(3) is amended by striking ‘‘If (A) the offense involved invasion of a protected computer; and (B) the loss resulting from the invasion (i) exceeded $2,500 but did not exceed $6,500, increase by 1 level; or (ii) exceeded $6,500, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount’’ and inserting ‘‘If (A) the offense involved invasion of a protected computer; and (B) the loss resulting from the invasion (i) exceeded $3,500 but did not exceed $9,000, increase by 1 level; or (ii) exceeded $9,000, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount’’.

Section 2B3.1 is amended by striking the following:

‘‘If the loss exceeded $20,000, increase the offense level as follows:

| Loss (apply the greatest) | Increase in level |
|---|---|
| (A) $20,000 or less | no increase |
| (B) More than $20,000 | add 1 |
| (C) More than $95,000 | add 2 |
| (D) More than $500,000 | add 3 |
| (E) More than $1,500,000 | add 4 |
| (F) More than $3,000,000 | add 5 |
| (G) More than $5,000,000 | add 6 |
| (H) More than $9,500,000 | add 7.”; |

and inserting the following:

‘‘If the loss exceeded $25,000, increase the offense level as follows:

| Loss (apply the greatest) | Increase in level |
|---|---|
| (A) $25,000 or less | no increase |
| (B) More than $25,000 | add 1 |
| (C) More than $150,000 | add 2 |
| (D) More than $700,000 | add 3 |
| (E) More than $2,000,000 | add 4 |
| (F) More than $4,000,000 | add 5 |
| (G) More than $7,000,000 | add 6 |
| (H) More than $15,000,000 | add 7.''. |

Section 2B3.2(b)(2) is amended by striking ''$20,000'' and inserting ''$25,000''.

Section 2B3.3(b)(1) is amended by striking ''If the greater of the amount obtained or demanded (A) exceeded $2,500 but did not exceed $6,500, increase by 1 level; or (B) exceeded $6,500, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount'' and inserting ''If the greater of the amount obtained or demanded (A) exceeded $3,500 but did not exceed $9,000, increase by 1 level; or (B) exceeded $9,000, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount''.

Section 2B4.1(b)(1) is amended by striking ''If the greater of the value of the bribe or the improper benefit to be conferred (A) exceeded $2,500 but did not exceed $6,500, increase by 1 level; or (B) exceeded $6,500, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount'' and inserting ''If the greater of the value of the bribe or the improper benefit to be conferred (A) exceeded $3,500 but did not exceed $9,000, increase by 1 level; or (B) exceeded $9,000, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount''.

Section 2B5.1(b)(1) is amended by striking ''If the face value of the counterfeit items (A) exceeded $2,500 but did not exceed $6,500, increase by 1 level; or (B) exceeded $6,500, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount'' and inserting ''If the face value of the counterfeit items (A) exceeded $3,500 but did not exceed $9,000, increase by 1 level; or (B) exceeded $9,000, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount''.

Section 2B5.3(b)(1) is amended by striking ''If the infringement amount (A) exceeded $2,500 but did not exceed $6,500, increase by 1 level; or (B) exceeded $6,500, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount'' and inserting ''If the infringement amount (A) exceeded $3,500 but did not exceed $9,000, increase by 1 level; or (B) exceeded $9,000, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount''.

Section 2B6.1(b)(1) is amended by striking ''If the retail value of the motor vehicles or parts (A) exceeded $2,500 but did not exceed $6,500, increase by 1 level; or (B) exceeded $6,500, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount'' and inserting ''If the retail value of the motor vehicles or parts (A) exceeded $3,500 but did not exceed $9,000, increase by 1 level; or (B) exceeded $9,000, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount''.

Section 2C1.1(b)(2) is amended by striking ''$6,500'' and inserting ''$9,000''.

Section 2C1.2(b)(2) is amended by striking ''$6,500'' and inserting ''$9,000''.

Section 2C1.8(b)(1) is amended by striking ''$6,500'' and inserting ''$9,000''.

Section 2E5.1(b)(2) is amended by striking ''If the value of the prohibited payment or the value of the improper benefit to the payer, whichever is greater (A) exceeded $2,500 but did not exceed $6,500, increase by 1 level; or (B) exceeded $6,500, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount'' and inserting ''If the value of the prohibited payment or the value of the improper benefit to the payer, whichever is greater (A) exceeded $3,500 but did not exceed $9,000, increase by 1 level; or (B) exceeded $9,000, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount''.

Section 2Q2.1(b)(3)(A) is amended by striking ''If the market value of the fish, wildlife, or plants (i) exceeded $2,500 but did not exceed $6,500, increase by 1 level; or (ii) exceeded $6,500, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount'' and inserting ''If the market value of the fish, wildlife, or plants (i) exceeded $3,500 but did not exceed $9,000, increase by 1 level; or (ii) exceeded $9,000, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount''.

Section 2R1.1 is amended by striking the following:

''If the volume of commerce attributable to the defendant was more than $1,000,000, adjust the offense level as follows:

| Volume of commerce (apply the greatest) | Adjustment to offense level |
|---|---|
| (A) More than $1,000,000 | add 2 |
| (B) More than $10,000,000 | add 4 |
| (C) More than $50,000,000 | add 6 |
| (D) More than $100,000,000 | add 8 |
| (E) More than $300,000,000 | add 10 |
| (F) More than $600,000,000 | add 12 |
| (G) More than $1,200,000,000 | add 14 |

| Volume of commerce (apply the greatest) | Adjustment to offense level |
|---|---|
| (H) More than $1,850,000,000 | add 16.”; |

and inserting the following:

“If the volume of commerce attributable to the defendant was more than $1,500,000, adjust the offense level as follows:

| Volume of commerce (apply the greatest) | Adjustment to offense level |
|---|---|
| (A) More than $1,500,000 | add 2 |
| (B) More than $15,000,000 | add 4 |
| (C) More than $70,000,000 | add 6 |
| (D) More than $150,000,000 | add 8 |
| (E) More than $400,000,000 | add 10 |
| (F) More than $800,000,000 | add 12 |
| (G) More than $1,650,000,000 | add 14 |
| (H) More than $2,500,000,000 | add 16.”. |

Section 2T3.1(a) is amended—

in paragraph (1) by striking ‘‘$1,500’’ and inserting ‘‘$2,000’’;

in paragraph (2) by striking ‘‘$200’’ and inserting ‘‘$300’’; and by striking ‘‘$1,500’’ and inserting ‘‘$2,000’’;

and in paragraph (3) by striking ‘‘$200’’ and inserting ‘‘$300’’.

Section 2T4.1 is amended by striking the following:

| Tax loss (apply the greatest) | Offense level |
|---|---|
| (A) $2,500 or less | 6 |
| (B) More than $2,500 | 8 |
| (C) More than $6,500 | 10 |
| (D) More than $15,000 | 12 |
| (E) More than $40,000 | 14 |
| (F) More than $100,000 | 16 |
| (G) More than $250,000 | 18 |
| (H) More than $550,000 | 20 |
| (I) More than $1,500,000 | 22 |
| (J) More than $3,500,000 | 24 |
| (K) More than $9,500,000 | 26 |
| (L) More than $25,000,000 | 28 |
| (M) More than $65,000,000 | 30 |
| (N) More than $150,000,000 | 32 |
| (O) More than $250,000,000 | 34 |
| (P) More than $550,000,000 | 36.”; |

and inserting the following:

| Tax loss (apply the greatest) | Offense level |
|---|---|
| (A) $3,500 or less | 6 |
| (B) More than $3,500 | 8 |
| (C) More than $9,000 | 10 |
| (D) More than $20,000 | 12 |
| (E) More than $55,000 | 14 |
| (F) More than $150,000 | 16 |
| (G) More than $350,000 | 18 |
| (H) More than $750,000 | 20 |
| (I) More than $2,000,000 | 22 |
| (J) More than $5,000,000 | 24 |
| (K) More than $15,000,000 | 26 |
| (L) More than $35,000,000 | 28 |
| (M) More than $90,000,000 | 30 |
| (N) More than $200,000,000 | 32 |
| (O) More than $350,000,000 | 34 |
| (P) More than $750,000,000 | 36.”. |

Section 5E1.2 is amended—

by striking the following:

FINE TABLE

| Offense level | A Minimum | B Maximum |
|---|---|---|
| 3 and below | $200 | $9,500 |
| 4–5 | 500 | 9,500 |
| 6–7 | 1,000 | 9,500 |
| 8–9 | 2,000 | 20,000 |
| 10–11 | 4,000 | 40,000 |
| 12–13 | 5,500 | 55,000 |
| 14–15 | 7,500 | 75,000 |
| 16–17 | 10,000 | 95,000 |
| 18–19 | 10,000 | 100,000 |
| 20–22 | 15,000 | 150,000 |
| 23–25 | 20,000 | 200,000 |
| 26–28 | 25,000 | 250,000 |
| 29–31 | 30,000 | 300,000 |
| 32–34 | 35,000 | 350,000 |
| 35–37 | 40,000 | 400,000 |
| 38 and above | 50,000 | 500,000.''; |

and inserting the following:

FINE TABLE

| Offense level | A Minimum | B Maximum |
|---|---|---|
| 3 and below | $300 | $15,000 |
| 4–5 | 700 | 15,000 |
| 6–7 | 1,500 | 15,000 |
| 8–9 | 2,500 | 25,000 |
| 10–11 | 5,500 | 55,000 |
| 12–13 | 7,500 | 75,000 |
| 14–15 | 10,000 | 100,000 |
| 16–17 | 15,000 | 150,000 |
| 18–19 | 15,000 | 150,000 |
| 20–22 | 20,000 | 200,000 |
| 23–25 | 25,000 | 250,000 |
| 26–28 | 35,000 | 350,000 |
| 29–31 | 40,000 | 400,000 |
| 32–34 | 50,000 | 500,000 |
| 35–37 | 55,000 | 550,000 |
| 38 and above | 70,000 | 700,000.''; |

and in subsection (h)—

in the heading by striking ''Instruction'' and inserting ''Instructions'';

and by inserting at the end the following new paragraph (2):

''(2) For offenses committed on or after November 1, 2015 but prior to November 1, 2026, use the applicable fine guideline range that was set forth in the version of § 5E1.2(c) that was in effect on November 1, 2025, rather than the applicable fine guideline range set forth in subsection (c) above.''.

Section 8C2.4 is amended—

in subsection (d) by striking the following:

| Offense level | Amount |
|---|---|
| 6 or less | $8,500 |
| 7 | 15,000 |
| 8 | 15,000 |
| 9 | 25,000 |
| 10 | 35,000 |
| 11 | 50,000 |
| 12 | 70,000 |
| 13 | 100,000 |
| 14 | 150,000 |
| 15 | 200,000 |
| 16 | 300,000 |
| 17 | 450,000 |
| 18 | 600,000 |
| 19 | 850,000 |
| 20 | 1,000,000 |
| 21 | 1,500,000 |
| 22 | 2,000,000 |
| 23 | 3,000,000 |
| 24 | 3,500,000 |
| 25 | 5,000,000 |
| 26 | 6,500,000 |
| 27 | 8,500,000 |
| 28 | 10,000,000 |
| 29 | 15,000,000 |
| 30 | 20,000,000 |
| 31 | 25,000,000 |
| 32 | 30,000,000 |
| 33 | 40,000,000 |
| 34 | 50,000,000 |
| 35 | 65,000,000 |
| 36 | 80,000,000 |
| 37 | 100,000,000 |
| 38 or more | 150,000,000.''; |

and inserting the following:

| Offense level | Amount |
|---|---|
| 6 or less | $10,000 |
| 7 | 20,000 |
| 8 | 20,000 |
| 9 | 35,000 |
| 10 | 50,000 |
| 11 | 70,000 |
| 12 | 95,000 |
| 13 | 150,000 |
| 14 | 200,000 |
| 15 | 250,000 |
| 16 | 400,000 |
| 17 | 600,000 |
| 18 | 800,000 |
| 19 | 1,000,000 |
| 20 | 1,500,000 |

| Offense level | Amount |
|---|---|
| 21 | 2,000,000 |
| 22 | 2,500,000 |
| 23 | 4,000,000 |
| 24 | 5,000,000 |
| 25 | 7,000,000 |
| 26 | 9,000,000 |
| 27 | 10,000,000 |
| 28 | 15,000,000 |
| 29 | 20,000,000 |
| 30 | 25,000,000 |
| 31 | 35,000,000 |
| 32 | 40,000,000 |
| 33 | 55,000,000 |
| 34 | 70,000,000 |
| 35 | 90,000,000 |
| 36 | 100,000,000 |
| 37 | 150,000,000 |
| 38 or more | 200,000,000.”; |

and in subsection (e)—

in the heading by striking ‘‘Instruction’’ and inserting ‘‘Instructions’’;

and by inserting at the end the following new paragraph (2):

‘‘(2) For offenses committed on or after November 1, 2015 but prior to November 1, 2026, use the offense level fine table that was set forth in the version of § 8C2.4(d) that was in effect on November 1, 2025, rather than the offense level fine table set forth in subsection (d) above.’’.

Issues for Comment

1. The Commission seeks comment on whether the monetary tables in the guidelines should be adjusted for inflation. The monetary tables set forth in the proposed amendment relate to a variety of different offenses and apply to a number of different criminal statutes. Given the difference between the types of offenses, should all monetary tables be adjusted for inflation? Do the types of offenses or statutory provisions related to any of the monetary tables suggest that it should not be adjusted for inflation?

2. The Commission seeks comment on whether the monetary tables in the guidelines should be adjusted on a regular basis, such as on an annual, five-year, or ten-year basis, or at particular inflationary measures, such as when $1.00 in the year the table was last adjusted has the same buying power as $1.25 or $1.33 or $1.50 in the current year? Should the Commission incorporate directly into the guidelines a mechanism for automatically adjusting for inflation? Would the incorporation of such a mechanism be consistent with the Commission's statutory authority?

**3. Economic Crimes**

*Synopsis of Proposed Amendment:* In August 2025, the Commission identified as one of its policy priorities for the amendment cycle ending May 1, 2026, ‘‘[e]xamination of § 2B1.1 (Theft, Property Destruction, and Fraud) and related guidelines to ensure the guidelines appropriately reflect the culpability of the individual and the harm to the victim, including [] reassessing the role of actual loss, intended loss, and gain[, ] considering whether the loss table in § 2B1.1 should be revised to simplify application or to adjust for inflation,’’ and ‘‘possible consideration of amendments that might be appropriate.’’ U.S. Sent'g Comm'n, ‘‘Notice of Final Priorities,’’ 90 FR 39263 (Aug. 14, 2025).

This proposed amendment contains two parts (Parts A and B). The Commission is considering whether to promulgate either or both of these parts, as they are not mutually exclusive.

*Part A* of the proposed amendment would restructure the loss table at § 2B1.1(b)(1) to simplify application of the table. Issues for comment are also provided.

*Part B* of the proposed amendment would amend existing specific offense characteristics (SOCs) and add new SOCs to § 2B1.1 to reflect the culpability of the individual and harm to the victim. Issues for comment are also provided.

*(A) Restructuring the Loss Table*

*Synopsis of Proposed Amendment:* The loss table at § 2B1.1(b)(1) provides a tiered enhancement based on the amount of loss resulting from the offense. Currently, there are 16 levels resulting in either no increase or an increase of up to 30 levels.

The Commission has received comment from some stakeholders advocating revising the loss table to simplify application and reduce the fact-finding burden on courts. Part A of the proposed amendment seeks to accomplish this by reducing the number of levels in the table. By reducing the number of levels in the table, the Commission seeks to ease the court's burden in cases involving a loss amount near the margins of two levels.

As a starting point, Part A of the proposed amendment restructures the loss table with wider ranges based on an analysis of the loss amount attributed to each sentenced individual in fiscal year 2024, creating five groups (or quintiles), with the loss amount for each group representing approximately 20 percent of the individuals sentenced under § 2B1.1.

For individuals sentenced in fiscal year 2024, the data show that for approximately 20 percent of individuals sentenced under § 2B1.1, the offense involved $15,000 or less of loss, resulting in either no enhancement or a 2-level enhancement; approximately 20 percent involved between $15,000 and $95,000, resulting in a 4- or 6-level enhancement; approximately 20 percent involved between $95,000 and $250,000, resulting in an 8- or 10-level enhancement; approximately 20 percent involved between $250,000 and $1,500,000, resulting in a 12- or 14-level enhancement; and approximately 20 percent involved more than $1,500,000 of loss, resulting in an enhancement ranging from 16 to 30-levels.

Part A of the proposed amendment would consolidate the loss table so that each of the first five levels would account for approximately 20 percent (a quintile) of cases sentenced under § 2B1.1 as reflected by the data described above. It also brackets the possibility of amending the offense level enhancement associated with each category. Under the revised table, offenses involving $15,000 of loss or less would receive no increase, offenses involving more than $15,000 of loss would receive a [4]-level increase, offenses involving more than $95,000 of loss would receive an [8]-level increase, offenses involving more than $250,000 of loss would receive a [12]-level increase, and offenses involving more than $1,500,000 of loss would receive a [16]-level increase.

The revised table retains the loss categories in the top quintile for offenses involving more than $9,500,000, $65,000,000, and $250,000,000 while bracketing the possibility of amending the associated offense level enhancements. These categories are retained to provide an offense level increase for individuals with the highest loss amounts.

The proposed amendment includes conforming changes to guidelines that refer to the loss table at § 2B1.1.

Issues for comment are also provided.

*Proposed Amendment:*

Section 2B1.1 is amended by striking the following:

‘‘If the loss exceeded $6,500, increase the offense level as follows:

| Loss (apply the greatest) | Increase in level |
|---|---|
| (A) $6,500 or less | no increase |

| Loss (apply the greatest) | Increase in level |
|---|---|
| (B) More than $6,500 | add 2 |
| (C) More than $15,000 | add 4 |
| (D) More than $40,000 | add 6 |
| (E) More than $95,000 | add 8 |
| (F) More than $150,000 | add 10 |
| (G) More than $250,000 | add 12 |
| (H) More than $550,000 | add 14 |
| (I) More than $1,500,000 | add 16 |
| (J) More than $3,500,000 | add 18 |
| (K) More than $9,500,000 | add 20 |
| (L) More than $25,000,000 | add 22 |
| (M) More than $65,000,000 | add 24 |
| (N) More than $150,000,000 | add 26 |
| (O) More than $250,000,000 | add 28 |
| (P) More than $550,000,000 | add 30.”; |

and inserting the following:

“If the loss exceeded $15,000, increase the offense level as follows:

| Loss (apply the greatest) | Increase in level |
|---|---|
| (A) $15,000 or less | no increase |
| (B) More than $15,000 | add [4] |
| (C) More than $95,000 | add [8] |
| (D) More than $250,000 | add [12] |
| (E) More than $1,500,000 | add [16] |
| (F) More than $9,500,000 | add [20] |
| (G) More than $65,000,000 | add [24] |
| (H) More than $250,000,000 | add [28].”. |

Section 2B1.4(b)(1) is amended by striking ‘‘$6,500’’ and inserting ‘‘$15,000’’.

Section 2B1.5(b)(1) is amended by striking ‘‘$6,500’’ both places such term appears and inserting ‘‘$15,000’’.

Section 2B2.3(b)(3) is amended by striking ‘‘$6,500’’ both places such term appears and inserting ‘‘$15,000’’.

Section 2B3.3(b)(1) is amended by striking ‘‘$6,500’’ both places such term appears and inserting ‘‘$15,000’’.

Section 2B4.1(b)(1) is amended by striking ‘‘$6,500’’ both places such term appears and inserting ‘‘$15,000’’.

Section 2B5.1(b)(1) is amended by striking ‘‘$6,500’’ both places such term appears and inserting ‘‘$15,000’’.

Section 2B5.3(b)(1) is amended by striking ‘‘$6,500’’ both places such term appears and inserting ‘‘$15,000’’.

Section 2B6.1(b)(1) is amended by striking ‘‘$6,500’’ both places such term appears and inserting ‘‘$15,000’’.

Section 2C1.1(b)(2) is amended by striking ‘‘$6,500’’ and inserting ‘‘$15,000’’.

Section 2C1.2(b)(2) is amended by striking ‘‘$6,500’’ and inserting ‘‘$15,000’’.

Section 2C1.8(b)(1) is amended by striking ‘‘$6,500’’ and inserting ‘‘$15,000’’.

Section 2E5.1(b)(2) is amended by striking ‘‘$6,500’’ both places such term appears and inserting ‘‘$15,000’’.

Section 2Q2.1(b)(3)(A) is amended by striking ‘‘$6,500’’ both places such term appears and inserting ‘‘$15,000’’.

Issues for Comment

1. The Commission seeks comment on whether the restructured loss table sufficiently accounts for the financial harm in economic crime offenses. Would the proposed revisions to the loss table advance the Commission’s goals of simplifying application and reducing the court’s fact-finding burden? What are the advantages and disadvantages of broader categories of loss? Are there other approaches the Commission should consider?

2. Part A of the proposed amendment would amend the loss table by establishing a loss exceeding $15,000 as the threshold to trigger an enhancement. The Commission seeks comment on whether this amount is the appropriate threshold to trigger an enhancement under the table. If not, what amount should it be?

3. Part A of the proposed amendment would maintain the offense level enhancement associated with each of the remaining loss categories. The Commission seeks comment on whether the offense level enhancements should be revised to account for the restructuring of the loss table. If so, how should they be revised? That is, what is the increase in offense level that should result from each loss category?

*(B) Culpability Factors*

*Synopsis of Proposed Amendment:* A wide variety of economic crimes are referenced to § 2B1.1. To account for the range of conduct, § 2B1.1 contains 20 specific offense characteristics (SOCs) and four cross-references to other guidelines.

Among the 20 SOCs is a provision providing a tiered enhancement based on the number of victims and the level of financial hardship to those victims resulting from the offense. USSG § 2B1.1(b)(2). There is also an enhancement if the individual committed the offense using ‘‘sophisticated means.’’ USSG § 2B1.1(b)(10)(C).

The Commission has heard from some stakeholders that § 2B1.1 does not appropriately reflect the culpability of sentenced individuals or the harm experienced by the victims. Specifically, some stakeholders have suggested that the guidelines should measure an individual’s culpability by considering the non-economic harm to victims, in addition to the economic impact and number of victims. Additionally, some stakeholders have asked the Commission to consider amending the sophisticated means enhancement because, in their view, the enhancement

is applied too broadly and for conduct that is not complex or intricate. These stakeholders suggest that the enhancement is often based on conduct that is inherent in economic crime offenses and therefore is captured by the base offense level. Some stakeholders have also noted that the enhancement is not applied uniformly because the guidelines do not provide a clear standard. Some stakeholders have also expressed concern that § 2B1.1 does not adequately account for mitigating factors for individuals with limited involvement in the offense.

Part B of the proposed amendment seeks to address these concerns.

Part B of the proposed amendment would create a new specific offense characteristic at § 2B1.1(b)(3) by adding an enhancement for offenses that resulted in substantial non-economic harm to one or more victims. The amendment brackets the possibility of a 2-, 3-, or 4-level enhancement. It would also provide a list of examples of ''non-economic harm,'' including physical harm, psychological harm, emotional trauma, harm to reputation or credit rating, and invasion of privacy.

Part B of the proposed amendment would amend the sophisticated means enhancement at renumbered § 2B1.1(b)(11). It would revise the definition of ''sophisticated means'' to mean ''committing or concealing an offense with a greater level of complexity than typical for an offense of that nature'' and provide further guidance for courts to use when determining whether conduct fits the definition. Additionally, the definition of ''United States,'' as it applies to the provision, would be moved from the commentary to the text of the guideline.

Part B of the proposed amendment would also add two mitigating factors. The first would provide for a [2]-level decrease if the defendant committed the offense at the direction of his or her employer for fear of negative employment consequences; was motivated by an intimate or familial relationship or by threats or fear to commit the offense and was otherwise unlikely to commit such an offense; or was unusually vulnerable to being persuaded or induced to commit the offense due to a physical or mental condition. The second mitigating factor would provide for a tiered decrease based on whether, prior to the defendant's knowledge of the criminal investigation or prosecution for the offense, the defendant voluntarily ceased the criminal activity, made efforts to return the money or property to the victim, or reported the offense to appropriate governmental authorities.

