IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT KLINK<br><br>*Defendant.* | Criminal No. 3:26-CR-78 |

**THE UNITED STATES' RESPONSE TO**
**DEFENDANT'S MOTION FOR DOWNWARD VARIANCE**

The United States of America, by and through undersigned counsel, submits the following response to the defendant's motion for a downward variance from the advisory guideline range. *See* ECF 31. Having reviewed defendant's motion, the United States objects to any downward variance and submits that a total sentence of 151 months imprisonment which falls within the guideline range, as calculated by the probation officer, is sufficient but not greater than necessary to achieve the sentencing goals of 18 U.S.C. § 3553(a).

The Court must impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a). In doing so, the Court must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for deterrence, protection of the public, promotion of respect for the law, and the need to avoid unwarranted sentencing disparities.

Here, the advisory Guideline range already accounts for the defendant's acceptance of responsibility, safety-valve eligibility, criminal history, and offense conduct. The defendant seeks a substantial variance based primarily upon his personal history, medical issues, policy objections to the methamphetamine Guidelines, and statistical arguments regarding sentencing practices. None of those arguments justify a sentence below the properly calculated Guideline range.

The Court should reject the requested variance and impose a sentence of 151 months imprisonment.

## I. THE ADVISORY GUIDELINE RANGE REMAINS THE BEST STARTING POINT FOR THE COURT'S SENTENCING ANALYSIS

The Supreme Court has repeatedly emphasized that the Sentencing Guidelines remain the starting point and initial benchmark for every federal sentencing proceeding. *See Gall v. United States*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). Although the Guidelines are advisory, they continue to promote the statutory goal of reducing unwarranted sentencing disparities while ensuring that similarly situated defendants are treated similarly. *See United States v. Lawson*, 128 F.4th 243, 257 (4th Cir. 2025) (citing *United States v. Withers*, 100 F.3d 1142, 1149 (4th Cir. 1996).

The defendant does not challenge the calculation of the Guideline range. Instead, he urges the Court to disregard that range based upon a variety of policy considerations and personal circumstances. The defendant bears the burden of demonstrating that the factors set forth in 18 U.S.C. § 3553(a) warrant the requested variance. The record here does not support such a conclusion.

The defendant engaged in serious methamphetamine trafficking involving substantial quantities of controlled substances. The offense conduct was neither isolated nor aberrational. Rather, it reflected purposeful participation in a significant drug-trafficking enterprise involving highly dangerous controlled substances.

The seriousness of methamphetamine trafficking cannot be overstated. Methamphetamine remains one of the most prevalent and destructive controlled substances prosecuted in federal court. *See* United States Commission, *Methamphetamine Trafficking Offenses in the Federal*

*Criminal Justice System*, (June 2024), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2024/202406_Methamphetamine.pdf. The Sentencing Commission's recent research confirms both the prevalence and seriousness of methamphetamine offenses in the federal criminal justice system. *Id.* United States Sentencing Commission research demonstrates that methamphetamine trafficking offenders continue to receive some of the longest average sentences among federal drug offenders and remain a substantial percentage of the federal criminal docket. *Id.*

## II. THE DEFENDANT'S PERSONAL HISTORY AND MEDICAL CIRCUMSTANCES DO NOT JUSTIFY A VARIANCE

The United States does not minimize the hardships described in the defendant's sentencing memorandum and PSR. As defense counsel details, the defendant had a difficult upbringing and suffers from significant substance-abuse issues, serious medical conditions, and the lasting effects of childhood cancer treatment. The Court may appropriately consider those circumstances under § 3553(a). But those considerations do not outweigh the seriousness of the offense conduct or the need for deterrence and protection of the public.

Many federal defendants appear for sentencing having experienced addiction, trauma, family instability, or serious health challenges. *See e.g.*, *United States v. Nance*, 957 F.3d 204 (4th Cir. 2020). While such circumstances may provide context, they do not excuse large-scale narcotics trafficking. Congress directed sentencing courts to consider not only the defendant's history and characteristics, but also the nature of the offense and the need for the sentence imposed to reflect its seriousness. *See* 18 U.S.C. § 3553(a).