Additionally, the § 2B1.1 specific offense characteristics vary widely in frequency of use. As part of its ongoing efforts to simplify the *Guidelines Manual,* the Commission is considering deleting three specific offense characteristics that courts have applied infrequently (fewer than 1% of cases) in the last five fiscal years: § 2B1.1(b)(3), (4), and (13).

Issues for comment are also provided.

*Proposed Amendment:*

Section 2B1.1(b) is amended—

by redesignating paragraphs (3) through (20) as paragraphs (4) through (21), respectively;

by inserting after paragraph (2) the following new paragraph (3):

''(3) If the offense resulted in substantial non-economic harm to one or more victims, increase by [2][3][4] levels. For purposes of this provision, 'non-economic harm' includes such harms as physical harm, psychological harm, emotional trauma, harm to reputation or credit rating, and invasion of privacy interest.'';

in paragraph (11) (as so redesignated) by inserting at the end the following:

''For purposes of this provision:

'Sophisticated means' means committing or concealing an offense with a greater level of complexity than typical for an offense of that nature. Such complexity may be achieved through various methods, including by using advanced or emerging technologies [in ways not routinely employed by everyday users][in a more specialized, elaborate, or unusual way than an ordinary user would]. Sophisticated means are often used to increase the scale of the offense or to make especially difficult the detection of the offense [or the detection of the defendant's participation in the offense].

'United States' means each of the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, Guam, the Northern Mariana Islands, and American Samoa.'';

in paragraph (18)(C) (as so redesignated) by striking ''subsections (b)(2) and (b)(17)(B)'' and inserting ''subsections (b)(2) and (b)(18)(B)'';

and by inserting at the end the following new paragraphs (22) and (23):

''(22) If the defendant (A) committed the offense at the direction of his or her employer for fear of negative employment consequences; (B) was motivated by an intimate or familial relationship or by threats or fear to commit the offense and was otherwise unlikely to commit such an offense; or (C) was unusually vulnerable to being persuaded or induced to commit the offense due to a physical or mental condition, decrease by [2] levels.

(23) (Apply the greatest) If, prior to the defendant's knowledge of the criminal investigation or prosecution for the offense, the defendant—

(A) voluntarily ceased the criminal activity, [returned the money or property to the victim][made a good faith effort to the maximum extent possible to return the money or property to the victim], and reported the offense to appropriate governmental authorities, decrease by [2][4][6] levels;

(B) voluntarily ceased the criminal activity and [returned the money or property to the victim][made a good faith effort to the maximum extent possible to return the money or property to the victim], decrease by [2][4] levels; or

(C) voluntarily ceased the criminal activity, decrease by [2] levels.''.

The Commentary to § 2B1.1 captioned ''Application Notes'' is amended—

in Note 5 by striking ''(b)(4)'' both places such term appears and inserting ''(b)(5)'';

in Note 6 by striking ''(b)(6)'' both places such term appears and inserting ''(b)(7)'';

in Note 7 by striking ''(b)(8)(B)'' both places such term appears and inserting ''(b)(9)(B)'';

in Note 8—

in the heading by striking ''(b)(9)'' and inserting ''(b)(10)''

in subparagraph (A) by striking ''(b)(9)'' and inserting ''(b)(10)'';

in subparagraph (B) by striking ''(b)(9)(A)'' both places such term appears and inserting ''(b)(10)(A)'';

in subparagraph (C) by striking ''(b)(9)(C)'' and inserting ''(b)(10)(C)'';

in subparagraph (D) by striking ''(b)(9)(D)'' and inserting ''(b)(10)(D)'';

in subparagraph (E)(i) by striking ''(b)(9)(A)'' both places such term appears and inserting ''(b)(10)(A)'';

and in subparagraph (E)(ii) by striking ''(b)(9)(B)'' both places such term appears and inserting ''(b)(10)(B)'';

in Note 9 by striking the following:

''*Application of Subsection (b)(10).*—

(A) *Definition of United States.*—For purposes of subsection (b)(10)(B), 'United States' means each of the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, Guam, the Northern Mariana Islands, and American Samoa.

(B) *Sophisticated Means Enhancement under Subsection (b)(10)(C).*—For purposes of subsection (b)(10)(C), 'sophisticated means' means especially complex or especially intricate offense conduct pertaining to

the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

(C) *Non-Applicability of Chapter Three Adjustment.*—If the conduct that forms the basis for an enhancement under subsection (b)(10) is the only conduct that forms the basis for an adjustment under § 3C1.1, do not apply that adjustment under § 3C1.1.'';

and inserting the following new Note 9:

''*Application of Subsection (b)(11).*—

[(A) *Sophisticated Means Enhancement under Subsection (b)(11)(C).*—For purposes of subsection (b)(11)(C), an example of conduct ordinarily indicating sophisticated means includes, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

(B) *Non-Applicability of Chapter Three Adjustment.*—]If the conduct that forms the basis for an enhancement under subsection (b)(11) is the only conduct that forms the basis for an adjustment under § 3C1.1, do not apply that adjustment under § 3C1.1.'';

in Note 10—

in the heading by striking ''(b)(11)'' and inserting ''(b)(12)'';

in subparagraph (A) by striking ''(b)(11)'' and inserting ''(b)(12)'';

in subparagraph (C)—

in the heading by striking ''(b)(11)(C)(i)'' and inserting ''(b)(12)(C)(i)'';

in subparagraph (i) by striking ''(b)(11)(C)(i)'' and inserting ''(b)(12)(C)(i)'';

in subparagraph (ii) by striking ''(b)(11)(C)(i)'' and inserting ''(b)(12)(C)(i)'';

and in subparagraph (iii) by striking ''(b)(11)(C)(i)'' both places such term appears and inserting ''(b)(12)(C)(i)'';

and in subparagraph (D) by striking ''(b)(11)(C)(ii)'' both places such term appears and inserting ''(b)(12)(C)(ii)'';

in Note 11 by striking ''(b)(13)'' both places such term appears and inserting ''(b)(14)'';

in Note 12 by striking ''(b)(15)'' both places such term appears and inserting ''(b)(16)'';

in Note 13—

in the heading by striking ''(b)(17)(A)'' and inserting ''(b)(18)(A)'';

and in subparagraph (A) by striking ''(b)(17)(A)'' and inserting ''(b)(18)(A)'';

in Note 14—

in the heading by striking ''(b)(17)(B)'' and inserting ''(b)(18)(B)'';

in subparagraph (A) in the heading by striking ''(b)(17)(B)(i)'' and inserting ''(b)(18)(B)(i)'';

and in subparagraph (B) in the heading by striking ''(b)(17)(B)(ii)'' and inserting ''(b)(18)(B)(ii)'';

in Note 15—

in the heading by striking ''(b)(19)'' and inserting ''(b)(20)'';

in subparagraph (A) by striking ''(b)(19)'' and inserting ''(b)(20)'';

and in subparagraph (B) by striking ''(b)(19)(A)(iii)'' both places such term appears and inserting ''(b)(20)(A)(iii)''; and striking ''(b)(17)(B)'' both places such term appears and inserting ''(b)(18)(b)'';

and in Note 16—

in the heading by striking ''(b)(20)'' and inserting ''(b)(21)'';

in subparagraph (A) by striking ''(b)(20)'' and inserting ''(b)(21)'';

in subparagraph (B) by striking ''(b)(20)'' and inserting ''(b)(21)'';

and in subparagraph (C) by striking ''(b)(20)'' and inserting ''(b)(21)''.

The Commentary to § 2B1.1 captioned ''Background'' is amended by striking the following:

''Subsection (b)(5) implements the instruction to the Commission in section 2 of Public Law 105–101 and the directive to the Commission in section 3 of Public Law 110–384.

Subsection (b)(7) implements the directive to the Commission in section 10606 of Public Law 111–148.

Subsection (b)(8) implements the directive to the Commission in section 7 of Public Law 112–186.

Subsection (b)(9)(D) implements, in a broader form, the directive in section 3 of the College Scholarship Fraud Prevention Act of 2000, Public Law 106–420.

Subsection (b)(10) implements, in a broader form, the instruction to the Commission in section 6(c)(2) of Public Law 105–184.

Subsections (b)(11)(A)(i) and (B)(i) implement the instruction to the Commission in section 4 of the Wireless Telephone Protection Act, Public Law 105–172.

Subsection (b)(11)(C) implements the directive to the Commission in section 4 of the Identity Theft and Assumption Deterrence Act of 1998, Public Law 105–318. This subsection focuses principally on an aggravated form of identity theft known as 'affirmative identity theft' or 'breeding', in which a defendant uses another individual's name, social security number, or some other form of identification (the 'means of identification') to 'breed' (*i.e.,* produce or obtain) new or additional forms of identification. Because 18 U.S.C. 1028(d) broadly defines 'means of identification', the new or additional forms of identification can include items such as a driver's license, a credit card, or a bank loan. This subsection provides a minimum offense level of level 12, in part because of the seriousness of the offense. The minimum offense level accounts for the fact that the means of identification that were 'bred' (*i.e.,* produced or obtained) often are within the defendant's exclusive control, making it difficult for the individual victim to detect that the victim's identity has been 'stolen.' Generally, the victim does not become aware of the offense until certain harms have already occurred (*e.g.,* a damaged credit rating or an inability to obtain a loan). The minimum offense level also accounts for the non-monetary harm associated with these types of offenses, much of which may be difficult or impossible to quantify (*e.g.,* harm to the individual's reputation or credit rating, inconvenience, and other difficulties resulting from the offense). The legislative history of the Identity Theft and Assumption Deterrence Act of 1998 indicates that Congress was especially concerned with providing increased punishment for this type of harm.

Subsection (b)(12) implements the directive in section 5 of Public Law 110–179.

Subsection (b)(14) implements the directive in section 3 of Public Law 112–269.

Subsection (b)(16)(B) implements, in a broader form, the instruction to the Commission in section 110512 of Public Law 103–322.

Subsection (b)(17)(A) implements, in a broader form, the instruction to the Commission in section 2507 of Public Law 101–647.

Subsection (b)(17)(B)(i) implements, in a broader form, the instruction to the Commission in section 961(m) of Public Law 101–73.

Subsection (b)(18) implements the directive in section 209 of Public Law 110–326.

Subsection (b)(19) implements the directive in section 225(b) of Public Law 107–296. The minimum offense level of level 24 provided in subsection (b)(19)(B) for an offense that resulted in a substantial disruption of a critical

infrastructure reflects the serious impact such an offense could have on national security, national economic security, national public health or safety, or a combination of any of these matters.'';

and inserting the following:

''Subsection (b)(6) implements the instruction to the Commission in section 2 of Public Law 105–101 and the directive to the Commission in section 3 of Public Law 110–384.

Subsection (b)(8) implements the directive to the Commission in section 10606 of Public Law 111–148.

Subsection (b)(9) implements the directive to the Commission in section 7 of Public Law 112–186.

Subsection (b)(10)(D) implements, in a broader form, the directive in section 3 of the College Scholarship Fraud Prevention Act of 2000, Public Law 106–420.

Subsection (b)(11) implements, in a broader form, the instruction to the Commission in section 6(c)(2) of Public Law 105–184.

Subsections (b)(12)(A)(i) and (B)(i) implement the instruction to the Commission in section 4 of the Wireless Telephone Protection Act, Public Law 105–172.

Subsection (b)(12)(C) implements the directive to the Commission in section 4 of the Identity Theft and Assumption Deterrence Act of 1998, Public Law 105–318. This subsection focuses principally on an aggravated form of identity theft known as 'affirmative identity theft' or 'breeding', in which a defendant uses another individual's name, social security number, or some other form of identification (the 'means of identification') to 'breed' (*i.e.,* produce or obtain) new or additional forms of identification. Because 18 U.S.C. 1028(d) broadly defines 'means of identification', the new or additional forms of identification can include items such as a driver's license, a credit card, or a bank loan. This subsection provides a minimum offense level of level 12, in part because of the seriousness of the offense. The minimum offense level accounts for the fact that the means of identification that were 'bred' (*i.e.,* produced or obtained) often are within the defendant's exclusive control, making it difficult for the individual victim to detect that the victim's identity has been 'stolen.' Generally, the victim does not become aware of the offense until certain harms have already occurred (*e.g.,* a damaged credit rating or an inability to obtain a loan). The minimum offense level also accounts for the non-monetary harm associated with these types of offenses, much of which may be difficult or impossible to quantify (*e.g.,* harm to the individual's reputation or credit rating, inconvenience, and other difficulties resulting from the offense). The legislative history of the Identity Theft and Assumption Deterrence Act of 1998 indicates that Congress was especially concerned with providing increased punishment for this type of harm.

Subsection (b)(13) implements the directive in section 5 of Public Law 110–179.

Subsection (b)(15) implements the directive in section 3 of Public Law 112–269.

Subsection (b)(17)(B) implements, in a broader form, the instruction to the Commission in section 110512 of Public Law 103–322.

Subsection (b)(18)(A) implements, in a broader form, the instruction to the Commission in section 2507 of Public Law 101–647.

Subsection (b)(18)(B)(i) implements, in a broader form, the instruction to the Commission in section 961(m) of Public Law 101–73.

Subsection (b)(19) implements the directive in section 209 of Public Law 110–326.

Subsection (b)(20) implements the directive in section 225(b) of Public Law 107–296. The minimum offense level of level 24 provided in subsection (b)(20)(B) for an offense that resulted in a substantial disruption of a critical infrastructure reflects the serious impact such an offense could have on national security, national economic security, national public health or safety, or a combination of any of these matters.''.

The Commentary to § 2J1.1 captioned ''Application Notes'' is amended—

in Note 2 by striking ''§ 2B1.1(b)(9)(C)'' and inserting ''§ 2B1.1(b)(10)(C)'';

and in Note 3 by striking ''§ 2B1.1(b)(9)(C)'' and inserting ''§ 2B1.1(b)(10)(C)''.

Chapter Three, Part D is amended in the Concluding Commentary to Part D of Chapter Three in Example 3 by striking ''§ 2B1.1(b)(10)'' and inserting ''§ 2B1.1(b)(11)''.

Issues for Comment

1. The Commission seeks comment on whether Part B of the proposed amendment's addition of new subsection (b)(3) adequately addresses substantial non-economic harm to victims. If not, what additional factors or other provisions should the Commission include to address those harms?

How should this new enhancement interact with other provisions in § 2B1.1 (Theft, Property Destruction, and Fraud) that account for harm to victims? For example, how should this new enhancement interact with the victims table in subsection (b)(2), the enhancement for theft from the person of another in renumbered subsection (b)(4), the enhancement for means of identification in renumbered subsection (b)(12), and the enhancement for unauthorized public dissemination of personal information in renumbered subsection (b)(19)(B)? Should this new enhancement be cumulative with the victims table and the other enhancements, or should the Commission reduce the cumulative impact of these various provisions?

2. Part B of the proposed amendment would amend the definition of ''sophisticated means'' to mean ''committing or concealing an offense with a greater level of complexity than typical for an offense of that nature.'' It would also include a provision stating that the complexity required by the ''sophisticated means'' definition ''may be achieved through various methods, including by using advanced or emerging technologies [in ways not routinely employed by everyday users][in a more specialized, elaborate, or unusual way than an ordinary user would].'' The Commission seeks comment on whether the proposed amended definition of ''sophisticated means'' is the appropriate definition. Is it an improvement over the current definition? Should the Commission provide guidance regarding the level of complexity that is typical for an offense of that nature? If so, what type of guidance should the Commission provide? Further, should the Commission provide additional guidance on what should be considered ''advanced or emerging technologies'' or on how such technologies must be used for purposes of applying the proposed definition? If so, what guidance should the Commission provide?

Additionally, Part B of the proposed amendment brackets the possibility of maintaining the examples of ''sophisticated means'' provided in Application Note 9, providing that, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means and that conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means. If the Commission amends the definition of ''sophisticated means,'' should the Commission maintain these examples? If not, should the Commission add additional factors or other provisions to the definition of ''sophisticated means''?

3. Part B of the proposed amendment would add to § 2B1.1 a new [2]-level reduction at subsection (b)(22) if the individual committed the offense under coercion or duress. The Commission seeks comment on whether this new adjustment should apply more narrowly or more broadly. The Commission also seeks comment on whether the criteria provided for this new reduction are appropriate. Should any criterion be deleted or changed? Should the Commission provide additional or different criteria?

4. Part B of the proposed amendment would add to § 2B1.1 a new tiered reduction at subsection (b)(23) if the defendant took certain actions prior to the defendant's knowledge of the criminal investigation or prosecution of the offense. The Commission seeks comment on whether this new adjustment should apply more narrowly or more broadly. The Commission also seeks comment on whether the criteria provided for this new reduction are appropriate. Should any criterion be deleted or changed? Should the Commission provide additional or different criteria? Should the proposed amendment instead replace the tiered approach with a multi-factor test? If so, what factors should be included for courts to consider when determining whether to provide an offense level reduction?

The Commission is also considering a separate proposed amendment that would provide a reduction at newly created § 3E1.2 (Post-Offense Rehabilitation) based on a defendant's positive post-offense behavior or rehabilitative efforts. The Commission seeks comment on how the proposed reduction at § 2B1.1(b)(23) under Part B of this proposed amendment should interact with the proposed reduction at § 3E1.2 under the other amendment. Should the proposed reduction at § 2B1.1(b)(23) be cumulative with a reduction at § 3E1.2 for post-offense rehabilitation, or should the Commission limit the cumulative reduction of these provisions? Are there other provisions in the *Guidelines Manual* that would interact with the proposed reduction at § 2B1.1(b)(23)? If so, how should the Commission account for the interaction(s)?

5. Section 2B1.1 contains specific offense characteristics (SOCs) that are applied infrequently. The Commission seeks comment on whether it should simplify the guideline by amending or removing three infrequently applied SOCs: § 2B1.1(b)(3) (''If the offense involved a theft from the person of another, increase by 2 levels''), (b)(4) (''If the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property, increase by 2 levels''), and (b)(13) (''if the defendant was convicted under 42 U.S.C. 408(a), § 1011(a), or § 1383a(a) and the statutory maximum term of ten years' imprisonment applies, increase by 4 levels. If the resulting offense level is less than 12, increase to level 12''). If so, by what criteria should the Commission determine which SOCs to amend or remove?

### 4. Post-Offense Rehabilitation Adjustment

*Synopsis of Proposed Amendment:* In August 2025, the Commission identified as one of its policy priorities for the amendment cycle ending May 1, 2026, ''[e]xamination of whether the guidelines provide appropriate adjustments for good behavior . . . and possible consideration of amendments that might be appropriate.'' U.S. Sent'g Comm'n, ''Notice of Final Priorities,'' 90 FR 39263 (Aug. 14, 2025).

The Commission has received comment suggesting that the guidelines do not sufficiently incentivize or reward positive post-offense conduct and rehabilitative efforts taken by defendants prior to sentencing. While § 3E1.1 (Acceptance of Responsibility) accounts for some types of positive post-offense conduct when the court considers a reduction for acceptance of responsibility, and § 5K1.1 (Substantial Assistance to Authorities) accounts for the defendant's cooperation with authorities, commenters have recommended that the Commission consider positive post-offense conduct going beyond that covered by both guidelines.

In response to these suggestions, the proposed amendment would add a new Chapter Three adjustment at § 3E1.2 (Post-Offense Rehabilitation) providing a reduction if the defendant demonstrates positive post-offense behavior or rehabilitative efforts. The proposed amendment sets forth two options for the adjustment.

*Option 1* provides in subsection (a) for a reduction when the defendant demonstrates prior to sentencing positive post-offense behavior or rehabilitative efforts. Subsection (b) instructs the court that, in determining whether a defendant qualifies for the reduction, it shall consider the actions and efforts [voluntarily initiated][undertaken] by the defendant for the benefit of the defendant's own rehabilitation, victim(s) of the offense, community, or other people. It then provides a non-exhaustive list of factors for the court to consider in making this determination. Subsection (c) provides for an additional reduction if the defendant qualifies for a decrease under subsection (a) and the positive post-offense behavior or rehabilitative efforts were undertaken before the criminal investigation or prosecution for the offense.

*Option 2* provides in subsection (a) for a reduction if the defendant demonstrates a sustained commitment to positive behavioral change evidenced by post-offense behavior or rehabilitative efforts that go beyond the typical actions undertaken by defendants prior to sentencing. Subsection (b) instructs the court that, in determining whether a defendant qualifies for the reduction, it shall consider the actions and efforts [voluntarily initiated][undertaken] by the defendant, and the timing of such actions and efforts, for the benefit of the defendant's own rehabilitation, victim(s) of the offense, community, or other people. It then provides some broad examples of the types of efforts the court should consider for the adjustment, instead of a list of considerations like the one provided in Option 1.

Issues for comment are also provided.

*Proposed Amendment:*

Chapter Three, Part E is amended—

in the heading by striking ''ACCEPTANCE OF RESPONSIBILITY'' and inserting ''ACCEPTANCE OF RESPONSIBILITY AND POST-OFFENSE REHABILITATION'';

and by inserting at the end the following new guideline:

*Option 1 (Tiered Adjustments With Specific Considerations)*

''§ 3E1.2. *Post-Offense Rehabilitation*

(a) If the defendant demonstrates prior to sentencing positive post-offense behavior or rehabilitative efforts, decrease the offense level by [1][2][3] levels.

(b) In determining whether a defendant qualifies for a reduction under subsection (a), the court shall consider the actions and efforts [voluntarily initiated][undertaken] by the defendant for the benefit of the defendant's own rehabilitation, victim(s) of the offense, community, or other people. Appropriate considerations include the following:

(1) The defendant took appropriate steps to reduce or remedy the harm caused by the offense.

(2) The defendant made [voluntary] payment of restitution or [voluntarily] entered into an installment payment schedule for making restitution to any victims of the offense(s).

(3) The defendant completed or is successfully participating in a [voluntary] court rehabilitation program.

(4) The defendant completed or is successfully participating in a treatment program to address the abuse of drugs, alcohol, or gambling.

(5) The defendant completed or is successfully participating in counseling (*e.g.,* mental health or anger management).

(6) The defendant completed or is successfully participating in a General Education Development (or similar) program, vocational training, or skills training.

(7) The defendant maintained or obtained gainful employment.

(8) The defendant provided [voluntary and] consistent financial support to family members or dependents.

(9) The defendant performed volunteer or other civic, charitable, or public service in the community.

(10) The defendant assisted in preventing another person from engaging in unlawful conduct.

(11) The defendant assisted in promoting another person's rehabilitation (*e.g.,* identifying or getting into treatment a person addicted to or regularly abusing controlled substances).

(c) If the defendant qualifies for a decrease under subsection (a) and the positive post-offense behavior or rehabilitative efforts were undertaken before the criminal investigation or prosecution for the offense, decrease the offense level by [1][2] additional [level][levels].''.

*Option 2 (Adjustment Based on Standard With Examples)*

''§ 3E1.2. *Post-Offense Rehabilitation*

(a) If the defendant demonstrates a sustained commitment to positive behavioral change evidenced by post-offense behavior or rehabilitative efforts that go beyond the typical actions undertaken by defendants prior to sentencing, decrease the offense level by [1][2][3][4] levels.

(b) In determining whether a defendant qualifies for a reduction under subsection (a), the court should consider the actions and efforts [voluntarily initiated][undertaken] by the defendant, and the timing of such actions and efforts, for the benefit of the defendant's own rehabilitation, victim(s) of the offense, community, or other people. In making such determination, the court may consider any rehabilitative efforts undertaken by the defendant, including personal and behavioral changes of the defendant, steps taken to reduce or remedy the harm caused by the offense, substance abuse rehabilitation, employment history, academic and vocational achievements, role model behavior, and community and family involvement.''.

Issues for Comment

1. The Commission has received comment suggesting that the guidelines do not sufficiently incentivize or reward positive post-offense conduct and rehabilitative efforts taken by defendants prior to sentencing. The Commission seeks comment on whether the proposed Chapter Three adjustment appropriately addresses these concerns. In determining whether to apply the proposed reduction, should the court consider a defendant's successful compliance with their pre-trial conditions of release, if applicable, or institutional rules, if detained? For example, should defendants only be considered for the proposed reduction if they complied with all conditions of supervision prior to sentencing or all institutional rules if detained prior to sentencing? Are the considerations identified in Option 1 and the examples provided in Option 2 appropriate for courts to consider in determining whether a reduction under § 3E1.2 is warranted? Should the Commission provide additional or different considerations or examples? If so, what should the Commission provide? Should any consideration(s) or example(s) be excluded from consideration? If so, which ones?