The defendant's medical issues likewise do not support a reduced sentence. The Bureau of Prisons is capable of providing medical treatment to inmates with serious medical conditions. Moreover, the record indicates that the defendant participated in significant methamphetamine

trafficking notwithstanding the bulk of the medical issues now advanced in support of a variance. Thus, those conditions did not prevent the defendant from engaging in the offense conduct at issue and should not result in a below guidelines sentence.

## III. THE DEFENDANT'S CRIMINAL HISTORY AND RECIDIVISM RISK SUPPORT, RATHER THAN UNDERMINE, A GUIDELINE SENTENCE

The defense contends that the defendant's criminal history overstates the risk of future misconduct and argues that age-related recidivism data supports a reduced sentence. The Sentencing Commission's own research does not support that conclusion.

The Commission's recidivism studies recognize that advancing age may reduce recidivism rates. *See* United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders*, (December 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf; U.S. Sent'g Guidelines Manuel app. C, amend. 829 (U.S. Sent'g Comm'n 2025). At the same time, those studies found that type of federal offense committed influenced recidivism across all age groups. *Id.* Specifically, drug traffickers had a higher rearrest rate across all age categories than individuals convicted of fraud related offenses. *Id.* Additionally, the study found that age and criminal history exerted a strong influence on recidivism, finding that the higher the criminal history category – the more likely an offender would reoffend. *Id.*

Accordingly, the defense's reliance upon age-based recidivism data presents only part of the picture. The more relevant question is whether this particular defendant's criminal history demonstrates a continuing pattern of criminal conduct and disregard for the law. Here, the defendant's criminal history starts at age 22 and continues to present with various convictions occurring only a year to few years apart from one another. PSR ¶¶ 33–44. Moreover, this is not the defendant's first conviction for drug trafficking, PSR ¶ 40, and his statements regarding his

desire to be a one-stop shop for narcotics in Virginia cannot be ignored. Thus, neither his age nor criminal history warrant the requested variance, and this Court should deny his motion and impose a sentence of 151 months imprisonment.

## IV. THE DEFENDANT HAS ALREADY RECEIVED CREDIT FOR HIS ACCEPTANCE OF RESPONSIBILITY AND COOPERATION

The defense emphasizes that the defendant disclosed additional quantities of methamphetamine and accepted responsibility for his conduct. The government acknowledges those actions. However, the Guidelines already account for acceptance of responsibility through the reduction provided under U.S.S.G. § 3E1.1. Likewise, the defendant's eligibility for safety-valve relief already provides a substantial benefit unavailable to many similarly situated traffickers. The Court should avoid effectively counting the same mitigating circumstance multiple times. To do otherwise would result in a sentence that understates the seriousness of the offense conduct relative to similarly situated offenders.

## V. THE COURT SHOULD DECLINE THE DEFENDANT'S INVITATION TO REJECT THE METHAMPHETAMINE GUIDELINES

A significant portion of the defendant's memorandum is devoted to a policy disagreement with the methamphetamine Guidelines, particularly the distinction between methamphetamine actual and methamphetamine mixture. While the defendant is correct that some district courts have expressed disagreement with portions of the methamphetamine Guidelines that fact does not establish that a variance is appropriate here.

The United States Sentencing Commission has recently studied methamphetamine trafficking and confirmed several facts that cut against the requested variance. In June 2024, the Commission reported that methamphetamine is now the predominant drug in the federal drug-trafficking caseload, that defendants trafficking methamphetamine received the longest average

sentences among major drug types, and that methamphetamine distributed in the United States is highly pure regardless of whether it is classified as mixture, actual methamphetamine, or ice. *See* United States Commission, *Methamphetamine Trafficking Offenses in the Federal Criminal Justice System*, (June 2024), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2024/202406_Methamphetamine.pdf. The Commission found that methamphetamine tested in fiscal year 2022 averaged more than 90 percent purity and had a median purity of 98 percent. *Id.* The Commission also documented that methamphetamine trafficking offenses frequently involve mandatory minimum penalties and lengthy sentences. *Id.* These findings show the continuing seriousness of methamphetamine trafficking rather than providing a basis for categorical leniency.