2. The Commission seeks comment on whether it should revise Option 2 of the proposed amendment to provide for a tiered reduction. For example, should Option 2 provide for a reduction based on a defendant's successful compliance with their pre-trial conditions of release, if applicable, or institutional rules, if detained? Should Option 2 then provide for an additional reduction based on post-offense behavior or rehabilitative efforts undertaken by the defendant that go beyond the typical actions undertaken by defendants prior to sentencing?

3. The Commission seeks comment on how the proposed reduction for post-offense rehabilitation should take into account the timing of the rehabilitative efforts undertaken by the defendant. When should such efforts occur to be considered under the proposed adjustment? Should such efforts be undertaken before the defendant is investigated or indicted? Should the court be allowed to consider efforts undertaken when the defendant is subject to an investigation by the authorities or is indicted for the offense? What changes should be made to the proposed amendment to address the timing of the defendant's efforts?

4. The proposed reduction accounts for rehabilitative efforts [voluntarily initiated] [undertaken] by the defendant. This bracketed ''voluntariness'' requirement could exclude rehabilitative efforts made pursuant to an order. Some defendants cannot afford to pay themselves for rehabilitation or treatment programs and may rely on court-funded programs to cover the costs of such programs. The Commission seeks comment on whether the proposed reduction should allow for the consideration of rehabilitative efforts made pursuant to an order. If so, what changes should be made to the proposed amendment to account for such efforts?

5. The proposed amendment sets forth a reduction applicable to defendants who demonstrate positive post-offense behavior or rehabilitative efforts prior to sentencing. Other guidelines, most notably § 3E1.1 (Acceptance of Responsibility), also account for ''post-offense rehabilitative efforts.'' *See* § 3E1.1, comment. (n.1(G)). Post-offense rehabilitative efforts may also include providing substantial assistance to the authorities in the investigation or prosecution of other individuals or offenses, which is accounted for under § 5K1.1 (Substantial Assistance to Authorities (Policy Statement)).

The Commission seeks comment on how the proposed Chapter Three adjustment for post-offense rehabilitation should interact with other guidelines, especially § 3E1.1 and § 5K1.1. Are there other guidelines that address similar concerns to those addressed by the proposed adjustment? What are those guidelines and how should the proposed adjustment interact with them? Should the Commission distinguish the types of rehabilitative efforts to be accounted for under the proposed adjustment from those that could be considered under other guidelines? For example, should the proposed adjustment account for efforts relating to the defendant's own rehabilitation or for the benefit of the community or other people, while § 3E1.1 accounts for rehabilitative efforts relating to the offense committed by the defendant? Should the Commission place a limitation on the extent of the reduction under the proposed adjustment if the defendant also received an adjustment under § 3E1.1 and/or § 5K1.1? If so, what should the limit be? Are there any other guideline reductions that the Commission should consider for purposes of limiting the extent of the

reduction under the proposed adjustment?

6. The Commission is considering a separate proposed amendment that would add to § 2B1.1 (Theft, Property Destruction, and Fraud) a new tiered reduction at subsection (b)(23) if the defendant took certain actions prior to the criminal investigation or prosecution for the offense. The Commission seeks comment on how the proposed Chapter Three adjustment for post-offense rehabilitation should interact with the proposed tiered reduction at § 2B1.1(b)(23) set forth in the proposed amendment on economic crimes. Should the proposed Chapter Three adjustment for post-offense rehabilitation be cumulative with the proposed tiered reduction at § 2B1.1(b)(23), or should the Commission limit the cumulative reduction of these provisions? Are there other provisions in the *Guidelines Manual* that would interact with the proposed Chapter Three adjustment for post-offense rehabilitation? If so, how should the Commission account for the interaction(s)?

**5. Multiple Counts**

*Synopsis of Proposed Amendment:* In August 2025, the Commission identified as one of its policy priorities for the amendment cycle ending May 1, 2026, ''[c]ontinued exploration of ways to simplify the *Guidelines Manual,*'' including ''examining the operation of the grouping rules in Chapter Three, Part D (Multiple Counts).'' U.S. Sent'g Comm'n, ''Notice of Final Priorities,'' 90 FR 39263 (Aug. 14, 2025).

The guidelines generally require a single, combined offense level in each case. Chapter Three, Part D (Multiple Counts) of the *Guidelines Manual* ''provides the rules for determining a single offense level that encompasses all the counts of which the defendant is convicted.'' USSG Ch. 3, Pt. D, intro comment (Nov. 1, 2025). The rules in Part D apply to multiple counts regardless of whether they are contained in the same indictment or are contained in different indictments and sentences on those counts are to be imposed at the same time. These rules also apply to some single count cases that include additional conduct that is treated under the *Guidelines Manual* as if it were a separate count of conviction. *See, e.g.,* USSG §§ 1B1.2(c) & (d); 2G1.1(d), 2G1.3(d), 2G2.1(d). As provided in § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts), the multiple count rules proceed in three steps: (1) grouping the counts into distinct groups of closely related counts by applying the rules specified in § 3D1.2 (Groups of Closely Related Counts); (2) determining the offense level applicable to each group, as provided in § 3D1.3 (Offense Level Applicable to Each Group of Closely Related Counts); and (3) determining the combined offense level applicable to all groups using the unit system, as provided in § 3D1.4 (Determining the Combined Offense Level).

The first step requires grouping counts ''involving substantially the same harm.'' Subsections (a) through (d) of § 3D1.2 set forth the four situations when multiple counts involve substantially the same harm: (a) when the counts involve the same victim and arise from a single criminal act or transaction; (b) when the counts involve the same victim and two or more distinct criminal transactions connected by a common criminal objective or constituting part of a common scheme or plan; (c) when one of the counts ''embodies conduct that is treated'' as a specific offense characteristic or adjustment in the guideline applicable to another of the counts; and (d) when the counts involve offenses to which the same guideline or two different guidelines ''of the same general type'' apply and the offense level is determined largely based on cumulative measures (such as total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm) or the offense behavior is ongoing or continuous in nature. Section 3D1.2(d), which applies to the fourth situation described above, provides lists of both offenses that are covered by this rule and offenses that are excluded from application of this rule. The rules contained in § 3D1.2 aim to ensure that the guideline range reflects the overall harm and conduct without accounting for the same or similar conduct twice. More than one rule may provide a basis for grouping, but only one rule must apply for counts to group.

The second step requires determining the offense level applicable to each group. This determination depends on which grouping rule applies. As provided in § 3D1.3(a), each count grouped under § 3D1.2(a)–(c) is calculated separately, and the offense level for the group will be the highest offense level of the counts in the group. Section 3D1.3(b) sets forth a different procedure for counts grouped under § 3D1.2(d). If the counts involve offenses to which the same guideline applies, instead of calculating the offense level for each count and choosing the count resulting in the highest offense level, the guideline is applied one time using the aggregate harm or quantity of the grouped counts to determine the offense level. The resulting offense level will be applicable to the group of counts. However, if the counts involve offenses of the same general type to which different guidelines apply, each count is calculated separately, and the offense level for the group will be the highest offense level of the counts in the group.

The third and final step set forth in § 3D1.4 requires assigning units to determine the combined offense level. The group with the highest offense level is assigned one unit, and each remaining group is assigned either one, one-half, and no additional units. The number of additional units is based on the relationship between the group with the highest offense level and any remaining groups. One unit is assigned to any remaining group of comparable seriousness, that is, a group with the same offense level or with one to four fewer offense levels. One-half unit is assigned to any remaining group of somewhat comparable seriousness, that is, a group with five to eight fewer offense levels. No units are assigned to any remaining group of incomparable seriousness, that is, a group with nine or more fewer offense levels. The total number of units determines whether—and the extent to which—additional offense levels are assigned to the most serious group.

The Commission is considering simplification of these multiple count rules for three reasons. First, some commenters have requested simplification of these rules because they are ''confusing'' and may lead to ''incorrect calculations.'' Second, the Commission's HelpLine responds to hundreds of calls each year from practitioners specifically seeking guidance on the application of the multiple count rules. Third, despite the expenditure of significant training resources, the Commission has continued to observe misapplication of the multiple count rules, resulting in unwarranted sentencing disparities.

The proposed amendment would amend the guidelines to simplify the procedure for determining the single offense level for cases involving multiple counts. It would replace the five guidelines in Chapter Three, Part D with a single guideline at § 3D1.1 that provides all the steps necessary to determine the single offense level for multiple counts. The revised § 3D1.1 would contain the following four subsections.

New subsection (a) provides that, if multiple counts use the same guideline and the guideline is listed therein, the offense level for this group of counts is determined using the combined offense

behavior taken as a whole. The guidelines listed in new subsection (a) are the same guidelines that require aggregation under current § 3D1.2(d). As such, new subsection (a) maintains the current approach for aggregate harm offenses as set forth in current § 3D1.3(b).

New subsection (b) provides that, if multiple counts use the same guideline and the guideline is listed therein, the offense level for each count is calculated separately and an adjustment based on the number of counts applies to the count in this group resulting in the highest offense level. The guidelines listed in new subsection (b) are all guidelines that are not aggregated pursuant to current § 3D1.2(d) and cover offenses against a person, offenses that frequently result in a multiple count increase under the current § 3D1.4, and six guidelines that contain instructions providing for a multiple count adjustment under certain circumstances.

New subsection (c) explains how to determine the offense level for all counts, including the group of counts covered by new subsections (a) and (b). It instructs to use the offense level from the count or group of counts (as determined under subsections (a) and (b)) resulting in the highest offense level.

New subsection (d) retains the provisions of current § 3D1.1(b) identifying certain types of convictions that are excluded from the guideline rules applicable to multiple counts.

The proposed amendment would also make conforming changes throughout the *Guidelines Manual* to reflect the new procedure of determining the offense level applicable to cases involving multiple counts, and the deletion of the current provisions of Chapter Three, Part D.

Issues for comment are also provided.

*Proposed Amendment:*

Chapter Three, Part D is amended—

by striking in their entirety the Introductory Commentary, §§ 3D1.1 through 3D1.5, and the Concluding Commentary to Part D of Chapter Three as follows:

''*Introductory Commentary*

This part provides rules for determining a single offense level that encompasses all the counts of which the defendant is convicted. These rules apply to multiple counts of conviction (A) contained in the same indictment or information; or (B) contained in different indictments or informations for which sentences are to be imposed at the same time or in a consolidated proceeding. The single, 'combined' offense level that results from applying these rules is used, after adjustment pursuant to the guidelines in subsequent parts, to determine the sentence. These rules have been designed primarily with the more commonly prosecuted federal offenses in mind.

The rules in this part seek to provide incremental punishment for significant additional criminal conduct. The most serious offense is used as a starting point. The other counts determine how much to increase the offense level. The amount of the additional punishment declines as the number of additional offenses increases.

Some offenses that may be charged in multiple-count indictments are so closely intertwined with other offenses that conviction for them ordinarily would not warrant increasing the guideline range. For example, embezzling money from a bank and falsifying the related records, although legally distinct offenses, represent essentially the same type of wrongful conduct with the same ultimate harm, so that it would be more appropriate to treat them as a single offense for purposes of sentencing. Other offenses, such as an assault causing bodily injury to a teller during a bank robbery, are so closely related to the more serious offense that it would be appropriate to treat them as part of the more serious offense, leaving the sentence enhancement to result from application of a specific offense characteristic.

In order to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct, this part provides rules for grouping offenses together. Convictions on multiple counts do not result in a sentence enhancement unless they represent additional conduct that is not otherwise accounted for by the guidelines. In essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines.

Some offense guidelines, such as those for theft, fraud and drug offenses, contain provisions that deal with repetitive or ongoing behavior. Other guidelines, such as those for assault and robbery, are oriented more toward single episodes of criminal behavior. Accordingly, different rules are required for dealing with multiple-count convictions involving these two different general classes of offenses. More complex cases involving different types of offenses may require application of one rule to some of the counts and another rule to other counts.

Some offenses, *e.g.,* racketeering and conspiracy, may be 'composite' in that they involve a pattern of conduct or scheme involving multiple underlying offenses. The rules in this part are to be used to determine the offense level for such composite offenses from the offense level for the underlying offenses.

Essentially, the rules in this part can be summarized as follows: (1) If the offense guidelines in Chapter Two base the offense level primarily on the amount of money or quantity of substance involved (*e.g.,* theft, fraud, drug trafficking, firearms dealing), or otherwise contain provisions dealing with repetitive or ongoing misconduct (*e.g.,* many environmental offenses), add the numerical quantities and apply the pertinent offense guideline, including any specific offense characteristics for the conduct taken as a whole. (2) When offenses are closely interrelated, group them together for purposes of the multiple-count rules, and use only the offense level for the most serious offense in that group. (3) As to other offenses (*e.g.,* independent instances of assault or robbery), start with the offense level for the most serious count and use the number and severity of additional counts to determine the amount by which to increase that offense level.

§ 3D1.1. *Procedure for Determining Offense Level on Multiple Counts*

(a) When a defendant has been convicted of more than one count, the court shall:

(1) Group the counts resulting in conviction into distinct Groups of Closely Related Counts ('Groups') by applying the rules specified in § 3D1.2.

(2) Determine the offense level applicable to each Group by applying the rules specified in § 3D1.3.

(3) Determine the combined offense level applicable to all Groups taken together by applying the rules specified in § 3D1.4.

(b) Exclude from the application of §§ 3D1.2–3D1.5 the following:

(1) Any count for which the statute (A) specifies a term of imprisonment to be imposed; and (B) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment. Sentences for such counts are governed by the provisions of § 5G1.2(a).

(2) Any count of conviction under 18 U.S.C. 1028A. *See* Application Note 2(B) of the Commentary to § 5G1.2 (Sentencing on Multiple Counts of Conviction) for guidance on how sentences for multiple counts of conviction under 18 U.S.C. 1028A should be imposed.

Commentary

*Application Notes:*

1. *In General.*—For purposes of sentencing multiple counts of

conviction, counts can be (A) contained in the same indictment or information; or (B) contained in different indictments or informations for which sentences are to be imposed at the same time or in a consolidated proceeding.

2. *Application of Subsection (b).*— Subsection (b)(1) applies if a statute (A) specifies a term of imprisonment to be imposed; and (B) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment. *See, e.g.,* 18 U.S.C. 924(c) (requiring mandatory minimum terms of imprisonment, based on the conduct involved, to run consecutively). The multiple count rules set out under this part do not apply to a count of conviction covered by subsection (b). However, a count covered by subsection (b)(1) may affect the offense level determination for other counts. For example, a defendant is convicted of one count of bank robbery (18 U.S.C. 2113), and one count of use of a firearm in the commission of a crime of violence (18 U.S.C. 924(c)). The two counts are not grouped together pursuant to this guideline, and, to avoid unwarranted double counting, the offense level for the bank robbery count under § 2B3.1 (Robbery) is computed without application of the enhancement for weapon possession or use as otherwise required by subsection (b)(2) of that guideline. Pursuant to 18 U.S.C. 924(c), the mandatory minimum five-year sentence on the weapon-use count runs consecutively to the guideline sentence imposed on the bank robbery count. *See* § 5G1.2(a).

Unless specifically instructed, subsection (b)(1) does not apply when imposing a sentence under a statute that requires the imposition of a consecutive term of imprisonment only if a term of imprisonment is imposed (*i.e.,* the statute does not otherwise require a term of imprisonment to be imposed). *See, e.g.,* 18 U.S.C. 3146 (Penalty for failure to appear); 18 U.S.C. 924(a)(4) (regarding penalty for 18 U.S.C. 922(q) (possession or discharge of a firearm in a school zone)); 18 U.S.C. 1791(c) (penalty for providing or possessing a controlled substance in prison). Accordingly, the multiple count rules set out under this part do apply to a count of conviction under this type of statute.

*Background:* This section outlines the procedure to be used for determining the combined offense level. After any adjustments from Chapter Three, Parts E (Acceptance of Responsibility) and F (Early Disposition Programs), and Chapter Four, Parts B (Career Offenders and Criminal Livelihood) and C (Adjustment for Certain Zero-Point Offenders) are made, this combined offense level is used to determine the guideline sentence range. Chapter Five (Determining the Sentencing Range and Options Under the Guidelines) discusses how to determine the sentence from the (combined) offense level; § 5G1.2 deals specifically with determining the sentence of imprisonment when convictions on multiple counts are involved. References in Chapter Five (Determining the Sentencing Range and Options Under the Guidelines) to the 'offense level' should be treated as referring to the combined offense level after all subsequent adjustments have been made.

§ 3D1.2. *Groups of Closely Related Counts*

All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:

(a) When counts involve the same victim and the same act or transaction.

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Offenses covered by the following guidelines are to be grouped under this subsection:

§ 2A3.5;
§§ 2B1.1, 2B1.4, 2B1.5, 2B4.1, 2B5.1, 2B5.3, 2B6.1;
§§ 2C1.1, 2C1.2, 2C1.8;
§§ 2D1.1, 2D1.2, 2D1.5, 2D1.11, 2D1.13;
§§ 2E4.1, 2E5.1;
§§ 2G2.2, 2G3.1;
§ 2K2.1;
§§ 2L1.1, 2L2.1;
§ 2N3.1;
§ 2Q2.1;
§ 2R1.1;
§§ 2S1.1, 2S1.3;
§§ 2T1.1, 2T1.4, 2T1.6, 2T1.7, 2T1.9, 2T2.1, 2T3.1.

Specifically excluded from the operation of this subsection are:

all offenses in Chapter Two, Part A (except § 2A3.5);
§§ 2B2.1, 2B2.3, 2B3.1, 2B3.2, 2B3.3;
§ 2C1.5;
§§ 2D2.1, 2D2.2, 2D2.3;
§§ 2E1.3, 2E1.4, 2E2.1;
§§ 2G1.1, 2G1.3, 2G2.1;
§§ 2H1.1, 2H2.1, 2H4.1;
§§ 2L2.2, 2L2.5;
§§ 2M2.1, 2M2.3, 2M3.1, 2M3.2, 2M3.3, 2M3.4, 2M3.5, 2M3.9;
§§ 2P1.1, 2P1.2, 2P1.3;
§ 2X6.1.

For multiple counts of offenses that are not listed, grouping under this subsection may or may not be appropriate; a case-by-case determination must be made based upon the facts of the case and the applicable guidelines (including specific offense characteristics and other adjustments) used to determine the offense level.

Exclusion of an offense from grouping under this subsection does not necessarily preclude grouping under another subsection.

Commentary

*Application Notes:*

1. Subsections (a)–(d) set forth circumstances in which counts are to be grouped together into a single Group. Counts are to be grouped together into a single Group if any one or more of the subsections provide for such grouping. Counts for which the statute (A) specifies a term of imprisonment to be imposed; and (B) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment are excepted from application of the multiple count rules. *See* § 3D1.1(b)(1); *id.,* comment. (n.1).

2. The term 'victim' is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim. For offenses in which there are no identifiable victims (*e.g.,* drug or immigration offenses, where society at large is the victim), the 'victim' for purposes of subsections (a) and (b) is the societal interest that is harmed. In such cases, the counts are grouped together when the societal interests that are harmed are closely related. Where one count, for example, involves unlawfully entering the United States and the other involves possession of fraudulent evidence of citizenship, the counts are grouped together because the societal interests harmed (the interests protected by laws governing immigration) are closely related. In contrast, where one count involves the sale of controlled substances and the other involves an immigration law violation, the counts are not grouped together because

different societal interests are harmed. Ambiguities should be resolved in accordance with the purpose of this section as stated in the lead paragraph, *i.e.,* to identify and group 'counts involving substantially the same harm.'

3. Under subsection (a), counts are to be grouped together when they represent essentially a single injury or are part of a single criminal episode or transaction involving the same victim.

When one count charges an attempt to commit an offense and the other charges the commission of that offense, or when one count charges an offense based on a general prohibition and the other charges violation of a specific prohibition encompassed in the general prohibition, the counts will be grouped together under subsection (a).

*Examples:* (1) The defendant is convicted of forging and uttering the same check. The counts are to be grouped together. (2) The defendant is convicted of kidnapping and assaulting the victim during the course of the kidnapping. The counts are to be grouped together. (3) The defendant is convicted of bid rigging (an antitrust offense) and of mail fraud for signing and mailing a false statement that the bid was competitive. The counts are to be grouped together. (4) The defendant is convicted of two counts of assault on a federal officer for shooting at the same officer twice while attempting to prevent apprehension as part of a single criminal episode. The counts are to be grouped together. (5) The defendant is convicted of three counts of unlawfully bringing aliens into the United States, all counts arising out of a single incident. The three counts are to be grouped together. *But:* (6) The defendant is convicted of two counts of assault on a federal officer for shooting at the officer on two separate days. The counts *are not* to be grouped together.

4. Subsection (b) provides that counts that are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim are to be grouped together, even if they constitute legally distinct offenses occurring at different times. This provision does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm (*e.g.,* robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm).

When one count charges a conspiracy or solicitation and the other charges a substantive offense that was the sole object of the conspiracy or solicitation, the counts will be grouped together under subsection (b).

*Examples:* (1) The defendant is convicted of one count of conspiracy to commit extortion and one count of extortion for the offense he conspired to commit. The counts are to be grouped together. (2) The defendant is convicted of two counts of mail fraud and one count of wire fraud, each in furtherance of a single fraudulent scheme. The counts are to be grouped together, even if the mailings and telephone call occurred on different days. (3) The defendant is convicted of one count of auto theft and one count of altering the vehicle identification number of the car he stole. The counts are to be grouped together. (4) The defendant is convicted of two counts of distributing a controlled substance, each count involving a separate sale of 10 grams of cocaine that is part of a common scheme or plan. In addition, a finding is made that there are two other sales, also part of the common scheme or plan, each involving 10 grams of cocaine. The total amount of all four sales (40 grams of cocaine) will be used to determine the offense level for each count under § 1B1.3(a)(2). The two counts will then be grouped together under either this subsection or subsection (d) to avoid double counting. *But:* (5) The defendant is convicted of two counts of rape for raping the same person on different days. The counts *are not* to be grouped together.

5. Subsection (c) provides that when conduct that represents a separate count, *e.g.,* bodily injury or obstruction of justice, is also a specific offense characteristic in or other adjustment to another count, the count represented by that conduct is to be grouped with the count to which it constitutes an aggravating factor. This provision prevents 'double counting' of offense behavior. Of course, this rule applies only if the offenses are closely related. It is not, for example, the intent of this rule that (assuming they could be joined together) a bank robbery on one occasion and an assault resulting in bodily injury on another occasion be grouped together. The bodily injury (the harm from the assault) would not be a specific offense characteristic to the robbery and would represent a different harm. On the other hand, use of a firearm in a bank robbery and unlawful possession of that firearm are sufficiently related to warrant grouping of counts under this subsection. Frequently, this provision will overlap subsection (a), at least with respect to specific offense characteristics. However, a count such as obstruction of justice, which represents a Chapter Three adjustment and involves a different harm or societal interest than the underlying offense, is covered by subsection (c) even though it is not covered by subsection (a).

Sometimes there may be several counts, each of which could be treated as an aggravating factor to another more serious count, but the guideline for the more serious count provides an adjustment for only one occurrence of that factor. In such cases, only the count representing the most serious of those factors is to be grouped with the other count. For example, if in a robbery of a credit union on a military base the defendant is also convicted of assaulting two employees, one of whom is injured seriously, the assault with serious bodily injury would be grouped with the robbery count, while the remaining assault conviction would be treated separately.

A cross reference to another offense guideline does not constitute 'a specific offense characteristic . . . or other adjustment' within the meaning of subsection (c). For example, the guideline for bribery of a public official contains a cross reference to the guideline for a conspiracy to commit the offense that the bribe was to facilitate. Nonetheless, if the defendant were convicted of one count of securities fraud and one count of bribing a public official to facilitate the fraud, the two counts would not be grouped together by virtue of the cross reference. If, however, the bribe was given for the purpose of hampering a criminal investigation into the offense, it would constitute obstruction and under § 3C1.1 would result in a 2-level enhancement to the offense level for the fraud. Under the latter circumstances, the counts would be grouped together.