The Commission subsequently sought comment during the 2025-2026 amendment cycle regarding possible changes to the treatment of methamphetamine purity. *See* United States Sentencing Commission, *Public Date Briefing Video Transcript – 2026 Proposed Amendment On Drug Offense* (January 2026), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/data-briefings/transcript_2026-Drug-Offenses.pdf. The fact that the Commission studied the issue and solicited public comment does not demonstrate that the existing guideline lacks validity. Indeed, the Commission recognized competing policy considerations and continued to evaluate options through the amendment process. The Court should therefore avoid substituting a broad policy disagreement for the individualized assessment required by §3553(a).

Further, courts in this Circuit have rejected the same argument that the defendant puts forth. *See United States v. Williams*, 19 F.4th 374, 378 (4th Cir. 2021) (finding that the district court had discretion as to whether or not to reject the Ice Guidelines); *United States v. Lawson*, 2025 WL 1078340, *1 (4th Cir. April 10, 2025); *United States v. Miller*, 2025 WL 786042, *4 (4th

Cir. March 12, 2025); *United States v. Maldonado-Pineda*, 2022 WL 17592129, *2 (4th Cir. December 13, 2022); *see also United Staes v. Rivera-Santana*, 668 F.3d 95, 101 (4th Cir. 2012) ("Although a sentencing court may be entitled to consider policy decisions underlying the Guidelines, including the presence or absence of empirical data, it is under no obligation to do so."). As the district court noted in *United States v. Farris*, "[i]t is beyond dispute that methamphetamine is a highly destructive drug" and it is "not inappropriate . . . to treat higher purity methamphetamine more seriously." 421 F.Supp 321, 330 (W.D. Va. 2019).

## VI. THE DEFENDANT'S SENTENCING-DISPARITY ARGUMENTS ARE UNPERSUASIVE

The defense relies upon sentencing statistics and Commission data in support of a lower sentence. Those statistics must be viewed with caution. The Sentencing Commission's Judiciary Sentencing Information report expressly warns that the data does not represent a recommendation regarding the appropriate sentence in any individual case and should be considered only after proper calculation of the advisory Guideline range. *See* Def's Ex. I.

Statistics cannot account for the countless offender-specific variables that influence federal sentencing, including offense conduct, criminal history, aggravating factors, mitigating factors, cooperation, and individual sentencing considerations. Further, section 3553(a)(6) seeks to avoid unwarranted disparities, not all disparities. Defendants with different offense conduct and different criminal histories may appropriately receive different sentences.

Here, the defendant distributed or possessed with the intent to distribute approximately 3,499.26 grams of methamphetamine, in addition to approximately 306 grams of MDMA, 81 grams of ketamine, and 12 grams of Dimethyltryptamine. He admitted that he sells a pound of methamphetamine for $3000 to $3500. Moreover, he told DEA agents that he sold DMT, GHB,

GBL, Molly, and ketamine, in addition to methamphetamine because he wanted to be a single stop shop for narcotics in Virginia.

Thus, while statistics may play a role in the court's evaluation, they do not account for the specific behavior of this defendant and should be considered with caution.

## Conclusion

For these reasons, the United States respectfully requests that the Court deny the defendant's motion for a downward variance and impose a sentence of 151 months. Such a sentence is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter future criminal conduct, protect the public, and avoid unwarranted disparities.

Respectfully submitted,

Todd W. Blanche
Attorney General

Theophani K. Stamos
First Assistant United States Attorney

By: /s/
Eric Gilliland
Virginia Bar No. 95796
Assistant United States Attorney
United States Attorney's Office
Suite 1900
919 East Main Street
Richmond, Virginia 23219
Tel.: (804) 819-5416
Fax: (804) 771-2316
Eric.Gilliland@usdoj.gov