6. Subsection (d) likely will be used with the greatest frequency. It provides that most property crimes (except robbery, burglary, extortion and the like), drug offenses, firearms offenses, and other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior are to be grouped together. The list of instances in which this subsection should be applied is not exhaustive. Note, however, that certain guidelines are specifically excluded from the operation of subsection (d).

A conspiracy, attempt, or solicitation to commit an offense is covered under subsection (d) if the offense that is the object of the conspiracy, attempt, or solicitation is covered under subsection (d).

Counts involving offenses to which different offense guidelines apply are grouped together under subsection (d) if the offenses are of the same general type

and otherwise meet the criteria for grouping under this subsection. In such cases, the offense guideline that results in the highest offense level is used; *see* § 3D1.3(b). The 'same general type' of offense is to be construed broadly.

*Examples:* (1) The defendant is convicted of five counts of embezzling money from a bank. The five counts are to be grouped together. (2) The defendant is convicted of two counts of theft of social security checks and three counts of theft from the mail, each from a different victim. All five counts are to be grouped together. (3) The defendant is convicted of five counts of mail fraud and ten counts of wire fraud. Although the counts arise from various schemes, each involves a monetary objective. All fifteen counts are to be grouped together. (4) The defendant is convicted of three counts of unlicensed dealing in firearms. All three counts are to be grouped together. (5) The defendant is convicted of one count of selling heroin, one count of selling PCP, and one count of selling cocaine. The counts are to be grouped together. The Commentary to § 2D1.1 provides rules for combining (adding) quantities of different drugs to determine a single combined offense level. (6) The defendant is convicted of three counts of tax evasion. The counts are to be grouped together. (7) The defendant is convicted of three counts of discharging toxic substances from a single facility. The counts are to be grouped together. (8) The defendant is convicted on two counts of check forgery and one count of uttering the first of the forged checks. All three counts are to be grouped together. Note, however, that the uttering count is first grouped with the first forgery count under subsection (a) of this guideline, so that the monetary amount of that check counts only once when the rule in § 3D1.3(b) is applied. *But:* (9) The defendant is convicted of three counts of bank robbery. The counts *are not* to be grouped together, nor are the amounts of money involved to be added.

7. A single case may result in application of several of the rules in this section. Thus, for example, example (8) in the discussion of subsection (d) involves an application of § 3D1.2(a) followed by an application of § 3D1.2(d). Note also that a Group may consist of a single count; conversely, all counts may form a single Group.

8. A defendant may be convicted of conspiring to commit several substantive offenses and also of committing one or more of the substantive offenses. In such cases, treat the conspiracy count as if it were several counts, each charging conspiracy to commit one of the substantive offenses. *See* § 1B1.2(d) and accompanying commentary. Then apply the ordinary grouping rules to determine the combined offense level based upon the substantive counts of which the defendant is convicted and the various acts cited by the conspiracy count that would constitute behavior of a substantive nature. *Example:* The defendant is convicted of two counts: conspiring to commit offenses A, B, and C, and committing offense A. Treat this as if the defendant was convicted of (1) committing offense A; (2) conspiracy to commit offense A; (3) conspiracy to commit offense B; and (4) conspiracy to commit offense C. Count (1) and count (2) are grouped together under § 3D1.2(b). Group the remaining counts, including the various acts cited by the conspiracy count that would constitute behavior of a substantive nature, according to the rules in this section.

*Background:* Ordinarily, the first step in determining the combined offense level in a case involving multiple counts is to identify those counts that are sufficiently related to be placed in the same Group of Closely Related Counts ('Group'). This section specifies four situations in which counts are to be grouped together. Although it appears last for conceptual reasons, subsection (d) probably will be used most frequently.

A primary consideration in this section is whether the offenses involve different victims. For example, a defendant may stab three prison guards in a single escape attempt. Some would argue that all counts arising out of a single transaction or occurrence should be grouped together even when there are distinct victims. Although such a proposal was considered, it was rejected because, in many cases, it would not adequately capture the scope and impact of the criminal behavior. Cases involving injury to distinct victims are sufficiently comparable, whether or not the injuries are inflicted in distinct transactions, so that each such count should be treated separately rather than grouped together. Counts involving different victims (or societal harms in the case of 'victimless' crimes) are grouped together only as provided in subsection (c) or (d).

Even if counts involve a single victim, the decision as to whether to group them together may not always be clear cut. For example, how contemporaneous must two assaults on the same victim be in order to warrant grouping together as constituting a single transaction or occurrence? Existing case law may provide some guidance as to what constitutes distinct offenses, but such decisions often turn on the technical language of the statute and cannot be controlling. In interpreting this part and resolving ambiguities, the court should look to the underlying policy of this part as stated in the Introductory Commentary.

§ 3D1.3. *Offense Level Applicable to Each Group of Closely Related Counts*

Determine the offense level applicable to each of the Groups as follows:

(a) In the case of counts grouped together pursuant to § 3D1.2(a)–(c), the offense level applicable to a Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the Group, *i.e.,* the highest offense level of the counts in the Group.

(b) In the case of counts grouped together pursuant to § 3D1.2(d), the offense level applicable to a Group is the offense level corresponding to the aggregated quantity, determined in accordance with Chapter Two and Parts A, B and C of Chapter Three. When the counts involve offenses of the same general type to which different guidelines apply, apply the offense guideline that produces the highest offense level.

Commentary

*Application Notes:*

1. The 'offense level' for a count refers to the offense level from Chapter Two after all adjustments from Parts A, B, and C of Chapter Three.

2. When counts are grouped pursuant to § 3D1.2(a)–(c), the highest offense level of the counts in the group is used. Ordinarily, it is necessary to determine the offense level for each of the counts in a Group in order to ensure that the highest is correctly identified. Sometimes, it will be clear that one count in the Group cannot have a higher offense level than another, as with a count for an attempt or conspiracy to commit the completed offense. The formal determination of the offense level for such a count may be unnecessary.

3. When counts are grouped pursuant to § 3D1.2(d), the offense guideline applicable to the aggregate behavior is used. If the counts in the Group are covered by different guidelines, use the guideline that produces the highest offense level. Determine whether the specific offense characteristics or adjustments from Chapter Three, Parts A, B, and C apply based upon the combined offense behavior taken as a whole. Note that guidelines for similar property offenses have been coordinated to produce identical offense levels, at least when substantial property losses

are involved. However, when small sums are involved the differing specific offense characteristics that require increasing the offense level to a certain minimum may affect the outcome.

*Background:* This section provides rules for determining the offense level associated with each Group of Closely Related Counts. Summary examples of the application of these rules are provided at the end of the Commentary to this part.

§ 3D1.4. *Determining the Combined Offense Level*

The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the following table:

| Number of units | Increase in offense level |
|---|---|
| 1 | none. |
| 1½ | add 1 level. |
| 2 | add 2 levels. |
| 2½–3 | add 3 levels. |
| 3½–5 | add 4 levels. |
| More than 5 | add 5 levels. |

In determining the number of Units for purposes of this section:

(a) Count as one Unit the Group with the highest offense level. Count one additional Unit for each Group that is equally serious or from 1 to 4 levels less serious.

(b) Count as one-half Unit any Group that is 5 to 8 levels less serious than the Group with the highest offense level.

(c) Disregard any Group that is 9 or more levels less serious than the Group with the highest offense level. Such Groups will not increase the applicable offense level but may provide a reason for sentencing at the higher end of the sentencing range for the applicable offense level.

Commentary

*Application Notes:*

1. Application of the rules in §§ 3D1.2 and 3D1.3 may produce a single Group of Closely Related Counts. In such cases, the combined offense level is the level corresponding to the Group determined in accordance with § 3D1.3.

2. The procedure for calculating the combined offense level when there is more than one Group of Closely Related Counts is as follows: First, identify the offense level applicable to the most serious Group; assign it one Unit. Next, determine the number of Units that the remaining Groups represent. Finally, increase the offense level for the most serious Group by the number of levels indicated in the table corresponding to the total number of Units.

*Background:* When Groups are of roughly comparable seriousness, each Group will represent one Unit. When the most serious Group carries an offense level substantially higher than that applicable to the other Groups, however, counting the lesser Groups fully for purposes of the table could add excessive punishment, possibly even more than those offenses would carry if prosecuted separately. To avoid this anomalous result and produce declining marginal punishment, Groups 9 or more levels less serious than the most serious Group should not be counted for purposes of the table, and that Groups 5 to 8 levels less serious should be treated as equal to one-half of a Group. Thus, if the most serious Group is at offense level 15 and if two other Groups are at level 10, there would be a total of two Units for purposes of the table (one plus one-half plus one-half) and the combined offense level would be 17.

§ 3D1.5. *Determining the Total Punishment*

Use the combined offense level to determine the appropriate sentence in accordance with the provisions of Chapter Five.

Commentary

This section refers the court to Chapter Five (Determining the Sentencing Range and Options Under the Guidelines) in order to determine the total punishment to be imposed based upon the combined offense level. The combined offense level is subject to adjustments from Chapter Three, Parts E (Acceptance of Responsibility) and F (Early Disposition Programs), and Chapter Four, Parts B (Career Offenders and Criminal Livelihood) and C (Adjustment for Certain Zero-Point Offenders).

* * * * *

*Concluding Commentary to Part D of Chapter Three*

*Illustrations of the Operation of the Multiple-Count Rules*

The following examples, drawn from presentence reports in the Commission's files, illustrate the operation of the guidelines for multiple counts. The examples are discussed summarily; a more thorough, step-by-step approach is recommended until the user is thoroughly familiar with the guidelines.

1. Defendant A was convicted of four counts, each charging robbery of a different bank. Each would represent a distinct Group. § 3D1.2. In each of the first three robberies, the offense level was 22 (20 plus a 2-level increase because a financial institution was robbed) (§ 2B3.1(b)). In the fourth robbery $21,000 was taken and a firearm was displayed; the offense level was therefore 28. As the first three counts are 6 levels lower than the fourth, each of the first three represents one-half unit for purposes of § 3D1.4. Altogether there are 2 ½ Units, and the offense level for the most serious (28) is therefore increased by 3 levels under the table. The combined offense level is 31.

2. Defendant B was convicted of four counts: (1) distribution of 230 grams of cocaine; (2) distribution of 150 grams of cocaine; (3) distribution of 75 grams of heroin; (4) offering a DEA agent $20,000 to avoid prosecution. The combined offense level for drug offenses is determined by the total quantity of drugs, converted to converted drug weight (using the Drug Conversion Tables in the Commentary to § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking)). The first count translates into 46 kilograms of converted drug weight; the second count translates into 30 kilograms of converted drug weight; and the third count translates into 75 kilograms of converted drug weight. The total is 151 kilograms of converted drug weight. Under § 2D1.1, the combined offense level for the drug offenses is 24. In addition, because of the attempted bribe of the DEA agent, this offense level is increased by 2 levels to 26 under § 3C1.1 (Obstructing or Impeding the Administration of Justice). Because the conduct constituting the bribery offense is accounted for by § 3C1.1, it becomes part of the same Group as the drug offenses pursuant to § 3D1.2(c). The combined offense level is 26 pursuant to § 3D1.3(a), because the offense level for bribery (20) is less than the offense level for the drug offenses (26).

3. Defendant C was convicted of four counts arising out of a scheme pursuant to which the defendant received kickbacks from subcontractors. The counts were as follows: (1) The defendant received $1,000 from subcontractor A relating to contract X (Mail Fraud). (2) The defendant received $1,000 from subcontractor A relating to contract X (Commercial Bribery). (3) The defendant received $1,000 from subcontractor A relating to contract Y (Mail Fraud). (4) The defendant received $1,000 from subcontractor B relating to contract Z (Commercial Bribery). The mail fraud counts are covered by § 2B1.1 (Theft, Property Destruction, and Fraud). The bribery counts are covered by § 2B4.1 (Bribery in Procurement of Bank Loan and Other Commercial Bribery), which treats the offense as a sophisticated fraud. The total money involved is $4,000, which results in an offense level of 9 under either § 2B1.1

(assuming the application of the 'sophisticated means' enhancement in § 2B1.1(b)(10)) or § 2B4.1. Since these two guidelines produce identical offense levels, the combined offense level is 9.'';

and inserting the following new § 3D1.1:

§ 3D1.1. *Procedure for Determining Offense Level on Multiple Counts*

(a) If there are multiple counts to which the same guideline applies and the guideline is listed below, determine the offense level applicable to these counts using the combined offense behavior taken as a whole.

The guidelines covered by subsection (a) are as follows:

§ 2A3.5;
§§ 2B1.1, 2B1.4, 2B1.5, 2B4.1, 2B5.1, 2B5.3, 2B6.1;
§§ 2C1.1, 2C1.2, 2C1.8;
§§ 2D1.1, 2D1.2, 2D1.5, 2D1.11, 2D1.13;
§§ 2E4.1, 2E5.1;
§§ 2G2.2, 2G3.1;
§ 2K2.1;
§§ 2L1.1, 2L2.1;
§ 2N3.1;
§ 2Q2.1;
§ 2R1.1;
§§ 2S1.1, 2S1.3;
§§ 2T1.1, 2T1.4, 2T1.6, 2T1.7, 2T1.9, 2T2.1, 2T3.1.

(b) (1) If there are multiple counts to which the same guideline applies and the guideline is listed below, determine the offense level applicable to these counts by calculating the offense level for each count separately and applying the adjustment set forth in subsection (b)(2) to the count resulting in the highest offense level.

The guidelines covered by subsection (b) are as follows:

all offenses in Chapter Two, Part A (except § 2A3.5);
§§ 2B2.1, 2B3.1, 2B3.2, 2B3.3;
§ 2D2.3;
§§ 2G1.1, 2G1.3, 2G2.1;
§ 2H1.1;
§ 2J1.2,2J1.3;
§ 2K1.4;
§ 2M6.1;
§ 2N1.1;
§ 2Q1.4;
§ 2X6.1.

(2) The adjustment set forth in the table below shall be based on the number of counts covered by the guidelines listed in paragraph (1).

| Number of counts covered by guideline listed in paragraph (1) | Increase in offense level |
|---|---|
| (A) 2 | add [2] levels |
| (B) 3 | add [3] levels |
| (C) 4 or 5 | add [4] levels |
| (D) 6 or more | add [5] levels. |

(c) Determine the offense level for any remaining counts by calculating the offense level for each count separately. The offense level applicable to all counts of conviction is either the offense level from the count or the single offense level determined under subsections (a) and (b) for the counts resulting in the highest offense level.

(d) *Special Instruction for Certain Multiple Counts.*—If there are multiple counts of conviction, exclude from the application of subsections (a) through (c) above the following counts:

(1) Any count for which the statute (A) specifies a term of imprisonment to be imposed; and (B) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment. Sentences for such counts are governed by subsection (a) of § 5G1.2 (Sentencing on Multiple Counts of Conviction).

(2) Any count of conviction under 18 U.S.C. 1028A. *See* Application Note 2(B) of the Commentary to § 5G1.2 (Sentencing on Multiple Counts of Conviction) for guidance on how sentences for multiple counts of conviction under 18 U.S.C. 1028A should be imposed.

Commentary

*Application Notes:*

1. *In General.*—This guideline provides rules for determining a single offense level that encompasses all the counts of which the defendant is convicted. For purposes of sentencing multiple counts of conviction, counts can be (A) contained in the same indictment or information; or (B) contained in different indictments or informations for which sentences are to be imposed at the same time or in a consolidated proceeding.

2. *Application of Subsection (d).*—Subsection (d)(1) applies if a statute (A) specifies a term of imprisonment to be imposed; and (B) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment. *See, e.g.,* 18 U.S.C. 924(c) (requiring mandatory minimum terms of imprisonment, based on the conduct involved, to run consecutively). The multiple count rules set out under this guideline do not apply to a count of conviction covered by subsection (d). However, a count covered by subsection (d)(1) may affect the offense level determination for other counts. For example, a defendant is convicted of one count of bank robbery (18 U.S.C. 2113), and one count of use of a firearm in the commission of a crime of violence (18 U.S.C. 924(c)). The two counts are not grouped together pursuant to this guideline, and, to avoid unwarranted double counting, the offense level for the bank robbery count under § 2B3.1 (Robbery) is computed without application of the enhancement for weapon possession or use as otherwise required by subsection (b)(2) of that guideline. Pursuant to 18 U.S.C. 924(c), the mandatory minimum five-year sentence on the weapon-use count runs consecutively to the guideline sentence imposed on the bank robbery count. *See* § 5G1.2(a).

Unless specifically instructed, subsection (d)(1) does not apply when imposing a sentence under a statute that requires the imposition of a consecutive term of imprisonment only if a term of imprisonment is imposed (*i.e.,* the statute does not otherwise require a term of imprisonment to be imposed). *See, e.g.,* 18 U.S.C. 3146 (Penalty for failure to appear); 18 U.S.C. 924(a)(4) (regarding penalty for 18 U.S.C. 922(q) (possession or discharge of a firearm in a school zone)); 18 U.S.C. 1791(c) (penalty for providing or possessing a controlled substance in prison). Accordingly, the multiple count rules set out under this part do apply to a count of conviction under this type of statute.

*Background:* This section outlines the procedure to be used for determining the combined offense level. After any adjustments from Chapter Three, Parts E (Acceptance of Responsibility) and F (Early Disposition Programs), and Chapter Four, Parts B (Career Offenders and Criminal Livelihood) and C (Adjustment for Certain Zero-Point Offenders) are made, this combined offense level is used to determine the guideline sentence range. Chapter Five (Determining the Sentencing Range and Options Under the Guidelines) discusses how to determine the sentence from the (combined) offense level; § 5G1.2 deals specifically with determining the sentence of imprisonment when convictions on multiple counts are involved. References in Chapter Five (Determining the Sentencing Range and Options Under the Guidelines) to the 'offense level' should be treated as referring to the combined offense level after all subsequent adjustments have been made.''.

Section 1B1.1(a)(4) is amended by striking ''Apply Part D of Chapter Three to group the various counts and adjust the offense level accordingly'' and inserting ''Apply § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts) to determine the combined offense level applicable to all counts''.

The Commentary to § 1B1.2 captioned ''Application Notes'' is amended in Note 4 by striking ''if the object offenses

specified in the conspiracy count would be grouped together under § 3D1.2(d) (*e.g.,* a conspiracy to steal three government checks) it is not necessary to engage in the foregoing analysis, because § 1B1.3(a)(2) governs consideration of the defendant's conduct'' and inserting ''if the combined offense level for the object offenses specified in the conspiracy count is determined pursuant to 3D1.1(a) (*e.g.,* a conspiracy to steal three government checks) it is not necessary to engage in the foregoing analysis''.

Section 1B1.3 is amended—

in subsection (a)(2) by striking ''solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction'' and inserting ''solely with respect to offenses described in subsection (d) below, all acts and omissions described in paragraphs (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction'';

and by inserting at the end the following new subsection (d):

''(d) *Offenses Covered by Subsection (a)(2).*—Subsection (a)(2) applies to offenses where the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or where the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Subsection (a)(2) applies to offenses covered by the following guidelines:

§ 2A3.5;
§§ 2B1.1, 2B1.4, 2B1.5, 2B4.1, 2B5.1, 2B5.3, 2B6.1;
§§ 2C1.1, 2C1.2, 2C1.8;
§§ 2D1.1, 2D1.2, 2D1.5, 2D1.11, 2D1.13;
§§ 2E4.1, 2E5.1;
§§ 2G2.2, 2G3.1;
§ 2K2.1;
§§ 2L1.1, 2L2.1;
§ 2N3.1;
§ 2Q2.1;
§ 2R1.1;
§§ 2S1.1, 2S1.3;
§§ 2T1.1, 2T1.4, 2T1.6, 2T1.7, 2T1.9, 2T2.1, 2T3.1.

Subsection (a)(2) does not apply to the offenses covered by the following guidelines:

all offenses in Chapter Two, Part A (except § 2A3.5);
§§ 2B2.1, 2B2.3, 2B3.1, 2B3.2, 2B3.3;
§ 2C1.5;
§§ 2D2.1, 2D2.2, 2D2.3;
§§ 2E1.3, 2E1.4, 2E2.1;
§§ 2G1.1, 2G1.3, 2G2.1;
§§ 2H1.1, 2H2.1, 2H4.1;
§§ 2L2.2, 2L2.5;
§§ 2M2.1, 2M2.3, 2M3.1, 2M3.2, 2M3.3, 2M3.4, 2M3.5, 2M3.9;
§§ 2P1.1, 2P1.2, 2P1.3;
§ 2X6.1.

For offenses covered by guidelines that are not listed, subsection (a)(2) may or may not apply. In such instances, a case-by-case determination must be made based upon the facts of the case and the applicable guidelines (including specific offense characteristics and other adjustments) used to determine the offense level.

Subsection (a)(2) applies to counts involving offenses covered by different offense guidelines if the offenses are of the same general type and otherwise meet the criteria described in this subsection. The 'same general type' of offense is to be construed broadly.''.

The Commentary to § 1B1.3 captioned ''Application Notes'' is amended—

in Note 5(A) by striking the following:

''*Relationship to Grouping of Multiple Counts.*—'Offenses of a character for which § 3D1.2(d) would require grouping of multiple counts,' as used in subsection (a)(2), applies to offenses for which grouping of counts would be required under § 3D1.2(d) had the defendant been convicted of multiple counts. Application of this provision does not require the defendant, in fact, to have been convicted of multiple counts. For example, where the defendant engaged in three drug sales of 10, 15, and 20 grams of cocaine, as part of the same course of conduct or common scheme or plan, subsection (a)(2) provides that the total quantity of cocaine involved (45 grams) is to be used to determine the offense level even if the defendant is convicted of a single count charging only one of the sales. If the defendant is convicted of multiple counts for the above noted sales, the grouping rules of Chapter Three, Part D (Multiple Counts) provide that the counts are grouped together. Although Chapter Three, Part D (Multiple Counts) applies to multiple counts of conviction, it does not limit the scope of subsection (a)(2). Subsection (a)(2) merely incorporates by reference the types of offenses set forth in § 3D1.2(d); thus, as discussed above, multiple counts of conviction are not required for subsection (a)(2) to apply.

As noted above, subsection (a)(2) applies to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, had the defendant been convicted of multiple counts. For example, the defendant sells 30 grams of cocaine (a violation of 21 U.S.C. 841) on one occasion and, as part of the same course of conduct or common scheme or plan, attempts to sell an additional 15 grams of cocaine (a violation of 21 U.S.C. 846) on another occasion. The defendant is convicted of one count charging the completed sale of 30 grams of cocaine. The two offenses (sale of cocaine and attempted sale of cocaine), although covered by different statutory provisions, are of a character for which § 3D1.2(d) would require the grouping of counts, had the defendant been convicted of both counts. Therefore, subsection (a)(2) applies and the total amount of cocaine (45 grams) involved is used to determine the offense level.'',

and inserting the following:

''*In General.*—Application of subsection (a)(2) does not require the defendant, in fact, to have been convicted of multiple counts. For example, where the defendant engaged in three drug sales of 10, 15, and 20 grams of cocaine, as part of the same course of conduct or common scheme or plan, subsection (a)(2) provides that the total quantity of cocaine involved (45 grams) is to be used to determine the offense level even if the defendant is convicted of a single count charging only one of the sales.

As noted in subsection (d), subsection (a)(2) applies to offenses where the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or where the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior. For example, the defendant sells 30 grams of cocaine (a violation of 21 U.S.C. 841) on one occasion and, as part of the same course of conduct or common scheme or plan, attempts to sell an additional 15 grams of cocaine (a violation of 21 U.S.C. 846) on another occasion. The defendant is convicted of one count charging the completed sale of 30 grams of cocaine. The two offenses (sale of cocaine and attempted sale of cocaine), although violating different statutory provisions, are covered by a guideline to which subsection (a)(2) is applicable pursuant to subsection (d). Therefore, subsection (a)(2) applies and the total amount of cocaine (45 grams) involved is used to determine the offense level.'';

and by inserting at the end the following new Note 11:

''11. *Application of Subsection (d).*—Subsection (d) provides that subsection (a)(2) covers most property crimes (except robbery, burglary, extortion and the like), drug offenses, firearms

offenses, and other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior. The list of instances in which subsection (a)(2) should be applied is not exhaustive. Note, however, that certain guidelines are specifically excluded from the operation of subsection (a)(2).

Subsection (a)(2) applies to a conspiracy, attempt, or solicitation to commit an offense if the offense that is the object of the conspiracy, attempt, or solicitation is covered under subsection (d).''.

The Commentary to § 1B1.3 captioned ''Background'' is amended by striking ''The distinction is made on the basis of § 3D1.2(d), which provides for grouping together (*i.e.,* treating as a single count) all counts charging offenses of a type covered by this subsection. However, the applicability of subsection (a)(2) does not depend upon whether multiple counts are alleged'' and inserting ''The distinction is made on the basis of subsection (d)''; by striking ''(*i.e.,* to which § 3D1.2(d) applies)''; and by striking ''Conversely, when § 3D1.2(d) does not apply, so that convictions on multiple counts are considered separately in determining the guideline sentencing range, the guidelines prohibit aggregation of quantities from other counts in order to prevent 'double counting' of the conduct and harm from each count of conviction. Continuing offenses present similar practical problems. The reference to § 3D1.2(d), which provides for grouping of multiple counts arising out of a continuing offense when the offense guideline takes the continuing nature into account, also prevents double counting.''.

Section 1B1.5(c) is amended by striking ''Chapter Three (Adjustments)'' and inserting ''Chapter Three, Parts A through D''.

The Commentary to § 1B1.5 captioned ''Application Notes'' is amended in Note 3 by striking ''(or group of closely related offenses in the case of offenses that would be grouped together under § 3D1.2(d))'' and inserting ''(or group of offenses to which § 3D1.1(a) applies)''.

The Commentary to § 1B1.11 captioned ''Background'' is amended by striking ''whether the offenses of conviction are the type in which the conduct is grouped under § 3D1.2(d)'' and inserting ''whether the offenses of conviction are the type to which § 3D1.1(a) applies''; and by striking ''(*see* §§ 3D1.1–3D1.5, 5G1.2)'' and inserting ''(*see* §§ 3D1.1, 5G1.2)''.

Section 2A1.4(b)(1) is amended by striking ''Chapter Three, Part D (Multiple Counts)'' and inserting ''subsection (b) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts)''.

The Commentary to § 2A6.1 captioned ''Application Notes'' is amended in Note 3 by striking the following:

''*Grouping.*—For purposes of Chapter Three, Part D (Multiple Counts), multiple counts involving making a threatening or harassing communication to the same victim are grouped together under § 3D1.2 (Groups of Closely Related Counts). Multiple counts involving different victims are not to be grouped under § 3D1.2.'';

and inserting the following:

''*Multiple Counts.*—For purposes of Chapter Three, Part D (Multiple Counts), do not apply subsection (b) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts) to multiple counts involving making a threatening or harassing communication to the same victim.''.

The Commentary to § 2A6.2 captioned ''Application Notes'' is amended in Note 4 by striking the following:

''For purposes of Chapter Three, Part D (Multiple Counts), multiple counts involving stalking, threatening, or harassing the same victim are grouped together (and with counts of other offenses involving the same victim that are covered by this guideline) under § 3D1.2 (Groups of Closely Related Counts). For example, if the defendant is convicted of two counts of stalking the defendant's ex-spouse under 18 U.S.C. 2261A and one count of interstate domestic violence involving an assault of the ex-spouse under 18 U.S.C. 2261, the stalking counts would be grouped together with the interstate domestic violence count. This grouping procedure avoids unwarranted 'double counting' with the enhancement in subsection (b)(1)(E) (for multiple acts of stalking, threatening, harassing, or assaulting the same victim) and recognizes that the stalking and interstate domestic violence counts are sufficiently related to warrant grouping.

Multiple counts that are cross referenced to another offense guideline pursuant to subsection (c) are to be grouped together if § 3D1.2 (Groups of Closely Related Counts) would require grouping of those counts under that offense guideline. Similarly, multiple counts cross referenced pursuant to subsection (c) are not to be grouped together if § 3D1.2 would preclude grouping of the counts under that offense guideline. For example, if the defendant is convicted of multiple counts of threatening an ex-spouse in violation of a court protection order under 18 U.S.C. 2262 and the counts are cross referenced to § 2A6.1 (Threatening or Harassing Communications), the counts would group together because Application Note 3 of § 2A6.1 specifically requires grouping. In contrast, if the defendant is convicted of multiple counts of assaulting the ex-spouse in violation of a court protection order under 18 U.S.C. 2262 and the counts are cross referenced to § 2A2.2 (Aggravated Assault), the counts probably would not group together inasmuch as § 3D1.2(d) specifically precludes grouping of counts covered by § 2A2.2 and no other provision of § 3D1.2 would likely apply to require grouping.

Multiple counts involving different victims are not to be grouped under § 3D1.2 (Groups of Closely Related Counts).'';

and inserting the following:

''For purposes of Chapter Three, Part D (Multiple Counts), do not apply subsection (b) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts) to multiple counts involving stalking, threatening, or harassing the same victim. For example, if the defendant is convicted of two counts of stalking the defendant's ex-spouse under 18 U.S.C. 2261A and one count of interstate domestic violence involving an assault of the ex-spouse under 18 U.S.C. 2261, § 3D1.1(b) does not apply to the stalking counts.

Determine the combined offense level for multiple counts that are cross referenced to another offense guideline pursuant to subsection (c) by applying § 3D1.1.''.

The Commentary to § 2B1.1 captioned ''Application Notes'' is amended in Note 20 by striking ''*See* Chapter Three, Part D (Multiple Counts)'' and inserting ''*See* subsection (a) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts)''.

The Commentary to § 2B1.5 captioned ''Application Notes'' is amended in Note 8 by striking ''For purposes of Chapter Three, Part D (Multiple Counts), multiple counts involving offenses covered by this guideline are grouped together under subsection (d) of § 3D1.2 (Groups of Closely Related Counts). Multiple counts involving offenses covered by this guideline and offenses covered by other guidelines are not to be grouped under § 3D1.2(d)'' and inserting ''For purposes of Chapter Three, Part D (Multiple Counts), apply subsection (a) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts) to determine the combined offense level for multiple counts involving offenses covered by this guideline''.

The Commentary to § 2D1.5 captioned ''Application Notes'' is amended by striking Note 3 as follows:

"3. *Multiple Counts.*—Violations of 21 U.S.C. 848 will be grouped with other drug offenses for the purpose of applying Chapter Three, Part D (Multiple Counts).".

The Commentary to § 2D1.11 captioned "Application Notes" is amended in Note 9 by striking "Under the grouping rules of § 3D1.2(b), the counts will be grouped together" and inserting "Determine the combined offense level for these offenses by applying subsection (a) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts)".

Section 2D2.3(b)(1) is amended by striking "apply Chapter Three, Part D (Multiple Counts)" and inserting "apply subsection (b) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts)".

Section 2G1.1(d)(1) is amended by striking "Chapter Three, Part D (Multiple Counts)" and inserting "subsection (b) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts)".

The Commentary to § 2G1.1 captioned "Application Notes" is amended in Note 5 by striking "multiple counts involving more than one victim are not to be grouped together under § 3D1.2 (Groups of Closely Related Counts)" and inserting "multiple counts involving more than one victim are subject to the adjustment under subsection (b) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts)".

Section 2G1.3(d)(1) is amended by striking "Chapter Three, Part D (Multiple Counts)" and inserting "subsection (b) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts)".

The Commentary to § 2G1.3 captioned "Application Notes" is amended in Note 6 by striking "multiple counts involving more than one minor are not to be grouped together under § 3D1.2 (Groups of Closely Related Counts)" and inserting "multiple counts involving more than one minor are subject to the adjustment under subsection (b) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts)".

Section 2G2.1(d)(1) is amended by striking "Chapter Three, Part D (Multiple Counts)" and inserting "subsection (b) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts)".

The Commentary to § 2G2.1 captioned "Application Notes" is amended in Note 7 by striking "multiple counts involving the exploitation of different minors are not to be grouped together under § 3D1.2 (Groups of Closely Related Counts)" and inserting "multiple counts involving the exploitation of different minors are subject to the adjustment under subsection (b) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts)".

The Commentary to § 2H4.1 captioned "Application Notes" is amended in Note 2 by striking "the most serious such offense (or group of closely related offenses in the case of offenses that would be grouped together under § 3D1.2(d)) is to be used" and inserting "the most serious such offense (or group of offenses to which § 3D1.1(a) applies) is to be used".

The Commentary to § 2J1.2 captioned "Application Notes" is amended by striking Note 3 as follows:

"3. *Convictions for the Underlying Offense.*—In the event that the defendant is convicted of an offense sentenced under this section as well as for the underlying offense (*i.e.,* the offense that is the object of the obstruction), *see* the Commentary to Chapter Three, Part C (Obstruction and Related Adjustments), and to § 3D1.2(c) (Groups of Closely Related Counts).".

*[The proposed amendment would redesignate the rest of the notes in the Commentary to § 2J1.2 captioned "Application Notes" accordingly.]*

Section 2J1.3(d)(1) is amended by striking "do not group the counts together under § 3D1.2 (Groups of Closely Related Counts)" and inserting "apply subsection (b) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts) to the counts".

The Commentary to § 2J1.3 captioned "Application Notes" is amended by striking Note 3 as follows:

"3. In the event that the defendant is convicted under this section as well as for the underlying offense (*i.e.,* the offense with respect to which he committed perjury, subornation of perjury, or witness bribery), *see* the Commentary to § 3C1.1, and to § 3D1.2(c) (Groups of Closely Related Counts).".

*[The proposed amendment would redesignate the rest of the notes in the Commentary to § 2J1.3 captioned "Application Notes" accordingly.]*

The Commentary to § 2J1.6 captioned "Application Notes" is amended in Note 3 by striking the following:

"In the case of a failure to appear for service of sentence, any term of imprisonment imposed on the failure to appear count is to be imposed consecutively to any term of imprisonment imposed for the underlying offense. *See* § 5G1.3(a). The guideline range for the failure to appear count is to be determined independently and the grouping rules of §§ 3D1.1–3D1.5 do not apply.

However, in the case of a conviction on both the underlying offense and the failure to appear, other than a case of failure to appear for service of sentence, the failure to appear is treated under § 3C1.1 (Obstructing or Impeding the Administration of Justice) as an obstruction of the underlying offense, and the failure to appear count and the count or counts for the underlying offense are grouped together under § 3D1.2(c). (Note that 18 U.S.C. 3146(b)(2) does not require a sentence of imprisonment on a failure to appear count, although if a sentence of imprisonment on the failure to appear count is imposed, the statute requires that the sentence be imposed to run consecutively to any other sentence of imprisonment. Therefore, unlike a count in which the statute mandates both a minimum and a consecutive sentence of imprisonment, the grouping rules of §§ 3D1.1–3D1.5 apply. *See* § 3D1.1(b)(1), comment. (n.1), and § 3D1.2, comment. (n.1).) The combined sentence will then be constructed to provide a 'total punishment' that satisfies the requirements both of § 5G1.2 (Sentencing on Multiple Counts of Conviction) and 18 U.S.C. 3146(b)(2). For example, if the combined applicable guideline range for both counts is 30–37 months and the court determines that a 'total punishment' of 36 months is appropriate, a sentence of 30 months for the underlying offense plus a consecutive six months' sentence for the failure to appear count would satisfy these requirements. (Note that the combination of this instruction and increasing the offense level for the obstructive, failure to appear conduct has the effect of ensuring an incremental, consecutive punishment for the failure to appear count, as required by 18 U.S.C. 3146(b)(2).)";

and inserting the following:

"In the case of a failure to appear for service of sentence, any term of imprisonment imposed on the failure to appear count is to be imposed consecutively to any term of imprisonment imposed for the underlying offense. *See* § 5G1.3(a). The guideline range for the failure to appear count is to be determined independently and § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts) does not apply.

However, in the case of a conviction on both the underlying offense and the failure to appear, other than a case of failure to appear for service of sentence, the failure to appear is treated under § 3C1.1 (Obstructing or Impeding the Administration of Justice) as an

obstruction of the underlying offense, and the combined offense level for the failure to appear count and the count or counts for the underlying offense is determined under § 3D1.1. (Note that 18 U.S.C. 3146(b)(2) does not require a sentence of imprisonment on a failure to appear count, although if a sentence of imprisonment on the failure to appear count is imposed, the statute requires that the sentence be imposed to run consecutively to any other sentence of imprisonment. Therefore, unlike a count in which the statute mandates both a minimum and a consecutive sentence of imprisonment, § 3D1.1 applies. *See* § 3D1.1(d)(1), comment. (n.1).) The combined sentence will then be constructed to provide a 'total punishment' that satisfies the requirements both of § 5G1.2 (Sentencing on Multiple Counts of Conviction) and 18 U.S.C. 3146(b)(2). For example, if the combined applicable guideline range for both counts is 30–37 months and the court determines that a 'total punishment' of 36 months is appropriate, a sentence of 30 months for the underlying offense plus a consecutive six months' sentence for the failure to appear count would satisfy these requirements. (Note that the combination of this instruction and increasing the offense level for the obstructive, failure to appear conduct has the effect of ensuring an incremental, consecutive punishment for the failure to appear count, as required by 18 U.S.C. 3146(b)(2).)''.

The Commentary to § 2J1.9 captioned ''Application Notes'' is amended—

in the caption by striking ''Notes'' and inserting ''Note'';

and by striking Note 2 as follows:

''2. In the event that the defendant is convicted under this section as well as for the underlying offense (*i.e.,* the offense with respect to which the payment was made), *see* the Commentary to § 3C1.1, and to § 3D1.2(c) (Groups of Closely Related Counts).''.

The Commentary to § 2K2.4 captioned ''Application Notes'' is amended in Note 4 by striking the following:

''*Non-Applicability of Certain Enhancements.*—

(A) *In General.*—If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. A sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Do not apply any weapon enhancement in the guideline for the underlying offense, for example, if (A) a co-defendant, as part of the jointly undertaken criminal activity, possessed a firearm different from the one for which the defendant was convicted under 18 U.S.C. 924(c); or (B) in an ongoing drug trafficking offense, the defendant possessed a firearm other than the one for which the defendant was convicted under 18 U.S.C. 924(c). However, if a defendant is convicted of two armed bank robberies, but is convicted under 18 U.S.C. 924(c) in connection with only one of the robberies, a weapon enhancement would apply to the bank robbery which was not the basis for the 18 U.S.C. 924(c) conviction.

A sentence under this guideline also accounts for conduct that would subject the defendant to an enhancement under § 2D1.1(b)(2) (pertaining to use of violence, credible threat to use violence, or directing the use of violence). Do not apply that enhancement when determining the sentence for the underlying offense.

If the explosive or weapon that was possessed, brandished, used, or discharged in the course of the underlying offense also results in a conviction that would subject the defendant to an enhancement under § 2K1.3(b)(3) (pertaining to possession of explosive material in connection with another felony offense) or § 2K2.1(b)(7)(B) (pertaining to possession of any firearm or ammunition in connection with another felony offense), do not apply that enhancement. A sentence under this guideline accounts for the conduct covered by these enhancements because of the relatedness of that conduct to the conduct that forms the basis for the conviction under 18 U.S.C. 844(h), 924(c) or 929(a). For example, if in addition to a conviction for an underlying offense of armed bank robbery, the defendant was convicted of being a felon in possession under 18 U.S.C. 922(g), the enhancement under § 2K2.1(b)(7)(B) would not apply.

(B) *Impact on Grouping.*—If two or more counts would otherwise group under subsection (c) of § 3D1.2 (Groups of Closely Related Counts), the counts are to be grouped together under § 3D1.2(c) despite the non-applicability of certain enhancements under Application Note 4(A). Thus, for example, in a case in which the defendant is convicted of a felon-in-possession count under 18 U.S.C. 922(g) and a drug trafficking count underlying a conviction under 18 U.S.C. 924(c), the counts shall be grouped pursuant to § 3D1.2(c). The applicable Chapter Two guidelines for the felon-in-possession count and the drug trafficking count each include 'conduct that is treated as a specific offense characteristic' in the other count, but the otherwise applicable enhancements did not apply due to the rules in § 2K2.4 related to 18 U.S.C. 924(c) convictions.'';

and inserting the following:

''*Non-Applicability of Certain Enhancements.*—If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. A sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Do not apply any weapon enhancement in the guideline for the underlying offense, for example, if (A) a co-defendant, as part of the jointly undertaken criminal activity, possessed a firearm different from the one for which the defendant was convicted under 18 U.S.C. 924(c); or (B) in an ongoing drug trafficking offense, the defendant possessed a firearm other than the one for which the defendant was convicted under 18 U.S.C. 924(c). However, if a defendant is convicted of two armed bank robberies, but is convicted under 18 U.S.C. 924(c) in connection with only one of the robberies, a weapon enhancement would apply to the bank robbery which was not the basis for the 18 U.S.C. 924(c) conviction.

A sentence under this guideline also accounts for conduct that would subject the defendant to an enhancement under § 2D1.1(b)(2) (pertaining to use of violence, credible threat to use violence, or directing the use of violence). Do not apply that enhancement when determining the sentence for the underlying offense.

If the explosive or weapon that was possessed, brandished, used, or discharged in the course of the underlying offense also results in a conviction that would subject the defendant to an enhancement under § 2K1.3(b)(3) (pertaining to possession of explosive material in connection with another felony offense) or § 2K2.1(b)(7)(B) (pertaining to possession of any firearm or

ammunition in connection with another felony offense), do not apply that enhancement. A sentence under this guideline accounts for the conduct covered by these enhancements because of the relatedness of that conduct to the conduct that forms the basis for the conviction under 18 U.S.C. 844(h), 924(c) or 929(a). For example, if in addition to a conviction for an underlying offense of armed bank robbery, the defendant was convicted of being a felon in possession under 18 U.S.C. 922(g), the enhancement under § 2K2.1(b)(7)(B) would not apply.''.

The Commentary to § 2K2.6 captioned ''Application Notes'' is amended by striking Note 3 as follows:

''3. *Grouping of Multiple Counts.*—If subsection (b)(1) applies (because the defendant used the body armor in connection with another felony offense) and the instant offense of conviction includes a count of conviction for that other felony offense, the counts of conviction for the 18 U.S.C. 931 offense and that other felony offense shall be grouped pursuant to subsection (c) of § 3D1.2 (Groups of Closely Related Counts).''.

The Commentary to § 2L2.2 captioned ''Application Notes'' is amended by striking Note 5 as follows:

''5. *Multiple Counts.*—For the purposes of Chapter Three, Part D (Multiple Counts), a count of conviction for unlawfully entering or remaining in the United States covered by § 2L1.2 (Unlawfully Entering or Remaining in the United States) arising from the same course of conduct as the count of conviction covered by this guideline shall be considered a closely related count to the count of conviction covered by this guideline, and therefore is to be grouped with the count of conviction covered by this guideline.''.

Section 2M6.1(d)(1) is amended by striking ''Chapter Three, Part D (Multiple Counts)'' and inserting ''subsection (b) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts)''.

Section 2N1.1(d)(1) is amended by striking ''Chapter Three, Part D (Multiple Counts)'' and inserting ''subsection (b) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts)''.

The Commentary to § 2P1.2 captioned ''Application Notes'' is amended in Note 3 by striking ''group the offenses together under § 3D1.2(c)'' and inserting ''determine the combined offense level for the offenses under § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts)''; and by striking ''the grouping rules of §§ 3D1.1–3D1.5 apply. *See* § 3D1.1(b)(1), comment. (n.1), and § 3D1.2, comment. (n.1)'' and inserting ''§ 3D1.1 will apply. *See* § 3D1.1(d)(1), comment. (n.1)''.

Section 2Q1.4(d)(1) is amended by striking ''Chapter Three, Part D (Multiple Counts)'' and inserting ''subsection (b) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts)''.

The Commentary to § 2S1.1 captioned ''Application Notes'' is amended by striking Note 6 as follows:

''6. *Grouping of Multiple Counts.*—In a case in which the defendant is convicted of a count of laundering funds and a count for the underlying offense from which the laundered funds were derived, the counts shall be grouped pursuant to subsection (c) of § 3D1.2 (Groups of Closely-Related Counts).''.

The Commentary to § 2X6.1 captioned ''Application Notes'' is amended in Note 3 by striking the following:

''*Multiple Counts.*—

(A) In a case in which the defendant is convicted under both 18 U.S.C. 25 and the underlying crime of violence, the counts shall be grouped pursuant to subsection (a) of § 3D1.2 (Groups of Closely Related Counts).

(B) Multiple counts involving the use of a minor in a crime of violence shall not be grouped under § 3D1.2.'';

and inserting the following:

''*Multiple Counts.*—In a case in which the defendant is convicted of multiple counts involving the use of a minor in a crime of violence, apply subsection (b) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts) to the counts.''.

The Commentary to § 3C1.1 captioned ''Application Notes'' is amended—

by striking Note 8 as follows:

''8. *Grouping Under § 3D1.2(c).*—If the defendant is convicted both of an obstruction offense (*e.g.,* 18 U.S.C. 3146 (Penalty for failure to appear); 18 U.S.C. 1621 (Perjury generally)) and an underlying offense (the offense with respect to which the obstructive conduct occurred), the count for the obstruction offense will be grouped with the count for the underlying offense under subsection (c) of § 3D1.2 (Groups of Closely Related Counts). The offense level for that group of closely related counts will be the offense level for the underlying offense increased by the 2-level adjustment specified by this section, or the offense level for the obstruction offense, whichever is greater.'';

and by redesignating Note 9 as Note 8.

The Commentary to § 5G1.2 captioned ''Application Notes'' is amended in Note 2(B)(ii) by striking ''Whether the underlying offenses are groupable under § 3D1.2 (Groups of Closely Related Counts). Generally, multiple counts of 18 U.S.C. 1028A should run concurrently with one another in cases in which the underlying offenses are groupable under § 3D1.2'' and inserting ''Whether subsection (b) of § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts) applies to the underlying offenses. Generally, multiple counts of 18 U.S.C. 1028A should run concurrently with one another in cases in which § 3D1.1(b) did not apply to the underlying offenses''.

*Issues for Comment:*

1. The Commission seeks comment on whether it should simplify the operation of the multiple count rules. If so, does the proposed amendment achieve the goal of simplification? Alternatively, should the Commission simplify or clarify the application of these rules in a different manner? For example, should the Commission make more targeted revisions to Chapter Three, Part D to clarify the operation of the current rules? If so, what changes should the Commission make? Relatedly, if the Commission maintains the current structure of the multiple count rules, should it include its Grouping of Multiple Counts Decision Tree (available at *https://www.ussc.gov/education/training-resources/multiple-counts-quick-reference-materials*) as a reference in the *Guidelines Manual*?

2. When the Commission has previously undertaken simplification efforts of the *Guidelines Manual,* it has envisioned and framed proposed amendments to be outcome neutral. This proposed amendment likewise aims to be outcome neutral, recognizing that nevertheless there may be some cases resulting in higher guideline ranges and some cases resulting in lower guideline ranges. Are there any categories of cases resulting in higher or lower guideline ranges that should not result in a different guideline range? If so, what should the Commission do to address these cases while still achieving its goal of simplification?

3. New § 3D1.1(b) provides that, if multiple counts use the same guideline and the guideline is listed therein, the offense level for each count is calculated separately and an adjustment based on the number counts applies to the count resulting in the highest offense level. The guidelines listed in new subsection (b) are not currently aggregated under § 3D1.2(d) and generally cover offenses against a person and other offenses that in fiscal year 2024 resulted in a multiple count increase under § 3D1.4 on more than two cases. The Commission seeks comment on whether there are additional guidelines that should be

listed in new § 3D1.1(b). Alternatively, are there any listed guidelines that should be excluded from new § 3D1.1(b)?

New § 3D1.1(b) also lists six additional guidelines: § 2D2.3 (Operating or Directing the Operation of a Common Carrier Under the Influence of Alcohol or Drugs); § 2J1.3 (Perjury or Subornation of Perjury; Bribery of Witness); § 2M6.1 (Unlawful Activity Involving Nuclear Material, Weapons, or Facilities, Biological Agents, Toxins, or Delivery Systems, Chemical Weapons, or Other Weapons of Mass Destruction; Attempt or Conspiracy); § 2N1.1 (Tampering or Attempting to Tamper Involving Risk of Death or Bodily Injury); § 2Q1.4 (Tampering or Attempted Tampering with a Public Water System; Threatening to Tamper with a Public Water System); and § 2X6.1 (Use of a Minor in a Crime of Violence). These guidelines contain instructions providing for a multiple count adjustment under certain circumstances. In fiscal year 2024, none of these instructions applied, and only one case involved one of these six guidelines (§ 2J1.3) and a multiple count adjustment. The Commission seeks comment on whether these guidelines should be excluded from the list in new § 3D1.1(b) and the instructions found in each of these six guidelines also deleted.

**6. Simplification**

*Synopsis of Proposed Amendment:* In August 2025, the Commission identified as one of its policy priorities for the amendment cycle ending May 1, 2026, ''[c]ontinued exploration of ways to simplify the *Guidelines Manual,* including . . . evaluating infrequently applied specific offense characteristics and adjustments provisions throughout the *Guidelines Manual;* and . . . possible consideration of amendments that might be appropriate.'' U.S. Sent'g Comm'n, ''Notice of Final Priorities,'' 90 FR 39263, 39264 (Aug. 14, 2025).

The initiative of simplifying the *Guidelines Manual* has persisted almost since the guidelines' inception and has taken various forms over time. For example, in 1993, the Commission deleted ''25 offense guidelines by consolidating them with other offense guidelines that cover similar offense conduct and have identical or very similar base offense levels and adjustments'' for various reasons, including that ''it shortens and simplifies the Guidelines Manual.'' *See* USSG App. C, amend. 481 (effective Nov. 1, 1993).

The *Guidelines Manual* includes 155 Chapter Two offense guidelines, 86 of which have at least one specific offense characteristic, for a total of 298 specific offense characteristics. Application rates for the 298 specific offense characteristics vary widely, both in terms of number of times used each year and frequency of use within the underlying guideline.

The Commission is considering deleting 26 specific offense characteristics that courts did not apply at all in the last five fiscal years. These 26 specific offense characteristics applied a small number of times—if at all—even using a 25-year lookback window. For some of these specific offense characteristics, low usage mirrored low usage of the underlying guideline. For others, the underlying guideline was applied a relatively large number of times, but the specific offense characteristic was infrequently applied.

The proposed amendment would delete certain specific offense characteristics in the following guidelines: § 2A5.1 (Aircraft Piracy or Attempted Aircraft Piracy); § 2B1.5 (Theft of, Damage to, or Destruction of, Cultural Heritage Resources or Paleontological Resources; Unlawful Sale, Purchase, Exchange, Transportation, or Receipt of Cultural Heritage Resources or Paleontological Resources); § 2B2.3 (Trespass); § 2B6.1 (Altering or Removing Motor Vehicle Identification Numbers, or Trafficking in Motor Vehicles or Parts with Altered or Obliterated Identification Numbers); § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy); § 2D1.11 (Unlawfully Distributing, Importing, Exporting or Possessing a Listed Chemical; Attempt or Conspiracy); § 2D1.12 (Unlawful Possession, Manufacture, Distribution, Transportation, Exportation, or Importation of Prohibited Flask, Equipment, Chemical, Product, or Material; Attempt or Conspiracy); § 2D1.14 (Narco-Terrorism); § 2G3.2 (Obscene Telephone Communications for a Commercial Purpose; Broadcasting Obscene Material); § 2H3.1 (Interception of Communications; Eavesdropping; Disclosure of Certain Private or Protected Information); § 2J1.3 (Perjury or Subornation of Perjury; Bribery of Witness); § 2J1.6 (Failure to Appear by Defendant); § 2J1.9 (Payment to Witness); § 2K1.5 (Possessing Dangerous Weapons or Materials While Boarding or Aboard an Aircraft); § 2K2.6 (Possessing, Purchasing, or Owning Body Armor by Violent Felons); § 2M4.1 (Failure to Register and Evasion of Military Service); § 2P1.1 (Escape, Instigating or Assisting Escape); § 2Q1.2 (Mishandling of Hazardous or Toxic Substances or Pesticides; Recordkeeping, Tampering, and Falsification; Unlawfully Transporting Hazardous Materials in Commerce); § 2Q1.3 (Mishandling of Other Environmental Pollutants; Recordkeeping, Tampering, and Falsification); § 2Q1.4 (Tampering or Attempted Tampering with a Public Water System; Threatening to Tamper with a Public Water System); and § 2T1.9 (Conspiracy to Impede, Impair, Obstruct, or Defeat Tax).

An issue for comment is also provided.

*Proposed Amendment:*

Section 2A5.1 is amended by striking subsection (b) as follows:

''(b) Specific Offense Characteristic

(1) If death resulted, increase by 5 levels.''.

Section 2B1.5(b) is amended by striking paragraph (6) as follows:

''(6) If a dangerous weapon was brandished or its use was threatened, increase by 2 levels. If the resulting offense level is less than level 14, increase to level 14.''.

The Commentary to § 2B1.5 captioned ''Application Notes'' is amended—

by striking Note 7 as follows:

''7. *Dangerous Weapons Enhancement Under Subsection (b)(6).*—For purposes of subsection (b)(6), 'brandished' and 'dangerous weapon' have the meaning given those terms in Application Note 1 of the Commentary to § 1B1.1 (Application Instructions).'';

and by redesignating Note 8 as Note 7.

Section 2B2.3(b) is amended by striking paragraph (3) as follows:

''(3) If (A) the offense involved invasion of a protected computer; and (B) the loss resulting from the invasion (i) exceeded $2,500 but did not exceed $6,500, increase by 1 level; or (ii) exceeded $6,500, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.''.

The Commentary to § 2B2.3 captioned ''Application Notes'' is amended—

in the caption by striking ''Notes'' and inserting ''Note'';

in Note 1 by striking the following:

'' 'Protected computer' means a computer described in 18 U.S.C. 1030(e)(2)(A) or (B).'';

and by striking Note 2 as follows:

''2. *Application of Subsection (b)(3).*—Valuation of loss is discussed in § 2B1.1 (Theft, Property Destruction, and Fraud) and the Commentary to § 2B1.1.''.

Section 2B6.1(b) is amended by striking paragraph (3) as follows:

''(3) If the offense involved an organized scheme to steal vehicles or

vehicle parts, or to receive stolen vehicles or vehicle parts, and the offense level as determined above is less than level 14, increase to level 14.''.

The Commentary to § 2B6.1 captioned ''Application Notes'' is amended—

in the caption by striking ''Notes'' and inserting ''Note'';

by striking Note 1 as follows:

''1. Subsection (b)(3), referring to an 'organized scheme to steal vehicles or vehicle parts, or to receive stolen vehicles or vehicle parts,' provides an alternative minimum measure of loss in the case of an ongoing, sophisticated operation such as an auto theft ring or 'chop shop.' 'Vehicles' refers to all forms of vehicles, including aircraft and watercraft. *See* Commentary to § 2B1.1 (Theft, Property Destruction, and Fraud).'';

and by redesignating Note 2 as Note 1.

Section 2D1.1(b) is amended—

by striking paragraph (10) as follows:

''(10) If the defendant was convicted under 21 U.S.C. 841(g)(1)(A), increase by 2 levels.'';

by redesignating paragraphs (11) through (18) as paragraphs (10) through (17);

and in paragraph 12 (as so redesignated) by striking ''subsection (b)(13)(B)'' and inserting ''subsection (b)(12)(B)''.

Section 2D1.1(e)(2)(C) is amended by striking ''subsection (b)(17)'' and inserting ''subsection (b)(16)''.

The Commentary to § 2D1.1 captioned ''Application Notes'' is amended—

in Note 16 by striking ''Subsection (b)(11)'' both places it appears and inserting ''Subsection (b)(10)''; and by striking ''§ 2D1.1(b)(16)(D)'' and inserting ''§ 2D1.1(b)(15)(D)'';

in Note 17 by striking ''Subsection (b)(12)'' both places it appears and inserting ''Subsection (b)(11)'';

in Note 18, in the heading, by striking ''Subsection (b)(14)'' and inserting ''Subsection (b)(13)'';

in Note 18(A) by striking ''Subsection (b)(14)(A)'' both places it appears and inserting ''Subsection (b)(13)(A)'';

in Note 18(B) by striking ''Subsection (b)(14)(C)–(D)'' and inserting ''Subsection (b)(13)(C)–(D)''; by striking ''Subsection (b)(14)(C)(ii)'' and inserting ''Subsection (b)(13)(C)(ii)''; and by striking ''subsection (b)(14)(D)'' and inserting ''subsection (b)(13)(D)'';

in Note 19 by striking ''Subsection (b)(15)'' both places it appears and inserting ''Subsection (b)(14)''; and by striking ''subsection (b)(14)(A) and (b)(15)'' and inserting ''subsections (b)(13)(A) and (b)(14)'';

in Note 20, in the heading, by striking ''Subsection (b)(16)'' and inserting ''Subsection (b)(15)'';

in Note 20(A) by striking ''(Subsection (b)(16)(B))'' and inserting ''(Subsection (b)(15)(B))''; and by striking ''subsection (b)(16)(B)'' and inserting ''subsection (b)(15)(B)'';

in Note 20(B) by striking ''(Subsection (b)(16)(C))'' and inserting ''(Subsection (b)(15)(C))''; by striking ''Subsection (b)(16)(C)'' and inserting ''Subsection (b)(15)(C)''; and by striking ''subsection (b)(16)(C)'' and inserting ''subsection (b)(15)(C)'';

in Note 20(C) by striking ''(Subsection (b)(16)(E))'' and inserting ''(Subsection (b)(15)(E))''; and by striking ''subsection (b)(16)(E)'' and inserting ''subsection (b)(15)(E)'';

and in Note 21 by striking ''Subsection (b)(18)'' and inserting ''Subsection (b)(17)''; and by striking ''subsection (b)(18)'' both place it appears and inserting ''subsection (b)(17)''.

The Commentary to § 2D1.1 captioned ''Background'' is amended by striking ''Subsection (b)(11)'' and inserting ''Subsection (b)(10)''; by striking ''Subsection (b)(12)'' and inserting ''Subsection (b)(11)''; by striking ''Subsection (b)(14)(A)'' and inserting ''Subsection (b)(13)(A)''; by striking ''Subsection (b)(14)(C)(ii) and (D)'' and inserting ''Subsection (b)(13)(C)(ii) and (D)''; by striking ''Subsection (b)(16)'' and inserting ''Subsection (b)(15)''; and by striking ''Subsection (b)(17)'' and inserting ''Subsection (b)(16)''.

Section 2D1.11(b) is amended—

by striking paragraph (2) as follows:

''(2) If the defendant is convicted of violating 21 U.S.C. 841(c)(2) or (f)(1), or § 960(d)(2), (d)(3), or (d)(4), decrease by 3 levels, unless the defendant knew or believed that the listed chemical was to be used to manufacture a controlled substance unlawfully.'';

by redesignating paragraphs (3) and (4) as paragraphs (2) and (3), respectively;

by striking paragraph (5) as follows:

''(5) If the defendant is convicted under 21 U.S.C. 865, increase by 2 levels.'';

and by redesignating paragraph (6) as paragraph (4).

The Commentary to § 2D1.11 captioned ''Application Notes'' is amended—

by striking Note 3 as follows:

''3. *Application of Subsection (b)(2).*— Convictions under 21 U.S.C. 841(c)(2) and (f)(1), and 960(d)(2), (d)(3), and (d)(4) do not require that the defendant have knowledge or an actual belief that the listed chemical was to be used to manufacture a controlled substance unlawfully. In a case in which the defendant possessed or distributed the listed chemical without such knowledge or belief, a 3-level reduction is provided to reflect that the defendant is less culpable than one who possessed or distributed listed chemicals knowing or believing that they would be used to manufacture a controlled substance unlawfully.'';

by redesignating Notes 4 through 9 as Notes 3 through 8, respectively;

in Note 3 (as so redesignated) by striking ''Subsection (b)(3)'' both places it appears and inserting ''Subsection (b)(2)'';

in Note 4 (as so redesignated) by striking ''Subsection (b)(4)'' and inserting ''Subsection (b)(3)''; and by striking ''subsection (b)(4)'' each place it appears and inserting ''subsection (b)(3)'';

and in Note 6 (as so redesignated) by striking ''Subsection (b)(6)'' and inserting ''Subsection (b)(4)''; and by striking ''subsection (b)(6)'' both places it appears and inserting ''subsection (b)(4)''.

Section 2D1.12(b) is amended by striking paragraph (4) as follows:

''(4) If the offense involved stealing anhydrous ammonia or transporting stolen anhydrous ammonia, increase by 6 levels.''.

Section 2D1.14 is amended—

in subsection (a)(1) by striking ''§ 2D1.1(a)(5)(A), (a)(5)(B), and (b)(18)'' and inserting ''§ 2D1.1(a)(5)(A), (a)(5)(B), and (b)(17)'';

and by striking subsection (b) as follows:

''(b) Specific Offense Characteristic

(1) If § 3A1.4 (Terrorism) does not apply, increase by 6 levels.''.

Section 2G3.2 is amended by striking subsection (b) as follows:

''(b) Specific Offense Characteristics

(1) If a person who received the telephonic communication was less than eighteen years of age, or if a broadcast was made between six o'clock in the morning and eleven o'clock at night, increase by 4 levels.

(2) If 6 plus the offense level from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the volume of commerce attributable to the defendant is greater than the offense level determined above, increase to that offense level.''.

The Commentary to § 2G3.2 is amended by striking the Commentary captioned ''Background'' in its entirety as follows:

''*Background:* Subsection (b)(1) provides an enhancement where an obscene telephonic communication was received by a minor less than 18 years of age or where a broadcast was made during a time when such minors were likely to receive it. Subsection (b)(2) provides an enhancement for large-scale

'dial-a-porn' or obscene broadcasting operations that results in an offense level comparable to the offense level for such operations under § 2G3.1 (Importing, Mailing, or Transporting Obscene Matter; Transferring Obscene Matter to a Minor). The extent to which the obscene material was distributed is approximated by the volume of commerce attributable to the defendant.''.

Section 2H3.1(b) is amended—

in the heading by striking ''Characteristics'' and inserting ''Characteristic'';

and by striking paragraph (2) as follows:

''(2) (Apply the greater) If—

(A) the defendant is convicted under 18 U.S.C. 119, increase by 8 levels; or

(B) the defendant is convicted under 18 U.S.C. 119, and the offense involved the use of a computer or an interactive computer service to make restricted personal information about a covered person publicly available, increase by 10 levels.''.

The Commentary to § 2H3.1 captioned ''Application Notes'' is amended by striking Notes 3 and 4 as follows:

''3. *Inapplicability of Chapter Three (Adjustments).*—If the enhancement under subsection (b)(2) applies, do not apply § 3A1.2 (Official Victim).

4. *Definitions.*—For purposes of this guideline:

'Computer' has the meaning given that term in 18 U.S.C. 1030(e)(1).

'Covered person' has the meaning given that term in 18 U.S.C. 119(b).

'Interactive computer service' has the meaning given that term in section 230(e)(2) of the Communications Act of 1934 (47 U.S.C. 230(f)(2)).

'Means of identification' has the meaning given that term in 18 U.S.C. 1028(d)(7), except that such means of identification shall be of an actual (*i.e.,* not fictitious) individual, other than the defendant or a person for whose conduct the defendant is accountable under § 1B1.3 (Relevant Conduct).

'Personal information' means sensitive or private information involving an identifiable individual (including such information in the possession of a third party), including (A) medical records; (B) wills; (C) diaries; (D) private correspondence, including email; (E) financial records; (F) photographs of a sensitive or private nature; or (G) similar information.

'Restricted personal information' has the meaning given that term in 18 U.S.C. 119(b).''.

Section 2J1.3(b) is amended—

in the heading by striking ''Characteristics'' and inserting ''Characteristic'';

by striking paragraph (1) as follows:

''(1) If the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to suborn perjury, increase by 8 levels.'';

and by redesignating paragraph (2) as paragraph (1).

Section 2J1.6(b) is amended—

in the heading by striking ''Characteristics'' and inserting ''Characteristic'';

by striking paragraph (1) as follows:

''(1) If the base offense level is determined under subsection (a)(1), and the defendant—

(A) voluntarily surrendered within 96 hours of the time he was originally scheduled to report, decrease by 5 levels; or

(B) was ordered to report to a community corrections center, community treatment center, 'halfway house,' or similar facility, and subdivision (A) above does not apply, decrease by 2 levels.

*Provided,* however, that this reduction shall not apply if the defendant, while away from the facility, committed any federal, state, or local offense punishable by a term of imprisonment of one year or more.'';

and by redesignating paragraph (2) as paragraph (1).

Section 2J1.9 is amended by striking subsection (b) as follows:

''(b) Specific Offense Characteristic

(1) If the payment was made or offered for refusing to testify or for the witness absenting himself to avoid testifying, increase by 4 levels.''.

Section 2K1.5(b) is amended by striking the following:

''If more than one applies, use the greatest:

(1) If the offense was committed willfully and without regard for the safety of human life, or with reckless disregard for the safety of human life, increase by 15 levels.

(2) If the defendant was prohibited by another federal law from possessing the weapon or material, increase by 2 levels.

(3) If the defendant's possession of the weapon or material would have been lawful but for 49 U.S.C. 46505 and he acted with mere negligence, decrease by 3 levels.'';

and inserting the following:

''(1) (Apply the greater) If—

(A) the offense was committed willfully and without regard for the safety of human life, or with reckless disregard for the safety of human life, increase by 15 levels; or

(B) the defendant was prohibited by another federal law from possessing the weapon or material, increase by 2 levels.''.

The Commentary to § 2K1.5 captioned ''Background'' is amended by striking ''A decrease is provided in a case of mere negligence where the defendant was otherwise authorized to possess the weapon or material.''.

Section 2K2.6 is amended by striking subsection (b) as follows:

''(b) Specific Offense Characteristic

(1) If the defendant used the body armor in connection with another felony offense, increase by 4 levels.''.

The Commentary to § 2K2.6 is amended by striking the Commentary captioned ''Application Notes'' in its entirety as follows:

*Application Notes:*

1. *Application of Subsection (b)(1).*—

(A) *Meaning of 'Defendant'.*—Consistent with § 1B1.3 (Relevant Conduct), the term 'defendant', for purposes of subsection (b)(1), limits the accountability of the defendant to the defendant's own conduct and conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused.

(B) *Meaning of 'Felony Offense'.*—For purposes of subsection (b)(1), 'felony offense' means any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained.

(C) *Meaning of 'Used'.*—For purposes of subsection (b)(1), 'used' means the body armor was (i) actively employed in a manner to protect the person from gunfire; or (ii) used as a means of bartering. Subsection (b)(1) does not apply if the body armor was merely possessed. For example, subsection (b)(1) would not apply if the body armor was found in the trunk of a car but was not being actively used as protection.

2. *Inapplicability of § 3B1.5.*—If subsection (b)(1) applies, do not apply the adjustment in § 3B1.5 (Use of Body Armor in Drug Trafficking Crimes and Crimes of Violence).

3. *Grouping of Multiple Counts.*—If subsection (b)(1) applies (because the defendant used the body armor in connection with another felony offense) and the instant offense of conviction includes a count of conviction for that other felony offense, the counts of conviction for the 18 U.S.C. 931 offense and that other felony offense shall be grouped pursuant to subsection (c) of § 3D1.2 (Groups of Closely Related Counts).''.

Section 2M4.1 is amended by striking subsection (b) as follows:

''(b) Specific Offense Characteristic

(1) If the offense occurred at a time when persons were being inducted for compulsory military service, increase by 6 levels.''.

Section 2P1.1(b) is amended by striking paragraph (4) as follows:

''(4) If the defendant was a law enforcement or correctional officer or employee, or an employee of the Department of Justice, at the time of the offense, increase by 2 levels.''.

The Commentary to 2P1.1 captioned ''Application Notes'' is amended—

by striking Note 3 as follows:

''3. If the adjustment in subsection (b)(4) applies, no adjustment is to be made under § 3B1.3 (Abuse of Position of Trust or Use of Special Skill).'';

and by redesignating Notes 4 and 5 as Notes 3 and 4, respectively.

Section 2Q1.2(b) is amended—

by striking paragraph (5) as follows:

''(5) If a recordkeeping offense reflected an effort to conceal a substantive environmental offense, use the offense level for the substantive offense.'';

and by redesignating paragraphs (6) and (7) as paragraphs (5) and (6), respectively.

The Commentary to § 2Q1.2 captioned ''Application Notes'' is amended—

by striking Note 1 as follows:

''1. 'Recordkeeping offense' includes both recordkeeping and reporting offenses. The term is to be broadly construed as including failure to report discharges, releases, or emissions where required; the giving of false information; failure to file other required reports or provide necessary information; and failure to prepare, maintain, or provide records as prescribed.'';

and by redesignating Notes 2 through 7 as Notes 1 through 6, respectively.

The Commentary to § 2Q1.2 captioned ''Background'' is amended by striking ''§ 2Q1.2(b)(6)'' and inserting ''§ 2Q1.2(b)(5)''.

Section 2Q1.3(b) is amended—

by striking paragraph (2) as follows:

''(2) If the offense resulted in a substantial likelihood of death or serious bodily injury, increase by 11 levels.'';

by redesignating paragraphs (3) and (4) as paragraphs (2) and (3), respectively;

and by striking paragraph (5) as follows:

''(5) If a recordkeeping offense reflected an effort to conceal a substantive environmental offense, use the offense level for the substantive offense.''.

The Commentary to § 2Q1.3 captioned ''Application Notes'' is amended—

by striking Note 1 as follows:

''1. 'Recordkeeping offense' includes both recordkeeping and reporting offenses. The term is to be broadly construed as including failure to report discharges, releases, or emissions where required; the giving of false information; failure to file other required reports or provide necessary information; and failure to prepare, maintain, or provide records as prescribed.'';

by renumbering Notes 2 and 3 as Notes 1 and 2, respectively;

by striking Note 4 as follows:

''4. Subsection (b)(2) applies to offenses where the public health is seriously endangered.'';

by redesignating Notes 5 and 6 as Notes 3 and 4, respectively;

in Note 3 (as so redesignated) by striking ''Subsection (b)(3)'' and inserting ''Subsection (b)(2)'';

and in Note 4 (as so redesignated) by striking ''Subsection (b)(4)'' and inserting ''Subsection (b)(3)''.

Section 2Q1.4 is amended—

by striking subsection (b) as follows:

(b) Specific Offense Characteristics

(1) If (A) any victim sustained permanent or life-threatening bodily injury, increase by 4 levels; (B) any victim sustained serious bodily injury, increase by 2 levels; or (C) the degree of injury is between that specified in subdivisions (A) and (B), increase by 3 levels.

(2) If the offense resulted in (A) a substantial disruption of public, governmental, or business functions or services; or (B) a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense, increase by 4 levels.

(3) If the offense resulted in an ongoing, continuous, or repetitive release of a contaminant into a public water system or lasted for a substantial period of time, increase by 2 levels.'';

and by redesignating subsections (c) and (d) as subsections (b) and (c), respectively.

The Commentary to § 2Q1.4 captioned ''Application Notes'' is amended in Note 2 by striking ''Subsection (d)'' and inserting ''Subsection (c)''; and by striking ''subsection (c)'' and inserting ''subsection (b)''.

Section 2T1.9 is amended in subsection (b)—

in the heading by striking ''Characteristics'' and inserting ''Characteristic'';

by striking the following:

''If more than one applies, use the greater:

(1) If the offense involved the planned or threatened use of violence to impede, impair, obstruct, or defeat the ascertainment, computation, assessment, or collection of revenue, increase by 4 levels.'';

and by redesignating paragraph (2) as paragraph (1).

The Commentary to § 2T1.9 captioned ''Application Notes'' is amended—

in Note 3 by striking ''Specific offense characteristics from § 2T1.9(b) are to be applied'' and inserting ''Subsection (b)(1) is to be applied'';

and in Note 4 by striking ''Subsection (b)(2)'' and inserting ''Subsection (b)(1)''.

The Commentary to § 2T1.9 captioned ''Background'' is amended by striking ''Additional specific offense characteristics are included'' and inserting ''A specific offense characteristic is included''.

The Commentary to § 3B1.4 captioned ''Application Notes'' is amended in Note 2 by striking ''§ 2D1.1(b)(16)(B)'' and inserting ''§ 2D1.1(b)(15)(B)''.

The Commentary to § 3B1.5 captioned ''Application Notes'' is amended by striking Note 3 as follows:

''3. *Interaction with § 2K2.6 and Other Counts of Conviction.*—If the defendant is convicted only of 18 U.S.C. 931 and receives an enhancement under subsection (b)(1) of § 2K2.6 (Possessing, Purchasing, or Owning Body Armor by Violent Felons), do not apply an adjustment under this guideline. However, if, in addition to the count of conviction under 18 U.S.C. 931, the defendant (A) is convicted of an offense that is a drug trafficking crime or a crime of violence; and (B) used the body armor with respect to that offense, an adjustment under this guideline shall apply with respect to that offense.''.

The Commentary to § 3C1.1 captioned ''Application Notes'' is amended in Note 7 by striking ''§ 2D1.1(b)(16)(D)'' and inserting ''§ 2D1.1(b)(15)(D)''.

Issue for Comment

1. The proposed amendment would delete 26 specific offense characteristics in Chapter Two that courts did not apply at all in the last five fiscal years. The Commission seeks comment on whether this approach is appropriate for these infrequently used specific offense characteristics. What would be lost, if anything, by deleting these specific offense characteristics? Should the Commission take a different approach to address these specific offense characteristics?

## 7. Sophisticated Means

*Synopsis of Proposed Amendment:* In August 2025, the Commission identified as one of its policy priorities for the amendment cycle ending May 1, 2026, ''[e]xamination of offenses involving sophisticated means and possible consideration of an additional Chapter Three adjustment that would account for the consideration of factors such as sophistication in the preparation for, commission of, or evasion of detection for an offense.'' U.S. Sent'g Comm'n,

''Notice of Final Priorities,'' 90 FR 39263, 39264 (Aug. 14, 2025).

The *Guidelines Manual* includes five guidelines that contain specific offense characteristics that expressly address ''sophisticated'' conduct. Three tax guidelines provide the following ''sophisticated means'' enhancement: ''If the offense involved sophisticated means, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.'' USSG §§ 2T1.1(b)(2), 2T1.4(b)(2), 2T3.1(b)(1). Section 2B1.1 (Theft, Property Destruction, and Fraud) provides a similar 2-level ''sophisticated means'' enhancement with an offense-level floor of 12 if ''the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means.'' USSG § 2B1.1(b)(10)(C). Finally, § 2S1.1 (Laundering of Monetary Instruments; Engaging in Monetary Transactions in Property Derived from Unlawful Activity) provides a 2-level ''sophisticated laundering'' enhancement if the defendant was convicted under 18 U.S.C. 1956 and ''the offense involved sophisticated laundering.'' USSG § 2S1.1(b)(3).

For purposes of these guidelines, ''sophisticated means'' is defined as ''especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. [] Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts [] ordinarily indicates sophisticated means.'' USSG §§ 2B1.1, comment. (n.9(B)); 2T1.1, comment. (n.5); 2T1.4, comment. (n.3); 2T3.1, comment. (n.2). ''Sophisticated laundering'' is defined as ''complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. 1956 offense.'' USSG § 2S1.1, comment. (n.5(A)). The Commentary to § 2S1.1 also provides that

Sophisticated laundering typically involves the use of—

(i) fictitious entities;

(ii) shell corporations;

(iii) two or more levels *(i.e.,* layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or

(iv) offshore financial accounts.

*Id.*

The Commission has received public comment expressing concern that the current ''sophisticated means'' specific offense characteristics are applied based on commonplace technologies. In addition, the Department of Justice asked the Commission to consider consolidating those specific offense characteristics into a broader Chapter Three adjustment.

The proposed amendment sets forth two options to address these concerns.

*Option 1* would create a new Chapter Three adjustment at § 3C1.5. The new adjustment would provide a 2-level enhancement, with a possible offense-level floor of 12, if ''the offense involved sophisticated means [and the defendant intentionally engaged in or caused the conduct involving sophisticated means].'' It would also include a definition of ''sophisticated means'' that references the use of advanced or emerging technologies. The proposed amendment would make conforming changes to §§ 2B1.1, 2S1.1, 2T1.1, 2T1.4, and 2T3.1 to delete the specific offense characteristics addressing sophisticated conduct.

*Option 2* would amend §§ 2B1.1, 2S1.1, 2T1.1, 2T1.4, and 2T3.1 to provide updated, uniform guidance relating to sophisticated conduct.

Issues for comment are also provided.

*Proposed Amendment:*

*Option 1 (New Chapter Three Adjustment for Sophisticated Means)*

Chapter Three, Part C is amended by inserting at the end the following new guideline and accompanying commentary:

''§ 3C1.5. *Sophisticated Means*

(a) If the offense involved sophisticated means [and the defendant intentionally engaged in or caused the conduct involving sophisticated means], increase by [2] levels. [If the resulting offense level is less than level [12], increase to level [12].]

(b) For purposes of this guideline, 'sophisticated means' means committing or concealing an offense with a greater level of complexity than typical for an offense of that nature. Such complexity may be achieved through various methods, including by using advanced or emerging technologies [in ways not routinely employed by everyday users][in a more specialized, elaborate, or unusual way than an ordinary user would]. Sophisticated means are often used to increase the scale of the offense or to make especially difficult the detection of the offense [or the detection of the defendant's participation in the offense].

Commentary

*Application Notes:*

1. *Interaction with Other Chapter Three Adjustments.*—If the conduct that forms the basis for an adjustment under § 3B1.3 (Abuse of Position of Trust or Use of Special Skill) is the only conduct that forms the basis for an adjustment under this guideline, do not apply an adjustment under this guideline.

Similarly, if the conduct that forms the basis for an adjustment under § 3C1.1 (Obstructing or Impeding the Administration of Justice) is the only conduct that forms the basis for an adjustment under this guideline, do not apply this guideline.''.

Section 2B1.1(b)(10) is amended by striking ''(B) a substantial part of a fraudulent scheme was committed from outside the United States; or (C) the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means'' and inserting ''or (B) a substantial part of a fraudulent scheme was committed from outside the United States''.

The Commentary to § 2B1.1 captioned ''Application Notes'' is amended in Note 9—

by striking subparagraphs (B) and (C) as follows:

''(B) *Sophisticated Means Enhancement under Subsection (b)(10)(C).*—For purposes of subsection (b)(10)(C), 'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

(C) *Non-Applicability of Chapter Three Adjustment.*—If the conduct that forms the basis for an enhancement under subsection (b)(10) is the only conduct that forms the basis for an adjustment under § 3C1.1, do not apply that adjustment under § 3C1.1.'',

and inserting the following new paragraph (B):

''(B) *Non-Applicability of Chapter Three Adjustments.*—If the conduct that forms the basis for an enhancement under subsection (b)(10) is the only conduct that forms the basis for an adjustment under § 3C1.1 (Obstructing or Impeding the Administration of Justice), do not apply that adjustment under § 3C1.1.

Similarly, if the conduct that forms the basis for an enhancement under subsection (b)(10) is the only conduct that forms the basis for an adjustment under § 3C1.5 (Sophisticated Means), do not apply that adjustment under § 3C1.5.''.

Section 2S1.1(b) is amended by striking paragraph (3) as follows:

''(3) If (A) subsection (b)(2)(B) applies; and (B) the offense involved sophisticated laundering, increase by 2 levels.''.

The Commentary to § 2S1.1 captioned ''Application Notes'' is amended—

by striking Note 5 as follows:

''5. (A) *Sophisticated Laundering under Subsection (b)(3).*—For purposes of subsection (b)(3), 'sophisticated laundering' means complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. 1956 offense.

Sophisticated laundering typically involves the use of—

(i) fictitious entities;

(ii) shell corporations;

(iii) two or more levels (*i.e.,* layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or

(iv) offshore financial accounts.

(B) *Non-Applicability of Enhancement.*—If subsection (b)(3) applies, and the conduct that forms the basis for an enhancement under the guideline applicable to the underlying offense is the only conduct that forms the basis for application of subsection (b)(3) of this guideline, do not apply subsection (b)(3) of this guideline.'';

and by redesignating Note 6 as Note 5.

Section 2T1.1(b) is amended—

in the heading by striking ''Characteristics'' and inserting ''Characteristic'';

and by striking paragraph (2) as follows:

''(2) If the offense involved sophisticated means, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.''.

The Commentary to § 2T1.1 captioned ''Application Notes'' is amended—

by striking Note 5 as follows:

5. *Application of Subsection (b)(2) (Sophisticated Means).*—For purposes of subsection (b)(2), 'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.'';

and by redesignating Notes 6 and 7 as Notes 5 and 6, respectively.

Section 2T1.4(b) is amended—

in the heading by striking ''Characteristics'' and inserting ''Characteristic'';

and by striking paragraph (2) as follows:

''(2) If the offense involved sophisticated means, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.''.

The Commentary to § 2T1.4 captioned ''Application Notes'' is amended by striking Note 3 as follows:

''3. *Sophisticated Means.*—For purposes of subsection (b)(2), 'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.''.

Section 2T3.1 is amended by striking subsection (b) as follows:

''(b) Specific Offense Characteristic

(1) If the offense involved sophisticated means, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.''.

The Commentary to § 2T3.1 captioned ''Application Notes'' is amended—

in the caption by striking ''Notes'' and inserting ''Note'';

and by striking Note 2 as follows:

''2. *Sophisticated Means.*—For purposes of subsection (b)(1), 'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.''.

*Option 2 (Updated Guidance on Sophisticated Conduct in Chapter Two Guidelines)*

Section 2B1.1(b)(10) is amended by inserting after ''increase to level 12.'' the following: ''For purposes of subsection (b)(10)(C), 'sophisticated means' means committing or concealing an offense with a greater level of complexity than typical for an offense of that nature. Such complexity may be achieved through various methods, including by using advanced or emerging technologies [in ways not routinely employed by everyday users][in a more specialized, elaborate, or unusual way than an ordinary user would]. Sophisticated means are often used to increase the scale of the offense or to make especially difficult the detection of the offense [or the detection of the defendant's participation in the offense].''.

The Commentary to § 2B1.1 captioned ''Application Notes'' is amended in Note 9—

by striking the following:

''(B) *Sophisticated Means Enhancement under Subsection (b)(10)(C).*—For purposes of subsection (b)(10)(C), 'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

(C) *Non-Applicability of Chapter Three Adjustment.*—If the conduct that forms the basis for an enhancement under subsection (b)(10) is the only conduct that forms the basis for an adjustment under § 3C1.1, do not apply that adjustment under § 3C1.1.'',

and inserting the following:

''(B) [*Sophisticated Means Enhancement under Subsection (b)(10)(C).*—For purposes of subsection (b)(10)(C), an example of conduct ordinarily indicating sophisticated means includes, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

(C)] *Non-Applicability of Chapter Three Adjustment.*—If the conduct that forms the basis for an enhancement under subsection (b)(10) is the only conduct that forms the basis for an adjustment under § 3C1.1 (Obstructing or Impeding the Administration of Justice), do not apply that adjustment under § 3C1.1.''.

Section 2S1.1(b)(3) is amended by inserting after ''increase by 2 levels.'' the following: ''For purposes of subsection (b)(3), 'sophisticated laundering' means committing or concealing an offense under 18 U.S.C. 1956 with a greater level of complexity than typical for an offense of that nature. Such complexity may be achieved through various methods, including by using advanced or emerging technologies [in ways not routinely employed by everyday users][in a more specialized, elaborate, or unusual way than an ordinary user would]. Sophisticated laundering is often used to increase the scale of the offense or to make especially difficult the detection of the offense [or the

detection of the defendant's participation in the offense].''.

The Commentary to § 2S1.1 captioned ''Application Notes'' is amended in Note 5 by striking the following:

''(A) *Sophisticated Laundering under Subsection (b)(3).*—For purposes of subsection (b)(3), 'sophisticated laundering' means complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. 1956 offense.

Sophisticated laundering typically involves the use of—

(i) fictitious entities;

(ii) shell corporations;

(iii) two or more levels (*i.e.,* layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or

(iv) offshore financial accounts.

(B) *Non-Applicability of Enhancement.*—If subsection (b)(3) applies, and the conduct that forms the basis for an enhancement under the guideline applicable to the underlying offense is the only conduct that forms the basis for application of subsection (b)(3) of this guideline, do not apply subsection (b)(3) of this guideline.'',

and inserting the following:

''[(A) *Sophisticated Laundering under Subsection (b)(3).*—For purposes of subsection (b)(3), sophisticated laundering typically involves the use of—

(i) fictitious entities;

(ii) shell corporations;

(iii) two or more levels (*i.e.,* layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or

(iv) offshore financial accounts.

(B)] *Non-Applicability of Subsection (b)(3).*—If subsection (b)(3) applies, and the conduct that forms the basis for an enhancement under the guideline applicable to the underlying offense is the only conduct that forms the basis for application of subsection (b)(3) of this guideline, do not apply subsection (b)(3) of this guideline.''.

Section 2T1.1(b)(2) is amended by inserting after ''increase to level 12.'' the following: ''For purposes of subsection (b)(2), 'sophisticated means' means committing or concealing an offense with a greater level of complexity than typical for an offense of that nature. Such complexity may be achieved through various methods, including by using advanced or emerging technologies [in ways not routinely employed by everyday users][in a more specialized, elaborate, or unusual way than an ordinary user would]. Sophisticated means are often used to increase the scale of the offense or to make especially difficult the detection of the offense [or the detection of the defendant's participation in the offense].''.

The Commentary to § 2T1.1 captioned ''Application Notes'' is amended—

by striking Note 5 as follows:

5. *Application of Subsection (b)(2) (Sophisticated Means).*—For purposes of subsection (b)(2), 'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.''[;

and inserting the following new Note 5:

''5. *Application of Subsection (b)(2) (Sophisticated Means).*—For purposes of subsection (b)(2), conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.''];

and by redesignating Notes 6 and 7 as Notes 5 and 6, respectively.

Section 2T1.4(b)(2) is amended by inserting after ''increase to level 12.'' the following: ''For purposes of subsection (b)(2), 'sophisticated means' means committing or concealing an offense with a greater level of complexity than typical for an offense of that nature. Such complexity may be achieved through various methods, including by using advanced or emerging technologies [in ways not routinely employed by everyday users][in a more specialized, elaborate, or unusual way than an ordinary user would]. Sophisticated means are often used to increase the scale of the offense or to make especially difficult the detection of the offense [or the detection of the defendant's participation in the offense].''.

The Commentary to § 2T1.4 captioned ''Application Notes'' is amended by striking Note 3 as follows:

''3. *Sophisticated Means.*—For purposes of subsection (b)(2), 'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.''[;

and inserting the following new Note 3:

''3. *Sophisticated Means.*—For purposes of subsection (b)(2), conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.''].

Section 2T3.1(b)(1) is amended by inserting after ''increase to level 12.'' the following: ''For purposes of subsection (b)(1), 'sophisticated means' means committing or concealing an offense with a greater level of complexity than typical for an offense of that nature. Such complexity may be achieved through various methods, including by using advanced or emerging technologies [in ways not routinely employed by everyday users][in a more specialized, elaborate, or unusual way than an ordinary user would]. Sophisticated means are often used to increase the scale of the offense or to make especially difficult the detection of the offense [or the detection of the defendant's participation in the offense].''.

The Commentary to § 2T3.1 captioned ''Application Notes'' is amended—

in the caption by striking ''Notes'' and inserting ''Note'';

by striking Note 2 as follows:

''2. *Sophisticated Means.*—For purposes of subsection (b)(1), 'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.''[;

and by inserting the following new Note 2:

''2. *Sophisticated Means.*—For purposes of subsection (b)(1), conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.''].

Issues for Comment

1. Option 1 of the proposed amendment would add a new Chapter Three adjustment for sophisticated means that would apply across all offense types covered by Chapter Two of the guidelines. The Commission seeks comment on whether the base offense levels in Chapter Two currently cover ''typical'' offense conduct or whether any base offense levels account for ''sophisticated'' offense conduct. If the Commission were to promulgate Option 1 of the proposed amendment, are there any Chapter Two offense conduct guidelines or types of offenses that should be excluded from application of

the adjustment? If so, which guidelines or types of offenses?

2. Option 1 of the proposed amendment would delete the five specific offense characteristics that currently address ''sophisticated'' conduct in certain Chapter Two guidelines. Other specific offense characteristics address different aspects of offense conduct that also could be considered markers of sophistication, such as:

- the amount of planning involved (*see* USSG §§ 2A2.2(b)(1); 2B2.1(b)(1); 2J1.2(b)(3)(C));
- the use of technology, namely the use of a computer or an interactive computer service (*see* USSG §§ 2A3.1(b)(6)(B); 2A3.2(b)(3); 2A3.3(b)(2); 2A3.4(b)(5); 2D1.1(b)(7); 2D1.11(b)(4); 2D1.12(b)(3); 2G1.3(b)(3); 2G2.1(b)(6)(B); 2G2.2(b)(6); 2G2.6(b)(4); 2G3.1(b)(3); 2H3.1(b)(2)(B)); and
- ongoing, recurring criminal conduct with a large scope (*see* USSG §§ 2B1.1(b)(15); 2B6.1(b)(3)).

Are there any other specific offense characteristics or Chapter Three adjustments that address sophisticated ways in which an offense may be committed or concealed? If the Commission were to promulgate Option 1 of the proposed amendment, how should the new adjustment interact with these specific offense characteristics and adjustments? Should these specific offense characteristics be deleted from Chapter Two and the conduct covered by these provisions be integrated into the proposed Chapter Three adjustment? Alternatively, should the proposed adjustment not apply if any of these specific offense characteristics also applies?

3. Both Option 1 and Option 2 of the proposed amendment would define ''sophisticated'' conduct as ''committing or concealing an offense with a greater level of complexity than typical for an offense of that nature.'' The definition would also include a provision stating that the complexity required by the ''sophisticated'' conduct definition ''may be achieved through various methods, including by using advanced or emerging technologies [in ways not routinely employed by everyday users][in a more specialized, elaborate, or unusual way than an ordinary user would].'' The Commission seeks comment on whether the proposed amended definition of ''sophisticated'' conduct is the appropriate definition. Is it an improvement over the current definitions? Should the Commission provide guidance regarding the level of complexity that is typical for an offense of that nature? If so, what type of guidance should the Commission provide? Further, should the Commission provide additional guidance on what should be considered ''advanced or emerging technologies'' or on how such technologies must be used for purposes of applying the proposed definition? If so, what guidance should the Commission provide?

Additionally, Option 2 of the proposed amendment would bracket the possibility of maintaining the examples of ''sophisticated'' conduct provided in the Commentary to § 2B1.1, § 2S1.1, § 2T1.1, § 2T1.4, and § 2T3.1. If the Commission amends the definition of ''sophisticated'' conduct, should the Commission maintain these examples? If not, should the Commission add additional factors or other provisions to the definition of ''sophisticated'' conduct?

**8. Miscellaneous**

*Synopsis of Proposed Amendment:* This proposed amendment responds to recently enacted legislation and a miscellaneous issue. *See* U.S. Sent'g Comm'n, ''Notice of Final Priorities,'' 90 FR 39263 (Aug. 14, 2025) (identifying as a priority ''[i]mplementation of any legislation warranting Commission action'' and ''[c]onsideration of other miscellaneous issues coming to the Commission's attention'').

The proposed amendment contains five parts (Parts A through E). The Commission is considering whether to promulgate any or all these parts, as they are not mutually exclusive.

*Part A* responds to the Tools to Address Known Exploitation by Immobilizing Technological Deepfakes on websites and Networks Act (''TAKE IT DOWN Act''), Public Law 119–12 (2025), by amending Appendix A (Statutory Index) and the Commentary to § 2A6.1 (Threatening or Harassing Communications; Hoaxes; False Liens). An issue for comment is provided.

*Part B* responds to the Fentanyl Eradication and Narcotics Deterrence Off Fentanyl Act (''FEND Off Fentanyl Act''), Public Law 118–50 (2024), by amending Appendix A and § 2S1.3 (Structuring Transactions to Evade Reporting Requirements; Failure to Report Cash or Monetary Transactions; Failure to File Currency and Monetary Instrument Report; Knowingly Filing False Reports; Bulk Cash Smuggling; Establishing or Maintaining Prohibited Accounts). An issue for comment is provided.

*Part C* responds to the Protecting Americans' Data from Foreign Adversaries Act, Public Law 118–50 (2024), by amending Appendix A and § 2H3.1 (Interception of Communications; Eavesdropping; Disclosure of Certain Private or Protected Information). An issue for comment is provided.

*Part D* responds to the Foreign Extortion Prevention Technical Corrections Act, Public Law 118–78 (2024), by amending Appendix A and § 2C1.1 (Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right; Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions). An issue for comment is provided.

*Part E* would amend the Appendix A reference for 18 U.S.C. 1348, dealing with securities and commodities fraud, by referencing the statute to § 2B1.4 (Insider Trading), while also maintaining the current reference to § 2B1.1 (Theft, Property Destruction, and Fraud).

*(A) TAKE IT DOWN Act*

*Synopsis of Proposed Amendment:* Part A of the proposed amendment responds to the Tools to Address Known Exploitation by Immobilizing Technological Deepfakes on websites and Networks Act (''TAKE IT DOWN Act''), Public Law 119–12 (2025).

The act added new offenses to section 223 (Obscene or harassing telephone calls) of title 47, United States Code. The new offenses relate to the disclosure of nonconsensual visual depictions and digital forgeries involving both adults and minors, at subsections 223(h)(2) and (h)(3). Those subsections now proscribe:

- Using an interactive computer service to knowingly publish an intimate visual depiction of (1) an identifiable adult if certain conditions are met, or (2) an identifiable minor under 18 years old with intent to abuse humiliate, harass, or degrade the minor or with intent to arouse or gratify the sexual desire of any person.
- Using an interactive computer service to knowingly publish a digital forgery of (1) an adult if certain conditions are met, or (2) a minor under 18 years old with intent to abuse humiliate, harass, or degrade the minor or with intent to arouse or gratify the sexual desire of any person.

Sections 223(h)(2)(A) and (h)(3)(A), involving depictions and digital forgeries of an adult, have a statutory maximum of two years. Sections 223(h)(2)(B) and (h)(3)(B), involving depictions or digital forgeries of a minor, have a statutory maximum of three years.

The act also included two new offenses at subsection 223(h)(6) related to threats to use an interactive computer

service to publish either intimate visual depictions or digital forgeries involving adults and minors. The statutory maximum is as follows: two years for a threat involving an intimate visual depiction of an adult (47 U.S.C. 223(h)(6)(A)); three years for a threat involving an intimate visual depiction of a minor (47 U.S.C. 223(h)(6)(A)); 18 months for a threat involving a digital forgery of an adult (47 U.S.C. 223(h)(6)(B)(i)); and 30 months for a threat involving a digital forgery of a minor (47 U.S.C. 223(h)(6)(B)(ii)).

Currently, offenses involving harassment, abuse, and threatening conduct under 47 U.S.C. 223 are referenced in Appendix A (Statutory Index) to § 2A6.1 (Threatening or Harassing Communications; Hoaxes; False Liens). Given the similar nature of the conduct, Part A of the proposed amendment would amend Appendix A to reference the new offenses under 47 U.S.C. 223 to § 2A6.1. It would also amend the Commentary to § 2A6.1 to reflect the new references.

An issue for comment is also provided.

*Proposed Amendment:*

Appendix A (Statutory Index) is amended by inserting before the line referenced to 47 U.S.C. 409(m) the following new line references:

''47 U.S.C. 223(h)(2)(A) 2A6.1
47 U.S.C. 223(h)(2)(B) 2A6.1
47 U.S.C. 223(h)(3)(A) 2A6.1
47 U.S.C. 223(h)(3)(B) 2A6.1
47 U.S.C. 223(h)(6)(A) 2A6.1
47 U.S.C. 223(h)(6)(B)(i) 2A6.1
47 U.S.C. 223(h)(6)(B)(ii) 2A6.1''.

The Commentary to § 2A6.1 captioned ''Statutory Provisions'' is amended by striking ''47 U.S.C. 223(a)(1)(C)–(E)'' and inserting ''47 U.S.C. 223(a)(1)(C)–(E), (h)(2)(A), (h)(2)(B), (h)(3)(A), (h)(3)(B), (h)(6)(A), (h)(6)(B)(i)–(ii)''.

Issue for Comment

1. The Commission seeks comment on whether the proposed references are appropriate and whether any additional changes to the guidelines are required to account for the new criminal offenses created by the Tools to Address Known Exploitation by Immobilizing Technological Deepfakes on websites and Networks Act (''TAKE IT DOWN Act''), Public Law 119–12 (2025). Would it be more appropriate to reference some or all of the new offenses to a different guideline, such as § 2B3.3 (Blackmail and Similar Forms of Extortion) or § 2G3.1 (Importing, Mailing, or Transporting Obscene Matter; Transferring Obscene Matter to a Minor; Misleading Domain Names)?

*(B) Fentanyl Eradication and Narcotics Deterrence Off Fentanyl Act*

*Synopsis of Proposed Amendment:* Part B responds to the Fentanyl Eradication and Narcotics Deterrence Off Fentanyl Act (''FEND Off Fentanyl Act''), Public Law 118–50 (2024). The Act creates two new offenses, 21 U.S.C. 2313a and 2354, to apply economic and other financial sanctions to the international trafficking of fentanyl, its precursors, and other related opioids.

Title I of the Fend Off Fentanyl Act includes sections 2353 and 2354 to a new chapter 28A (Fentanyl Eradication and Narcotics Deterrence off Fentanyl) to title 21 (Food and Drugs) of the United States Code. Section 2353 (Imposition of sanctions with respect to fentanyl trafficking by transnational criminal organizations) requires the President to impose sanctions on foreigners knowingly involved in: (1) significant trafficking of fentanyl, its precursors, or other related opioids, including by transnational criminal organizations; or (2) significant activities of a transnational criminal organization that relate to trafficking such substances. The provided sanctions are those authorized by the International Emergency Economic Powers Act (''IEEPA'').

Section 2354 (Penalties; waivers; exceptions) provides that any person who violates or causes a violation of the section, and attempts or conspires to violate, any regulation, license, or order issued to carry out the section is subject to the civil and criminal penalties set forth in 50 U.S.C. 1705 of the IEEPA ''to the same extent as a person who commits an unlawful act described in subsection (a) of that section.'' Section 1705 prohibits willfully violating, attempting or conspiring to violate, or causing a violation of any license, order, regulation, or prohibition issued under the IEEPA. The statutory maximum for a criminal violation of the IEEPA at section 1705(c) is 20 years.

Title II of the FEND Off Fentanyl Act added a new provision to chapter 28 (Sanctions with Respect to Foreign Trafficking of Illicit Synthetic Opioids) of title 21 of the United States Code. Section 2313a (Designation of transactions of sanctioned persons as of primary money laundering concern) provides the Secretary of the Treasury authority to issue orders or regulations for certain domestic financial institutions and agencies. Specifically, if the Secretary determines financial institutions operating outside the United States, or certain classes of transactions or types of accounts within a jurisdiction outside the United States, is ''of primary money laundering concern'' in connection with trafficking of illicit opioids, he is authorized, by order, regulation, or otherwise, to: (1) require domestic financial institutions and agencies to take special measures as provided in the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, and found at 31 U.S.C. 5318A; or (2) prohibit or impose conditions upon, certain transmittal of funds by the financial institution or agency. A finding that a jurisdiction, financial institution, account, or transaction is ''of primary money laundering concern'' is as determined under section 5318A, including whether: (1) organized criminal groups, international terrorists, or entities involved in the proliferation of weapons of mass destruction or missiles have transacted business in a certain jurisdiction; (2) a jurisdiction offers bank secrecy or special regulatory advantages to nonresidents; and (3) a jurisdiction is an offshore banking or secrecy haven.

The statutory maximum for violating any order, regulation, special measure, or other requirement imposed under section 2313a(d) is five years for a simple violation, as provided in 31 U.S.C. 5322 (Criminal Penalties). The statutory maximum is ten years, if the offense was committed ''while violating another law of the United States or as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period.''

Part B of the proposed amendment would amend Appendix A (Statutory Index) to reference 21 U.S.C. 2313a and 2354 to § 2S1.3 (Structuring Transactions to Evade Reporting Requirements; Failure to Report Cash or Monetary Transactions; Failure to File Currency and Monetary Instrument Report; Knowingly Filing False Reports; Bulk Cash Smuggling; Establishing or Maintaining Prohibited Accounts) because the offenses concern monetary sanctions related to the illicit transnational trafficking of fentanyl, its precursors, and other related opioids.

Part B of the proposed amendment would also amend the commentary to § 2S1.3 to reflect the reference.

An issue for comment is also provided.

*Proposed Amendment:*

Appendix A (Statutory Index) is amended by inserting before the line referenced to 22 U.S.C. 1980(g) the following new line references:

''21 U.S.C. 2313a § 2S1.3
21 U.S.C. 2354 § 2S1.3''.

The Commentary to § 2S1.3 captioned ''Statutory Provisions'' is amended by striking ''18 U.S.C. 1960 (but only with

respect to unlicensed money transmitting businesses as defined in 18 U.S.C. 1960(b)(1)(A) and (B));'' and inserting ''18 U.S.C. 1960 (but only with respect to unlicensed money transmitting businesses as defined in 18 U.S.C. 1960(b)(1)(A) and (B)); 21 U.S.C. 2313a, 2354;''.

Issue for Comment

1. The Commission seeks comment on whether the proposed references are appropriate and whether any additional changes to the guidelines are required to account for the new criminal offenses created by the Fentanyl Eradication and Narcotics Deterrence Off Fentanyl Act (''FEND Off Fentanyl Act''), Public Law 118–50 (2024).

*(C) Protecting Americans' Data From Foreign Adversaries Act*

*Synopsis of Proposed Amendment*: Part C of the proposed amendment responds to the Protecting Americans' Data from Foreign Adversaries Act, Public Law 118–50 (2024), by amending Appendix A and § 2H3.1 (Interception of Communications; Eavesdropping; Disclosure of Certain Private or Protected Information). The act codified a new offense at 15 U.S.C. 9901 prohibiting the transfer of personally identifiable sensitive data of United States individuals to foreign adversaries.

Section 9901 (Prohibition on transfer of personally identifiable sensitive data of United States individuals to foreign adversaries) prohibits data brokers from selling, licensing, trading, disclosing, or providing access to personally identifiable sensitive data of an individual of the United States to any foreign adversary country or any entity controlled by a foreign adversary.

Section 9901(b)(2)(B) provides that the penalties for a violation are the same as provided in the Federal Trade Commission Act (15 U.S.C. 41–58). Section 50 (Offenses and penalties) of title 15 provides, in turn, a statutory maximum of one year, for anyone who refuses to attend, testify or answer any lawful inquiry or produce documentary evidence ''in obedience to an order of a district court . . . directing compliance with the subpoena or lawful requirement'' of the Federal Trade Commission, and for officers or employees of the Commission who make any information obtained by the Commission public without authority. Section 50 also provides a statutory maximum of three years, for willfully making any false entry or statement of fact in certain reports, accounts or records of any person, partnership, or corporation subject to the Act, or removing from the jurisdiction or mutilating, altering, or otherwise falsifying any documentary evidence.

Part C of the proposed amendment would amend Appendix A (Statutory Index) to reference 15 U.S.C. 9901 to § 2H3.1 (Interception of Communications; Eavesdropping; Disclosure of Certain Private or Protected Information) because the prohibited conduct appears most similar to the offenses currently referenced to that guideline.

Part C of the proposed amendment would also amend the commentary to § 2H3.1 to reflect the reference.

An issue for comment is also provided.

*Proposed Amendment:*

Appendix A (Statutory Index) is amended by inserting before the line referenced to 16 U.S.C. 114 the following new line reference:

''15 U.S.C. 9901 2H3.1''.

The Commentary to § 2H3.1 captioned ''Statutory Provisions'' is amended by striking ''8 U.S.C. 1375a(d)(5)(B)(i), (ii);'' and inserting ''8 U.S.C. 1375a(d)(5)(B)(i), (ii); 15 U.S.C. 9901;''.

Issue for Comment

1. The Commission seeks comment on whether the proposed references are appropriate and whether any additional changes to the guidelines are required to account for the new criminal offenses created by the Protecting Americans' Data from Foreign Adversaries Act, Public Law 118–50 (2024).

*(D) Foreign Extortion Prevention Technical Corrections Act*

*Synopsis of Proposed Amendment:* Part D of the proposed amendment responds to the Foreign Extortion Prevention Technical Corrections Act, Public Law 118–78 (2024).

The Foreign Extortion Prevention Technical Corrections Act repealed and replaced the Foreign Extortion Prevention Act, which in 2023 established criminal liability for foreign officials who solicit or accept bribes from United States entities or while within United States territory. By criminalizing the ''demand side'' of bribery by foreign officials, the Act was a new counterpart to the Foreign Corrupt Practices Act, which criminalizes the ''supply side'' by prohibiting the paying of bribes to foreign officials to influence an act or decision of such official in his official capacity, at 15 U.S.C. 78dd–2 and 78dd–3.

The Foreign Extortion Prevention Act had added subsection 201(f) (Bribery of public officials and witnesses) to title 18 of the United States Code. Section 201(f) prohibited foreign officials (or those selected to be foreign officials) from corruptly demanding, receiving, or accepting anything of value from any ''person'' while located in the United States, or from a ''domestic concern'' (as those terms are defined in sections 78dd–2 and 78dd–3 of the Foreign Corrupt Practices Act), or from an issuer, in return for being influenced or induced, or conferring any improper advantage in connection with obtaining or retaining business for or with any person. The Foreign Extortion Prevention Technical Corrections Act replaced subsection 201(f) with a substantively similar prohibition against bribery by foreign officials, at a new section 1352 (Demands by foreign officials for bribes) of title 18 of the United States Code. Both the repealed subsection 201(f) and section 1352 have a statutory maximum of 15 years.

Part D of the proposed amendment would amend Appendix A (Statutory Index) to reference 18 U.S.C. 1352 to § 2C1.1 (Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right; Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions), because the complementary bribery offenses under the Foreign Corrupt Practices Act at 15 U.S.C. 78dd–2 and 78dd–3 are referenced to § 2C1.1

Part D of the proposed amendment would also amend the commentary to § 2C1.1 to reflect the reference.

An issue for comment is also provided.

*Proposed Amendment:*

Appendix A (Statutory Index) is amended by inserting before the line referenced to 18 U.S.C. 1361 the following new line reference:

''18 U.S.C. 1352 2C1.1''.

The Commentary to § 2C1.1 captioned ''Statutory Provisions'' is amended by striking ''18 U.S.C. 201(b)(1), (2), 226, 227, 371 (if conspiracy to defraud by interference with governmental functions), 872, 1341 (if the scheme or artifice to defraud was to deprive another of the intangible right of honest services of a public official), 1342 (if the scheme or artifice to defraud was to deprive another of the intangible right of honest services of a public official), 1343 (if the scheme or artifice to defraud was to deprive another of the intangible right of honest services of a public official), 1951'' and inserting ''18 U.S.C. 201(b)(1), (2), 226, 227, 371 (if conspiracy to defraud by interference with governmental functions), 872, 1341 (if the scheme or artifice to defraud was to deprive another of the intangible right of honest services of a public official),

1342 (if the scheme or artifice to defraud was to deprive another of the intangible right of honest services of a public official), 1343 (if the scheme or artifice to defraud was to deprive another of the intangible right of honest services of a public official), 1352, 1951''.

Issue for Comment

1. The Commission seeks comment on whether the proposed references are appropriate and whether any additional changes to the guidelines are required to account for the new criminal offenses created by the Foreign Extortion Prevention Technical Corrections Act, Public Law 118–78 (2024).

*(E) Securities and Commodities Fraud*

Synopsis of Proposed Amendment: Part E of the proposed amendment would amend the reference for 18 U.S.C. 1348, dealing with securities and commodities fraud, in Appendix A (Statutory Index). Section 1348 prohibits the execution of a scheme or artifice (1) to defraud any person in connection with any commodity for future delivery, any option on a commodity for future delivery, or any security of certain issues, or (2) to fraudulently obtain any money or property in connection with the purchase or sale of any commodity for future delivery, any option on a commodity for future delivery, or any security of certain issues.

Currently, offenses under 18 U.S.C. 1348 are referenced in Appendix A to § 2B1.1 (Theft, Property Destruction, and Fraud). Section 2B1.1(b)(1) provides an enhancement under the loss table based on the amount of loss involved in the offense. However, it has been brought to the Commission's attention that, for some 18 U.S.C. 1348 offenses, loss does not adequately account for the defendant's true culpability in the offense. Instead, such offenses are more similar in nature to those insider trading offenses that are referenced to § 2B1.4 (Insider Trading), which provides an enhancement based on the amount of gain resulting from the offense.

To respond to this concern, Part E of the proposed amendment would amend Appendix A to reference 18 U.S.C. 1348 to § 2B1.4 (Insider Trading), while also maintaining the current reference to § 2B1.1.

Part E of the proposed amendment would also amend the commentary to § 2B1.4 to reflect the reference.

*Proposed Amendment:*

Appendix A (Statutory Index) is amended in the line referenced to 18 U.S.C. 1348 by striking ''2B1.1'' and inserting ''2B1.1, 2B1.4''.

The Commentary to § 2B1.4 captioned ''Statutory Provisions'' is amended by striking ''15 U.S.C. 78j,'' and inserting ''15 U.S.C. 78j, 18 U.S.C. 1348,''.

**9. Technical**

*Synopsis of Proposed Amendment*: This proposed amendment would make technical and other non-substantive changes to the *Guidelines Manual.*

First, the proposed amendment makes clerical changes to several guidelines to replace references to the ''Bureau of Prisons'' with more accurate references to the ''Federal Bureau of Prisons.'' It makes changes to the following guidelines: § 1B1.13 (Reduction in Term of Imprisonment Under 18 U.S.C. 3582(c)(1)(A) (Policy Statement)); § 5E1.2 (Fines for Individual Defendants); § 5F1.7 (Shock Incarceration Program (Policy Statement)); § 5F1.8 (Intermittent Confinement); and § 5G1.3 (Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment).

Second, the proposed amendment makes technical changes to update the references to the Communications Act of 1934 in the context of the definition of the term ''interactive computer service,'' which is used by several guidelines. It makes changes to the following guidelines: § 2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse); § 2A3.2 (Criminal Sexual Abuse of a Minor Under the Age of Sixteen Years (Statutory Rape) or Attempt to Commit Such Acts); § 2A3.3 (Criminal Sexual Abuse of a Ward or Attempt to Commit Such Acts; Criminal Sexual Abuse of an Individual in Federal Custody); § 2A3.4 (Abusive Sexual Contact or Attempt to Commit Abusive Sexual Contact); § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy); § 2D1.11 (Unlawfully Distributing, Importing, Exporting or Possessing a Listed Chemical; Attempt or Conspiracy); § 2D1.12 (Unlawful Possession, Manufacture, Distribution, Transportation, Exportation, or Importation of Prohibited Flask, Equipment, Chemical, Product, or Material; Attempt or Conspiracy); § 2G1.3 (Promoting a Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Transportation of Minors to Engage in a Commercial Sex Act or Prohibited Sexual Conduct; Travel to Engage in Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Sex Trafficking of Children; Use of Interstate Facilities to Transport Information about a Minor); § 2G2.1 (Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production); § 2G2.2 (Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, Soliciting, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic; Possessing Material Involving the Sexual Exploitation of a Minor); § 2G2.6 (Child Exploitation Enterprises); § 2G3.1 (Importing, Mailing, or Transporting Obscene Matter; Transferring Obscene Matter to a Minor; Misleading Domain Names); and § 2H3.1 (Interception of Communications; Eavesdropping; Disclosure of Certain Private or Protected Information). The proposed amendment also makes other non-substantive changes to some of these guidelines to provide stylistic consistency in how subdivisions are designated and to correct some typographical errors.

Third, the proposed amendment makes technical changes to § 7B1.4 (Term of Imprisonment—Probation (Policy Statement)) and § 7C1.5 (Term of Imprisonment—Supervised Release (Policy Statement)), to clarify statutory references regarding a court's authority to provide an exception to mandatory revocation of probation or supervised release in the case of a defendant who fails a drug test.

Fourth, the proposed amendment makes a technical change to § 7C1.1 (Classification of Violations (Policy Statement)) to correct an inaccurate reference to ''four'' grades of supervised release violations.

Fifth, the proposed amendment makes technical changes to § 8A1.2 (Application Instructions—Organizations) and § 8C2.8 (Determining the Fine Within the Range (Policy Statement)), to replace references to the ''guideline range'' with more accurate references to the ''guideline fine range.''

Finally, the proposed amendment would make clerical changes to Appendix A (Statutory Index) to reflect the editorial reclassification of certain sections in the United States Code.

*Proposed Amendment:*

Section 1B1.13(a) is amended by striking ''Bureau of Prisons'' and inserting ''Federal Bureau of Prisons''.

Section 1B1.13(b)(4) is amended by striking ''Bureau of Prisons'' and inserting ''Federal Bureau of Prisons''.

Section 2A3.1(b)(4)(C) is amended by striking ''subdivisions (A) and (B)'' and inserting ''subparagraphs (A) and (B)''.

The Commentary to § 2A3.1 captioned ''Application Notes'' is amended in Note 1, in the paragraph that begins '' 'Interactive computer service' has'', by striking ''section 230(e)(2)'' and inserting ''section 230(f)(2)''.

The Commentary to § 2A3.2 captioned ''Application Notes'' is amended in Note 1, in the paragraph that begins '' 'Interactive computer service' has'', by striking ''section 230(e)(2)'' and inserting ''section 230(f)(2)''.

The Commentary to § 2A3.3 captioned ''Application Notes'' is amended in Note 1, in the paragraph that begins '' 'Interactive computer service' has'', by striking ''section 230(e)(2)'' and inserting ''section 230(f)(2)''.

The Commentary to § 2A3.4 captioned ''Application Notes'' is amended in Note 1, in the paragraph that begins '' 'Interactive computer service' has'', by striking ''section 230(e)(2)'' and inserting ''section 230(f)(2)''.

The Commentary to § 2D1.1 captioned ''Application Notes'' is amended in Note 13 by striking ''section 230(e)(2)'' and inserting ''section 230(f)(2)''.

The Commentary to § 2D1.11 captioned ''Application Notes'' is amended—

in Note 1(A) by striking ''subdivision (B)'' and inserting ''subparagraph (B)'';

in Note 5 by striking ''section 230(e)(2)'' and inserting ''section 230(f)(2)'';

and in Note 8 by striking ''involved unlawfully manufacturing a controlled substance or attempting to manufacture'' and inserting ''involved unlawfully manufacturing a controlled substance, or attempting to manufacture''.

The Commentary to § 2D1.12 captioned ''Application Notes'' is amended—

in Note 1 by striking ''involved unlawfully manufacturing a controlled substance or attempting to manufacture'' and inserting ''involved unlawfully manufacturing a controlled substance, or attempting to manufacture'';

and in Note 3 by striking ''section 230(e)(2)'' and inserting ''section 230(f)(2)''.

The Commentary to § 2G1.3 captioned ''Application Notes'' is amended in Note 1, in the paragraph that begins '' 'Interactive computer service' has'', by striking ''section 230(e)(2)'' and inserting ''section 230(f)(2)''.

The Commentary to § 2G2.1 captioned ''Application Notes'' is amended in Note 1, in the paragraph that begins '' 'Interactive computer service' has'', by striking ''section 230(e)(2)'' and inserting ''section 230(f)(2)''.

Section 2G2.2(b)(3)(D) is amended by striking ''subdivision (E)'' and inserting ''subparagraph (E)''.

Section 2G2.2(b)(3)(F) is amended by striking ''subdivisions (A) through (E)'' and inserting ''subparagraphs (A) through (E)''.

The Commentary to § 2G2.2 captioned ''Application Notes'' is amended in Note 1—

in the paragraph that begins '' 'Interactive computer service' has'' by striking ''section 230(e)(2)'' and inserting ''section 230(f)(2)'';

and in the paragraph that begins '' 'Sexual abuse or exploitation' means'' by striking ''subdivisions (A) or (B)'' and inserting ''subparagraphs (A) or (B)''.

The Commentary to § 2G2.2 captioned ''Background'' is amended by striking ''subdivision (7)'' and inserting ''paragraph (7)''.

The Commentary to § 2G2.6 captioned ''Application Notes'' is amended in Note 1, in the paragraph that begins '' 'Interactive computer service' has'', by striking ''section 230(e)(2)'' and inserting ''section 230(f)(2)''.

Section 2G3.1(b)(1)(D) is amended by striking ''subdivision (E)'' and inserting ''subparagraph (E)''.

Section 2G3.1(b)(1)(F) is amended by striking ''subdivisions (A) through (E)'' and inserting ''subparagraphs (A) through (E)''.

The Commentary to § 2G3.1 captioned ''Application Notes'' is amended in Note 1, in the paragraph that begins '' 'Interactive computer service' has'', by striking ''section 230(e)(2)'' and inserting ''section 230(f)(2)''.

The Commentary to § 2H3.1 captioned ''Application Notes'' is amended in Note 4, in the paragraph that begins '' 'Interactive computer service' has'', by striking ''section 230(e)(2)'' and inserting ''section 230(f)(2)''.

The Commentary to § 5E1.2 captioned ''Application Notes'' is amended in Note 6 by striking ''Bureau of Prisons'' and inserting ''Federal Bureau of Prisons''.

The Commentary to § 5F1.7 captioned ''Background'' is amended in the paragraph that begins ''In 1990,'' by striking ''Bureau of Prisons'' each place it appears and inserting ''Federal Bureau of Prisons''.

The Commentary to § 5F1.8 captioned ''Application Note'' is amended in Note 1 by striking ''Bureau of Prisons'' and inserting ''Federal Bureau of Prisons''.

Section 5G1.3(b)(1) is amended by striking ''Bureau of Prisons'' and inserting ''Federal Bureau of Prisons''.

The Commentary to § 5G1.3 captioned ''Application Notes'' is amended in Note 2(C) by striking ''Bureau of Prisons'' and inserting ''Federal Bureau of Prisons''.

The Commentary to § 7B1.4 captioned ''Application Notes'' is amended in Note 3 by striking ''18 U.S.C. 3563(a)'' and inserting ''18 U.S.C. 3563(e)''.

Section 7C1.1(a) is amended by striking ''four grades'' and inserting ''three grades''.

The Commentary to § 7C1.5 captioned ''Application Notes'' is amended in Note 3 by striking ''The availability'' and inserting ''In the case of a defendant who fails a drug test, the availability''.

Section 8A1.2(b)(2)(G) is amended by striking ''guideline range'' and inserting ''guideline fine range''.

Section 8A1.2(b)(4) is amended by striking ''guideline range'' and inserting ''guideline fine range''.

Section 8C2.8(a) is amended by striking ''guideline range'' and inserting ''guideline fine range''.

The Commentary to § 8C2.8 captioned ''Application Notes'' is amended in Note 2 by striking ''guideline range'' and inserting ''guideline fine range''.

Appendix A (Statutory Index) is amended—

in the line referenced to 7 U.S.C. 6b(A) by striking ''§ 6b(A)'' and inserting ''§ 6b(a)'';

in the line referenced to 7 U.S.C. 6b(B) by striking ''§ 6b(B)'' and inserting ''§ 6b(b)'';

in the line referenced to 7 U.S.C. 6b(C) by striking ''§ 6b(C)'' and inserting ''§ 6b(c)'';

by inserting before the line referenced to 46 U.S.C. App. § 1707a(f)(2) the following line references:

''46 U.S.C. 70503 2D1.1
46 U.S.C. 70506(a) 2D1.1
46 U.S.C. 70506(b) 2D1.1'';

and by striking the following line references:

''46 U.S.C. App. § 1903(a) 2D1.1
46 U.S.C. App. § 1903(g) 2D1.1
46 U.S.C. App. § 1903(j) 2D1.1''.

[FR Doc. 2025–23473 Filed 12–18–25; 8:45 am]

BILLING CODE 2210–40–P